Electronically Filed - Jackson - Kansas City - May 30, 2019 - 04:28 PM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

| | | |
|---|---|---|
| A.G., Individually,<br><br>Plaintiff,<br><br>v.<br><br>THE HOUSING AUTHORITY OF KANSAS CITY, MISSOURI<br>Serve:<br>Edwin Lowndes, Executive Director<br>920 Main St., Ste. 701<br>Kansas City, MO 64105<br><br>and<br><br>SECURITAS SECURITY SERVICES, INC.<br>Serve registered agent:<br>National Registered Agents, Inc.<br>120 South Central Ave.<br>Clayton, MO 63105,<br><br>Defendants. | ) | Case No.<br><br>Division |

**PETITION**

COMES NOW Plaintiff A.G., by and through counsel, and alleges as follows:

1. The Defendants subjected Plaintiff to a living hell of pervasive sexual harassment and multiple sexual assaults at her home. Defendants were deliberately indifferent to Plaintiff's plight and to her multiple requests for emergency transfer. Plaintiff suffered daily harassment by male tenants who threatened her safety and well-being in a public housing complex rife with open criminal conduct, pervasive drug use, people having sex in the stairwells, elevator assaults on women, and management indifference. Defendants failed miserably and negligently in the

EXHIBIT B

provision of security to Plaintiff and in providing a non-discriminatory housing environment. As a result, Plaintiff suffered additional sexual assaults and harassment.

2. Plaintiff A.G. was at all times relevant to this Petition a resident and citizen of Missouri. At the time of the sexual assaults and harassment giving rise to the claims set forth herein, Plaintiff was a resident of Brush Creek Towers, the subject premises owned and controlled by Defendant The Housing Authority of Kansas City, Missouri ("HAKC"), located at 1800 Emmanuel Cleaver II Blvd., Kansas City, Missouri. Plaintiff is referred to in this public filing by pseudonym to maintain confidentiality of her identity due to the sensitive nature of the claims asserted herein.

3. Defendant HAKC is an entity created by statutory authority doing business in the state of Missouri, including the management and operation of residential housing units in Kansas City, Jackson County, Missouri. At all times referenced herein, HAKC operated through agents, servants, and/or employees who were acting within the course and scope of their employment. Defendant HAKC can be served through its Executive Director at the address listed above.

4. At all times relevant to this Petition, Defendant HAKC was the owner, controller, operator, manager and landlord of residential property doing business as Brush Creek Towers, located at 1800 Emmanuel Cleaver II Blvd., Kansas City, Missouri (hereinafter the "subject premises").

5. Defendant Securitas Security Services, Inc. ("Securitas") is a Missouri corporation in good standing, doing business in Kansas City, Missouri, at 2345 Grand Blvd., #1700, Kansas City, MO 64108. Defendant Securitas is a consulting and security company hired by Defendant HAKC to provide security services at the subject premises. Defendant Securitas was under the direct supervision, employ and control of Defendant HAKC. Defendant HAKC hired, supervised,

Electronically Filed - Jackson - Kansas City - May 30, 2019 - 04:28 PM

and paid Defendant Securitas. At all relevant times, Defendant Securitas acted upon authority of and at the request and/or permission of Defendant HAKC as an employee and/or agent. Defendant Securitas' employees were acting within the course and scope of their employment at all times referenced herein. Defendant Securitas can be served through its registered agent at the address listed above.

6. This Court has jurisdiction over the causes of action asserted herein and over the parties to this action. Plaintiff asserts claims under Missouri common law and The Fair Housing Act, 42 U.S.C. 3601, *et seq*. Defendants reside and/or are licensed to do business or transact business in Missouri and have obtained the benefits of the laws of the State of Missouri and the benefits of Missouri's location. Further, the tortious acts described herein occurred in Kansas City, Missouri which is located in Jackson County, within the State of Missouri.

7. Venue is proper in this court under R.S.Mo. §508.010 (6), because Plaintiff was first injured in Kansas City, Missouri which is located in Jackson County, Missouri.

8. Plaintiff moved into the Brush Creek Towers, located at 1800 Emmanuel Cleaver II Blvd., Kansas City, Missouri, in October 2016.

9. The Brush Creek Towers apartment complex falls under the "housing choice voucher program," which is a rental assistance program funded by the U.S. Department of Housing and Urban Development to assist very low-income families, the elderly, and the disabled.

10. Defendant HAKC represents to the general public that the purpose of the housing choice voucher program is to provide "decent, safe, and sanitary housing in the private market."

11. Defendant HAKC further represents that "the role of the landlord in the voucher program is to provide decent, safe, and sanitary housing to a tenant at a reasonable rent."

Electronically Filed - Jackson - Kansas City - May 30, 2019 - 04:28 PM

Electronically Filed - Jackson - Kansas City - May 30, 2019 - 04:28 PM

12. On its public website, Defendant HAKC provides that the Brush Creek Towers includes a "secured entrance" and "24-Hour maintenance."

13. Defendant HAKC hired Defendant Securitas to provide security services at the subject premises.

14. When Plaintiff became a tenant of Brush Creek Towers, she entrusted her safety and well-being to the protection of Defendants HAKC and Securitas.

15. Plaintiff relied on Defendants HAKC and Securitas to provide a safe, discrimination-free living place.

16. Defendants HAKC and Securitas owed Plaintiff a duty to provide a safe living place and to protect her from injury.

17. Defendants HAKC and Securitas knew or should have know of the pervasive environment of sexual harassment and assault at Brush Creek Towers, and had the power to correct it and control over residents, yet failed to take reasonable steps to prevent sexual assault and sexual harassment.

18. From the time she moved into Brush Creek Towers in October 2016, and through June of 2017, Plaintiff made several reports, both formal and informal, to then-manager Regina Boles and another HAKC employee, notifying them of the assaults and her safety concerns, which included incidences of sexual assault by at least two specific individuals.

19. Plaintiff and other Brush Creek Tower tenants also reported other criminal activity by tenants and guests, including the use of illegal drugs.

20. Despite receiving notice of criminal activity occurring on its premises, Defendants HAKC and Securitas failed to investigate, address, and remedy the dangerous conditions.

21. Despite complaints, reports and knowledge of sexual assaults made by Plaintiff and other Brush Creek Tower tenants, Defendants HAKC and Securitas failed to provide adequate security.

22. As a result of the unsafe and sexually discriminatory environment, Plaintiff requested, through Regina Boles, an emergency transfer to a safer housing environment in April of 2017.

23. HAKC, through Regina Boles, did not share Plaintiff's request for a transfer with others at HAKC until May 18, 2017, at which time she sent a cursory email to other HAKC employees, vaguely inquiring as to whether anyone "had a one bedroom unit available." HAKC did not act on this inquiry.

24. In the Spring of 2017, a male resident knocked on Plaintiff's door and asked to borrow some cooking oil. He then grabbed Plaintiff's breast, causing her to scream. Plaintiff reported this incident to HAKC management.

25. On May 13, 2017, Plaintiff was sexually assaulted, by a different man, as she was leaving the laundry room located on the 12th or top floor. When Plaintiff stepped onto the elevator to return to her room, a visibly intoxicated man holding a beer in his hand rushed into the elevator behind her. He spoke about Plaintiff's breasts and rubbed his genitals, reached out and grabbed Plaintiff's breasts and genitals, attempted to unzip his pants and rip off Plaintiff's shirt, forced his tongue towards her and demanded oral sex, and again grabbed Plaintiff's breasts.

26. Plaintiff fought to defend herself from the attacker, while yelling for him to stop.

27. When the elevator reached the main floor, Plaintiff ran for the security desk.

28. The Securitas employee initially intervened by restraining the assailant.

Electronically Filed - Jackson - Kansas City - May 30, 2019 - 04:28 PM

Electronically Filed - Jackson - Kansas City - May 30, 2019 - 04:28 PM

29. The Securitas employee, however, failed to contact the Kansas City Police Department to report the assault and then let the assailant go.

30. After the assault, Plaintiff was taken to a hospital for treatment of her injuries.

31. Defendants HAKC and Securitas knew about the dangerous propensities of the individual responsible for sexually assaulting Plaintiff on May 13, 2017, prior to the assault.

32. In fact, Brush Creek Tower tenants lodged numerous complaints about the individual due to his heavy use of alcohol on the premises.

33. Defendants HAKC and Securitas, including HAKC manager Regina Boles, knew the individual was not a contractual tenant, knew he was nevertheless residing at the subject premises, and described him as a "home sitter," but failed to investigate, address, or remedy the situation.

34. The assailant of the May 13, 2017 assault was previously known to HAKC and Securitas to be dangerous, to be the subject of numerous previous complaints, and to be residing in Brush Creek Towers even though he was not a contractual tenant.

35. In June 2017, Defendants invited Brush Creek Tower tenants to an open meeting to discuss, among other things, tenant safety.

36. During the meeting, tenants voiced safety concerns to the committee after learning of the May 13, 2017 assault. The attendees demanded increased security personnel, the need for security to take on an increased patrol of the premises, including the 12th floor laundry room, and issues surrounding then-manager, Regina Boles.

37. On June 6, 2017, Plaintiff was again sexually assaulted in the elevator.

38. Despite receiving ample notice, prior to June 6, 2017, of sexual assaults and harassment and criminal activity taking place on its premises, the need for adequate and/or

Electronically Filed - Jackson - Kansas City - May 30, 2019 - 04:28 PM

increased security, and Plaintiff's emergency transfer request, Defendants HAKC and Securitas failed to address a known and dangerous condition, and failed to take any action to prevent additional assaults upon Plaintiff and others, despite having knowledge of the dangerous, harassing, and discriminatory conditions and the ability to correct the situation and provide Plaintiff a safe living place free of harassment and discrimination.

39. As a result of Defendants' negligent and discriminatory conduct, Plaintiff's safety and well-being were compromised. Plaintiff began experiencing depression, anxiety, and loss of quality of life. Plaintiff struggled using the elevator to go up to the laundry room due to the fear and mental distress from the sexual assaults.

40. After June 6, 2017, Plaintiff again requested that Defendants move her to another location falling under the housing choice voucher program, on an emergency basis.

41. After June 6, 2017, male tenants continued to sexually harass Plaintiff on the subject premises.

42. As of June 14, 2017, Plaintiff's request for an immediate transfer had not been approved.

43. Plaintiff was again sexually assaulted on the elevator on June 27, 2017. A resident blew down her shirt so he could see Plaintiff's breasts. This resident was a well-known offender as multiple complaints had been lodged against him including harassment, domestic violence, threats, and drugs.

44. When Plaintiff complained about this assault, Regina Boles told her, "don't worry, he is on his way out." The assailant was dating a Securitas employee at the time.

45. Plaintiff's request for transfer was not approved, and she was not able to move, until on or about July 1, 2017.

Electronically Filed - Jackson - Kansas City - May 30, 2019 - 04:28 PM

46. As acknowledged by Defendants, the transfer request was labeled "Category 1 - Emergency Transfer: immediate threat to resident life, health or safety."

47. Defendants HAKC and Securitas knew of the risks presented to Plaintiff and the other Brush Creek Tower tenants.

48. In the three-year period leading up to the sexual assaults committed on Plaintiff, there were fifteen other reports of assault at the subject premises, including sexual offenses.

49. During that same time period, a total 425 incidents of criminal activity were reported at the subject premises, of which 234 were assaults, disturbances, infliction of bodily harm, or sexual assault.

50. Defendants owed a duty to their tenants to maintain a safe environment and cure all dangerous conditions.

51. Defendants failed to use ordinary care through the following:

a. Failing to provide adequate security for its premises;

b. Failing to provide adequate security to protect its tenants from crimes similar to those committed frequently in the recent past;

c. Failing to properly utilize and install a video surveillance system;

d. Failing to properly install adequate and multiple video cameras on its premises to cover the entire property;

e. Failing to perform security surveys to identify risks and determine appropriate actions to be taken;

f. Failing to monitor the entire premises, including the laundry facility located on the top floor;

g. Failing to properly, adequately and reasonably patrol and/or inspect its premises in order to ensure it was in a reasonably safe condition as to prevent and/or deter discriminatory and criminal acts upon any party by others;

h. Failing to warn of the dangerous and unreasonably unsafe condition of the premises;

i. Failing to take reasonable steps to protect Plaintiff and other parties from foreseeable harm, assault, battery, and/or injury such as the incident which injured Plaintiff;

j. Failing to properly provide any monitoring devices or other crime prevention mechanisms at the premises;

k. Failing to properly prevent non-tenants from entering the premises;

l. Failing to monitor and control the conduct of non-tenants when they were on or in the premises;

m. Failing to provide adequate lighting to protect its tenants from crimes similar to those committed frequently in the recent past; and

n. Failing to take all reasonable safety precautions to protect its tenants from crimes similar to those committed frequently in the recent past;

o. Failing to promptly grant Plaintiff's request for an emergency transfer to remove her from the dangerous and discriminatory housing environment and place her in a safe one.

52. As the direct and proximate result of Defendants HAKC and Securitas' actions and inactions, Plaintiff was sexually assaulted and sexually harassed.

Electronically Filed - Jackson - Kansas City - May 30, 2019 - 04:28 PM

53. As a direct and proximate result of Defendant's actions and inactions at the subject premises, Plaintiff suffered from the following injuries great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, shame, humiliation, and loss of enjoyment of life, and future expenses for medical and psychological treatment, therapy, and counseling.

51. Plaintiff is also entitled to recover damages for the conscious fear, pain and suffering, and mental anguish endured as she feared for her life, safety, and well-being after being sexually assaulted.

52. Further, the injuries sustained by Plaintiff were the result of Defendants HAKC and Securitas' willful, wanton and conscious disregard for her health and safety. As a result, Plaintiff is entitled to punitive damages.

53. By their actions and inactions, Defendants HAKC and Securitas have discriminated against Plaintiff in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection with such rental, because of Plaintiff's sex, and interfered with Plaintiff's exercise and enjoyment of her rights under the Fair Housing Act, in violation of 42 U.S.C. §3604 and §3617.

54. Defendants HAKC and Securitas had actual notice of tenant-on-tenant assault and harassment based on sex, yet chose not to take reasonable steps within their control to stop the assaults and harassment.

55. Defendants HAKC and Securitas created and subjected Plaintiff to a housing environment of unwelcome, severe and pervasive sexual harassment that interfered with Plaintiff's use and enjoyment of the premises and the terms and conditions of her occupation of the dwelling.

Electronically Filed - Jackson - Kansas City - May 30, 2019 - 04:28 PM

56. Defendants HAKC and Securitas knew or reasonably should have known of the harassment to which Plaintiff was subjected, as well as the harassing environment of Brush Creek Towers generally.

57. Defendants HAKC and Securitas failed to take prompt action to correct and end the discriminatory housing practices experienced by Plaintiff and others, despite having the power to do so.

58. Defendants HAKC and Securitas were deliberately indifferent to the discriminatory housing environment to which they subjected Plaintiff, as well as to Plaintiff's requests for immediate transfer.

59. As a public housing authority and its retained security company, Defendants HAKC and Securitas had an uncommon ability to control its tenants, especially residents known to have engaged in unwelcome and criminal activity in the past.

60. Defendants HAKC and Securitas had a range of mechanisms at their disposal to correct the harassment and assaults to which Plaintiff was subjected including, but not limited to, promptly approving Plaintiff's repeated emergency transfer requests, removing offending individuals from the premises prior to repeated occurrences, revoking vouchers for public housing assistance, arresting criminal offenders or referring them to the Kansas City Police Department for arrest and prosecution, issuing and enforcing notices to quit, issuing threats of eviction, and eviction.

Electronically Filed - Jackson - Kansas City - May 30, 2019 - 04:28 PM

WHEREFORE, Plaintiff asks that the Court enter judgment against Defendants as follows:

1. Award compensatory and punitive damages in favor of the Plaintiff against Defendants for damages sustained as a result of the wrongdoing of Defendants;

2. Award Plaintiff her costs and expenses incurred in this action;

3. Declare that Defendants' actions, inactions, and practices, as alleged herein, violate the Fair Housing Act;

4. Enjoin Defendants, their agents, employees, and successors, and all other persons in active concert or participation with them, from:

a. Discriminating on the basis of sex, including engaging in sexual harassment, in any aspect of the rental or lease of a dwelling;

b. Discriminating in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, on the basis of sex;

c. Stating any preference, limitation, or discrimination on the basis of sex;

d. Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights under the Fair Housing Act;

e. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendants' past unlawful practices to the position they would have been in but for the discriminatory conduct; and

f. Failing or refusing to take such affirmative steps as may be necessary to prevent recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of Defendants' unlawful housing practices; and

Electronically Filed - Jackson - Kansas City - May 30, 2019 - 04:28 PM

5. Award actual and punitive damages, pursuant to 42 U.S.C. §§3612(o)(3) and 3613(c)(1), to Plaintiff; and

6. Award reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 3612(p) and 3613(c)(2), to Plaintiff; and

7. Grant such other and further relief as the Court deems appropriate and just.

**Plaintiff demands a trial by jury on all issues triable in this case.**

Respectfully Submitted,

*/s/ Anthony E. LaCroix*

Anthony E. LaCroix MO No. 60793
LACROIX LAW FIRM, LLC
406 W. 34th St., Suite 810
Kansas City, Missouri 64111
Telephone: (816) 399-4380
Fax: (816) 399-4380
Email: tony@lacroixlawkc.com
*Attorney for Plaintiff*

Electronically Filed - Jackson - Kansas City - May 30, 2019 - 04:28 PM



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>JOEL P FAHNESTOCK | Case Number: **1916-CV15643** | |
|---|---|---|
| Plaintiff/Petitioner:<br>A. G.<br>**vs.** | Plaintiff's/Petitioner's Attorney/Address<br>ANTHONY E LaCROIX<br>406 W. 34TH ST<br>SUITE 810<br>KANSAS CITY, MO 64111 | |
| Defendant/Respondent:<br>THE HOUSING AUTHORITY OF KANSAS CITY, MISSOURI | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 | |
| Nature of Suit:<br>CC Pers Injury-Other | | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:** **SECURITAS SECURITY SERVICES, INC**
**Alias:**

**NATIIONAL REGISTERED AGENTS INC**
**120 SOUTH CENTRAL AVENUE**
**CLAYTON, MO 63105**

*COURT SEAL OF*

CIRCUIT COURT OF MISSOURI

*JACKSON COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

06-JUN-2019
Date

Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with ______________________________ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

______________________________ (name) ______________________________ (title).

☐ other ______________________________.

Served at ______________________________ (address)

in ______________________ (County/City of St. Louis), MO, on ________________ (date) at ____________ (time).

______________________________ Printed Name of Sheriff or Server

______________________________ Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on ______________________ (date).

My commission expires: ________________ Date ______________________ Notary Public

**Sheriff's Fees**

| | |
|---|---|
| Summons | $__________ |
| Non Est | $__________ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $__________ (______ miles @ $.______ per mile) |
| **Total** | **$__________** |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# SUMMONS/GARNISHMENT SERVICE PACKETS
# ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made. Thank you.

Circuit Court of Jackson County



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>JOEL P FAHNESTOCK | Case Number: **1916-CV15643** | |
|---|---|---|
| Plaintiff/Petitioner:<br>A. G.<br>**vs.** | Plaintiff's/Petitioner's Attorney/Address<br>ANTHONY E LaCROIX<br>406 W. 34TH ST<br>SUITE 810<br>KANSAS CITY, MO 64111 | |
| Defendant/Respondent:<br>THE HOUSING AUTHORITY OF KANSAS CITY, MISSOURI | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 | |
| Nature of Suit:<br>CC Pers Injury-Other | | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to: THE HOUSING AUTHORITY OF KANSAS CITY, MISSOURI**
**Alias:**

**SRV EXEC DIR: EDWIN LOWNDES**
**920 MAIN ST STE 701**
**KANSAS CITY, MO 64105**

*COURT SEAL OF*
*JACKSON COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

06-JUN-2019
Date

_______________________
Clerk

Further Information:

**Sheriff's or Server's Return**

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with ______________________ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

______________________ (name) ______________________ (title).

☐ other ______________________.

Served at ______________________ (address)

in ______________ (County/City of St. Louis), MO, on ______________ (date) at ______________ (time).

______________________ Printed Name of Sheriff or Server

______________________ Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on ______________________ (date).

My commission expires: ______________ Date ______________________ Notary Public

**Sheriff's Fees**

| | |
|---|---|
| Summons | $________ |
| Non Est | $________ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $________ (______ miles @ $.______ per mile) |
| **Total** | **$________** |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# SUMMONS/GARNISHMENT SERVICE PACKETS
# ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.


                                    Circuit Court of Jackson County

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT KANSAS CITY**

**A. G.,**

**PLAINTIFF(S),** **CASE NO. 1916-CV15643**
**DIVISION 9**

**VS.**

**THE HOUSING AUTHORITY OF KANSAS CITY, MISSOURI, ET AL**

**DEFENDANT(S).**

**NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE AND ORDER FOR MEDIATION**

---

NOTICE IS HEREBY GIVEN that a Case Management Conference will be held with the Honorable **JOEL P FAHNESTOCK** on **16-SEP-2019** in **DIVISION 9** at **09:00 AM**. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

At the Case Management Conference, counsel should be prepared to address at least the following:

a. A trial setting;

b. Expert Witness Disclosure Cutoff Date;

c. A schedule for the orderly preparation of the case for trial;

d. Any issues which require input or action by the Court;

e. The status of settlement negotiations.

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

**/S/ JOEL P FAHNESTOCK**
JOEL P FAHNESTOCK**, Circuit Judge**

Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
ANTHONY E LaCROIX, 406 W. 34TH ST, SUITE 810, KANSAS CITY, MO 64111

Defendant(s):
THE HOUSING AUTHORITY OF KANSAS CITY, MISSOURI
SECURITAS SECURITY SERVICES, INC

Dated: 06-JUN-2019

MARY A. MARQUEZ
Court Administrator



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

RECEIVED CIVIL PROCESS
2019 JUN -7 AM 11:48

| Judge or Division: JOEL P FAHNESTOCK | Case Number: 1916-CV15643 |
|---|---|
| Plaintiff/Petitioner: A. G. vs. | Plaintiff's/Petitioner's Attorney/Address ANTHONY E LaCROIX 406 W. 34TH ST SUITE 810 KANSAS CITY, MO 64111 |
| Defendant/Respondent: THE HOUSING AUTHORITY OF KANSAS CITY, MISSOURI | Court Address: 415 E 12th KANSAS CITY, MO 64106 |
| Nature of Suit: CC Pers Injury-Other | |

(Date File Stamp)

## Summons in Civil Case

**The State of Missouri to: THE HOUSING AUTHORITY OF KANSAS CITY, MISSOURI**
**Alias:**

SRV EXEC DIR: EDWIN LOWNDES
920 MAIN ST STE 701
KANSAS CITY, MO 64105

Sal

*COURT SEAL OF* CIRCUIT COURT OF MISSOURI *JACKSON COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

06-JUN-2019
Date

[signature]
Clerk

Further Information:

**Sheriff's or Server's Return**

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

## CORPORATION - PERSON IN CHARGE

I certify that I have served the within summons in Jackson County, Missouri, upon the within-named defendant corporation, The Housing Authority of Kansas City MO., by leaving a copy of the summons and a copy of the petition at the business office of said defendant corporation with Arlene Henson - Dep. Exec. Dir, who said he/she was the person in charge thereof.

Place of service: 920 Main # 701 KCMO

Date of service: 6-10-19

Time of service: 11:21 AM

**DEPARTMENT OF CIVIL PROCESS**
COURT ADMINISTRATOR'S OFFICE
CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

BY [signature]
DEPUTY

**CIRCT 3033- 12/13**

Total $

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.



Electronically Filed - Jackson - Kansas City - June 13, 2019 - 10:34 AM

# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division: JOEL P FAHNESTOCK | Case Number: 1916-CV15643 |
| Plaintiff/Petitioner: A. G. | Plaintiff's/Petitioner's Attorney/Address ANTHONY E LaCROIX 406 W. 34TH ST SUITE 810 KANSAS CITY, MO 64111 |
| vs. | |
| Defendant/Respondent: THE HOUSING AUTHORITY OF KANSAS CITY, MISSOURI | Court Address: 415 E 12th KANSAS CITY, MO 64106 |
| Nature of Suit: CC Pers Injury-Other | |

(Date File Stamp)

## Summons in Civil Case

**The State of Missouri to:** SECURITAS SECURITY SERVICES, INC
**Alias:**

NATIIONAL REGISTERED AGENTS INC
120 SOUTH CENTRAL AVENUE
CLAYTON, MO 63105

*COURT SEAL OF*

*JACKSON COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

06-JUN-2019
Date

[signature]
Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with ______ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☒ (for service on a corporation) delivering a copy of the summons and a copy of the petition to FILIPPO CARNEMOLLA (name) C.T. CORPORATION, REGISTERED AGENT (title).

☐ other ______.

Served at 120 S. CENTRAL AVE., STE 400, CLAYTON, MO 63105 (address)

in ST. LOUIS (County/~~City of St. Louis~~), MO, on JUNE 10, 2019 (date) at 12:35 pm (time).

RICHARD LANGDON
Printed Name of Sheriff or Server

[signature]
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

(Seal)

Subscribed and sworn to before me on 6-10-19 (date).

My commission expires: 2-22-21
Date

[signature]
Notary Public

ROBERT H. PEDROLI III
Notary Public, Notary Seal
State of Missouri
St. Louis City
Commission # 13754709
My Commission Expires February 22, 2021

**Sheriff's Fees**

| | |
|---|---|
| Summons | $______ |
| Non Est | $______ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $______ (____ miles @ $.____ per mile) |
| **Total** | **$______** |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.



Electronically Filed - Jackson - Kansas City - June 13, 2019 - 10:34 AM

# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JOEL P FAHNESTOCK | **Case Number:** 1916-CV15643 |
| Plaintiff/Petitioner:<br>A. G.<br>**vs.** | Plaintiff's/Petitioner's Attorney/Address<br>ANTHONY E LaCROIX<br>406 W. 34TH ST<br>SUITE 810<br>KANSAS CITY, MO 64111 |
| Defendant/Respondent:<br>THE HOUSING AUTHORITY OF KANSAS CITY, MISSOURI | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Pers Injury-Other | |

(Date File Stamp)

## Summons in Civil Case

**The State of Missouri to:** SECURITAS SECURITY SERVICES, INC
**Alias:**

NATIIONAL REGISTERED AGENTS INC
120 SOUTH CENTRAL AVENUE
CLAYTON, MO 63105

***COURT SEAL OF***

***JACKSON COUNTY***

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

06-JUN-2019
Date

[signature]
Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with ________ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☒ (for service on a corporation) delivering a copy of the summons and a copy of the petition to FILIPPO CARNEMOLLA (name) C.T. CORPORATION, REGISTERED AGENT (title).

☐ other ________.

Served at 120 S. CENTRAL AVE., STE 400, CLAYTON, MO 63105 (address)

in ST. LOUIS (County/~~City of St. Louis~~), MO, on JUNE 10, 2019 (date) at 12:35 pm (time).

RICHARD LANGDON
Printed Name of Sheriff or Server

[signature]
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on 6-10-19 (date).

My commission expires: 2-22-21
Date

[signature]
Notary Public

ROBERT H. PEDROLI III
Notary Public, Notary Seal
State of Missouri
St. Louis City
Commission # 13754709
My Commission Expires February 22, 2021

**Sheriff's Fees**

| | |
|---|---|
| Summons | $______ |
| Non Est | $______ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $______ (____ miles @ $.____ per mile) |
| **Total** | **$**______ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - Jackson - Kansas City - June 17, 2019 - 01:50 PM

**IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI**

A. G.,
Plaintiff,
vs.
The Housing Authority Of Kansas City, Missouri Et Al,
Defendant.

Case Number: 1916-CV15643

# Entry of Appearance

Comes now undersigned counsel and enters his/her appearance as attorney of record for Securitas Security Services, Inc, Defendant, in the above-styled cause.

/s/ Patrick M. Hunt
Patrick Michael Hunt
Mo Bar Number: 63898
Attorney for Defendant
210 Plaza West Building
4600 Madison Avenue
Kansas City, MO 64112
Phone Number: (816) 531-7200
phunt@batyholm.com

**Certificate of Service**

I hereby certify that on June 17th, 2019, a copy of the foregoing was sent through the Missouri eFiling system to the registered attorneys of record and to all others by facsimile, hand delivery, electronic mail or U.S. mail postage prepaid to their last known address.

/s/ Patrick M. Hunt
Patrick Michael Hunt

Electronically Filed - Jackson - Kansas City - June 17, 2019 - 01:49 PM

**IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI**

A. G.,

Plaintiff,

vs.

The Housing Authority Of Kansas City, Missouri Et Al,

Defendant.

Case Number: 1916-CV15643

# Entry of Appearance

Comes now undersigned counsel and enters his/her appearance as attorney of record for Securitas Security Services, Inc, Defendant, in the above-styled cause.

/s/ Stanley N. Wilkins

Stanley Neal Wilkins
Mo Bar Number: 28221
Attorney for Defendant
4600 Madison Avenue
Suite 210
Kansas City, MO 64112
Phone Number: (816) 531-7200
swilkins@batyholm.com

**Certificate of Service**

I hereby certify that on June 17th, 2019, a copy of the foregoing was sent through the Missouri eFiling system to the registered attorneys of record and to all others by facsimile, hand delivery, electronic mail or U.S. mail postage prepaid to their last known address.

/s/ Stanley N. Wilkins

Stanley Neal Wilkins

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT KANSAS CITY**

| | | |
|---|---|---|
| A.G., Individually, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1916-CV15643 |
| v. | ) | |
| | ) | Division 9 |
| THE HOUSING AUTHORITY OF KANSAS CITY, MISSOURI | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SECURITAS SECURITY SERVICES USA, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED PETITION**

COMES NOW Plaintiff A.G., by and through counsel, and alleges as follows:

1. The Defendants subjected Plaintiff to a living hell of pervasive sexual harassment and multiple sexual assaults at her home. Defendants were deliberately indifferent to Plaintiff's plight and to her multiple requests for emergency transfer. Plaintiff suffered daily harassment by male tenants who threatened her safety and well-being in a public housing complex rife with open criminal conduct, pervasive drug use, people having sex in the stairwells, elevator assaults on women, and management indifference. Defendants failed miserably and negligently in the provision of security to Plaintiff and in providing a non-discriminatory housing environment. As a result, Plaintiff suffered additional sexual assaults and harassment.

2. Plaintiff A.G. was at all times relevant to this Petition a resident and citizen of Missouri. At the time of the sexual assaults and harassment giving rise to the claims set forth herein, Plaintiff was a resident of Brush Creek Towers, the subject premises owned and controlled by Defendant The Housing Authority of Kansas City, Missouri ("HAKC"), located

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

at 1800 Emmanuel Cleaver II Blvd., Kansas City, Missouri. Plaintiff is referred to in this public filing by pseudonym to maintain confidentiality of her identity due to the sensitive nature of the claims asserted herein.

3. Defendant HAKC is an entity created by statutory authority doing business in the state of Missouri, including the management and operation of residential housing units in Kansas City, Jackson County, Missouri. At all times referenced herein, HAKC operated through agents, servants, and/or employees who were acting within the course and scope of their employment. Defendant HAKC can be served through its Executive Director at 920 Main St., Ste. 701, Kansas City, MO 64105.

4. At all times relevant to this Petition, Defendant HAKC was the owner, controller, operator, manager and landlord of residential property doing business as Brush Creek Towers, located at 1800 Emmanuel Cleaver II Blvd., Kansas City, Missouri (hereinafter “Brush Creek Towers” or “the “subject premises”).

5. Defendant Securitas Security Services USA, Inc. (“Securitas”) is a Delaware corporation in good standing, authorized to do business in Kansas City, Missouri. Defendant Securitas is a consulting and security company hired by Defendant HAKC to provide security services at the subject premises. Defendant Securitas was under the direct supervision, employ and control of Defendant HAKC. Defendant HAKC hired, supervised, and paid Defendant Securitas. At all relevant times, Defendant Securitas acted upon authority of and at the request and/or permission of Defendant HAKC as an employee and/or agent. Defendant Securitas’ employees were acting within the course and scope of their employment at all times referenced herein. Defendant Securitas can be served through its registered agent, National Registered Agents, Inc., 120 South Central Ave. , Clayton, MO 63105.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

6. This Court has jurisdiction over the causes of action asserted herein and over the parties to this action. Plaintiff asserts claims under Missouri statutes and common law and The Fair Housing Act, 42 U.S.C. 3601, *et seq*. Defendants reside and/or are licensed to do business or transact business in Missouri and have obtained the benefits of the laws of the State of Missouri and the benefits of Missouri's location. Further, the tortious acts described herein occurred in Kansas City, Missouri which is located in Jackson County, within the State of Missouri.

7. Venue is proper in this court under R.S.Mo. §508.010 (6), because Plaintiff was first injured in Kansas City, Missouri which is located in Jackson County, Missouri.

8. Plaintiff moved into the Brush Creek Towers, located at 1800 Emmanuel Cleaver II Blvd., Kansas City, Missouri, in October 2016.

9. The Brush Creek Towers apartment complex falls under the "housing choice voucher program," which is a rental assistance program funded by the U.S. Department of Housing and Urban Development to assist very low-income families, the elderly, and the disabled.

10. Defendant HAKC represents to the general public that the purpose of the housing choice voucher program is to provide "decent, safe, and sanitary housing in the private market."

11. Defendant HAKC further represents that "the role of the landlord in the voucher program is to provide decent, safe, and sanitary housing to a tenant at a reasonable rent."

12. On its public website, Defendant HAKC provides that the Brush Creek Towers includes a "secured entrance" and "24-Hour maintenance."

13. Defendant HAKC hired Defendant Securitas to provide security services at the subject premises.

14. When Plaintiff became a tenant of Brush Creek Towers, she entrusted her safety and well-being to the protection of Defendants HAKC and Securitas.

15. Plaintiff relied on Defendants HAKC and Securitas to provide a safe, discrimination-free living place.

16. Defendants HAKC and Securitas owed Plaintiff a duty to provide a safe living place and to protect her from injury.

17. Defendants HAKC and Securitas knew or should have know of the pervasive environment of sexual harassment and assault at Brush Creek Towers, and had the power to correct it and control over residents, yet failed to take reasonable steps to prevent sexual assault and sexual harassment.

18. From the time she moved into Brush Creek Towers in October 2016, and through June of 2017, Plaintiff made several reports, both formal and informal, to then-manager Regina Boles and another HAKC employee, notifying them of the assaults and her safety concerns, which included incidences of sexual assault by at least two specific individuals.

19. Plaintiff and other Brush Creek Tower tenants also reported other criminal activity by tenants and guests, including the use of illegal drugs.

20. Despite receiving notice of criminal activity occurring on its premises, Defendants HAKC and Securitas failed to investigate, address, and remedy the dangerous conditions.

21. Despite complaints, reports and knowledge of sexual assaults made by Plaintiff and other Brush Creek Tower tenants, Defendants HAKC and Securitas failed to provide adequate security.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

22. As a result of the unsafe and sexually discriminatory environment, Plaintiff requested, through Regina Boles, an emergency transfer to a safer housing environment in April of 2017.

23. HAKC, through Regina Boles, did not share Plaintiff's request for a transfer with others at HAKC until May 18, 2017, at which time she sent a cursory email to other HAKC employees, vaguely inquiring as to whether anyone "had a one bedroom unit available." HAKC did not act on this inquiry.

24. In the Spring of 2017, a male resident knocked on Plaintiff's door and asked to borrow some cooking oil. He then grabbed Plaintiff's breast, causing her to scream. Plaintiff reported this incident to HAKC management.

25. On May 13, 2017, Plaintiff was sexually assaulted, by a different man, as she was leaving the laundry room located on the 12th or top floor. When Plaintiff stepped onto the elevator to return to her room, a visibly intoxicated man holding a beer in his hand rushed into the elevator behind her. He spoke about Plaintiff's breasts and rubbed his genitals, reached out and grabbed Plaintiff's breasts and genitals, attempted to unzip his pants and rip off Plaintiff's shirt, forced his tongue towards her and demanded oral sex, and again grabbed Plaintiff's breasts.

26. Plaintiff fought to defend herself from the attacker, while yelling for him to stop.

27. When the elevator reached the main floor, Plaintiff ran for the security desk.

28. The Securitas employee initially intervened by restraining the assailant.

29. The Securitas employee, however, failed to contact the Kansas City Police Department to report the assault and then let the assailant go.

30. After the assault, Plaintiff was taken to a hospital for treatment of her injuries.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

31. Defendants HAKC and Securitas knew about the dangerous propensities of the individual responsible for sexually assaulting Plaintiff on May 13, 2017, prior to the assault.

32. In fact, Brush Creek Tower tenants lodged numerous complaints about the individual due to his heavy use of alcohol on the premises.

33. Defendants HAKC and Securitas, including HAKC manager Regina Boles, knew the individual was not a contractual tenant, knew he was nevertheless residing at the subject premises, and described him as a "home sitter," but failed to investigate, address, or remedy the situation.

34. The assailant of the May 13, 2017 assault was previously known to HAKC and Securitas to be dangerous, to be the subject of numerous previous complaints, and to be residing in Brush Creek Towers even though he was not a contractual tenant.

35. In June 2017, Defendants invited Brush Creek Tower tenants to an open meeting to discuss, among other things, tenant safety.

36. During the meeting, tenants voiced safety concerns to the committee after learning of the May 13, 2017 assault. The attendees demanded increased security personnel, the need for security to take on an increased patrol of the premises, including the 12th floor laundry room, and issues surrounding then-manager, Regina Boles.

37. On June 6, 2017, Plaintiff was again sexually assaulted in the elevator.

38. Despite receiving ample notice, prior to June 6, 2017, of sexual assaults and harassment and criminal activity taking place on its premises, the need for adequate and/or increased security, and Plaintiff's emergency transfer request, Defendants HAKC and Securitas failed to address a known and dangerous condition, and failed to take any action to prevent additional assaults upon Plaintiff and others, despite having knowledge of the dangerous,

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

harassing, and discriminatory conditions and the ability to correct the situation and provide Plaintiff a safe living place free of harassment and discrimination.

39. As a result of Defendants' negligent and discriminatory conduct, Plaintiff's safety and well-being were compromised. Plaintiff began experiencing depression, anxiety, and loss of quality of life. Plaintiff struggled using the elevator to go up to the laundry room due to the fear and mental distress from the sexual assaults.

40. After June 6, 2017, Plaintiff again requested that Defendants move her to another location falling under the housing choice voucher program, on an emergency basis.

41. After June 6, 2017, male tenants continued to sexually harass Plaintiff on the subject premises.

42. As of June 14, 2017, Plaintiff's request for an immediate transfer had not been approved.

43. Plaintiff was again sexually assaulted on the elevator on June 27, 2017. A resident blew down her shirt so he could see Plaintiff's breasts. This resident was a well-known offender as multiple complaints had been lodged against him including harassment, domestic violence, threats, and drugs.

44. When Plaintiff complained about this assault, Regina Boles told her, "don't worry, he is on his way out." The assailant was dating a Securitas employee at the time.

45. Plaintiff's request for transfer was not approved, and she was not able to move, until on or about July 1, 2017.

46. As acknowledged by Defendants, the transfer request was labeled "Category 1 - Emergency Transfer: immediate threat to resident life, health or safety."

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

47. Defendants HAKC and Securitas knew of the risks presented to Plaintiff and the other Brush Creek Tower tenants.

48. In the three-year period leading up to the sexual assaults committed on Plaintiff, there were fifteen other reports of assault at the subject premises, including sexual offenses.

49. During that same time period, a total 425 incidents of criminal activity were reported at the subject premises, of which 234 were assaults, disturbances, infliction of bodily harm, or sexual assault.

**First Cause of Action**

50. Plaintiff incorporates all preceding paragraphs, as though fully set forth herein.

51. Defendants owed a duty to their tenants to maintain a safe environment and cure all dangerous conditions.

52. Defendants failed to use ordinary care through the following:

a. Failing to provide adequate security for its premises;

b. Failing to provide adequate security to protect its tenants from crimes similar to those committed frequently in the recent past;

c. Failing to properly utilize and install a video surveillance system;

d. Failing to properly install adequate and multiple video cameras on its premises to cover the entire property;

e. Failing to perform security surveys to identify risks and determine appropriate actions to be taken;

f. Failing to monitor the entire premises, including the laundry facility located on the top floor;

g. Failing to properly, adequately and reasonably patrol and/or inspect its premises in order to ensure it was in a reasonably safe condition as to prevent and/or deter discriminatory and criminal acts upon any party by others;

h. Failing to warn of the dangerous and unreasonably unsafe condition of the premises;

i. Failing to take reasonable steps to protect Plaintiff and other parties from foreseeable harm, assault, battery, and/or injury such as the incident which injured Plaintiff;

j. Failing to properly provide any monitoring devices or other crime prevention mechanisms at the premises;

k. Failing to properly prevent non-tenants from entering the premises;

l. Failing to monitor and control the conduct of non-tenants when they were on or in the premises;

m. Failing to provide adequate lighting to protect its tenants from crimes similar to those committed frequently in the recent past; and

n. Failing to take all reasonable safety precautions to protect its tenants from crimes similar to those committed frequently in the recent past;

o. Failing to promptly grant Plaintiff's request for an emergency transfer to remove her from the dangerous and discriminatory housing environment and place her in a safe one.

53. As the direct and proximate result of Defendants HAKC and Securitas' actions and inactions, Plaintiff was sexually assaulted and sexually harassed.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

54. As a direct and proximate result of Defendant's actions and inactions at the subject premises, Plaintiff suffered from the following injuries great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, shame, humiliation, and loss of enjoyment of life, and future expenses for medical and psychological treatment, therapy, and counseling.

51. Plaintiff is also entitled to recover damages for the conscious fear, pain and suffering, and mental anguish endured as she feared for her life, safety, and well-being after being sexually assaulted.

52. Further, the injuries sustained by Plaintiff were the result of Defendants HAKC and Securitas' willful, wanton and conscious disregard for her health and safety. As a result, Plaintiff is entitled to punitive damages.

**Second Cause of Action**

53. Plaintiff incorporates all preceding paragraphs, as though fully set forth herein.

54. By their actions and inactions, Defendants HAKC and Securitas have discriminated against Plaintiff in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection with such rental, because of Plaintiff's sex, and interfered with Plaintiff's exercise and enjoyment of her rights under the Fair Housing Act, in violation of 42 U.S.C. §3604 and §3617.

55. Defendants HAKC and Securitas had actual notice of tenant-on-tenant assault and harassment based on sex, yet chose not to take reasonable steps within their control to stop the assaults and harassment.

56. Defendants HAKC and Securitas created and subjected Plaintiff to a housing environment of unwelcome, severe and pervasive sexual harassment that interfered with



Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Plaintiff's use and enjoyment of the premises and the terms and conditions of her occupation of the dwelling.

57. Defendants HAKC and Securitas knew or reasonably should have known of the harassment to which Plaintiff was subjected, as well as the harassing environment of Brush Creek Towers generally.

58. Defendants HAKC and Securitas failed to take prompt action to correct and end the discriminatory housing practices experienced by Plaintiff and others, despite having the power to do so.

59. Defendants HAKC and Securitas were deliberately indifferent to the discriminatory housing environment to which they subjected Plaintiff, as well as to Plaintiff's requests for immediate transfer.

60. As a public housing authority and its retained security company, Defendants HAKC and Securitas had an uncommon ability to control its tenants, especially residents known to have engaged in unwelcome and criminal activity in the past.

61. Defendants HAKC and Securitas had a range of mechanisms at their disposal to correct the harassment and assaults to which Plaintiff was subjected including, but not limited to, promptly approving Plaintiff's repeated emergency transfer requests, removing offending individuals from the premises prior to repeated occurrences, revoking vouchers for public housing assistance, arresting criminal offenders or referring them to the Kansas City Police Department for arrest and prosecution, issuing and enforcing notices to quit, issuing threats of eviction, and eviction.

**Third Cause of Action**

62. Plaintiff incorporates all preceding paragraphs, as though fully set forth herein.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

63. Defendants HAKC and Securitas entered into a Service Agreement (Exhibit A), the terms of which were in effect throughout Plaintiff's residency at Brush Creek Towers.

64. A central purpose of the Service Agreement is to ensure the personal safety and security of Brush Creek Towers tenants.

65. The terms of the Service Agreement clearly and directly express an intent to benefit tenants of Brush Creek Towers, a class of individuals that included Plaintiff while she was a resident. These terms include, but are not limited to, Securitas' agreement to "provide security services for the protection of all HAKC tenants. . . against vandalism, theft, trespass, fire, bodily harm and any other events detrimental to the security of such individuals" at Brush Creek Towers.

66. The terms of the Service Agreement obligate Securitas to comply with "all applicable federal laws, state laws, HUD regulations, and HAKC directives, and policies," including all such laws, directives, and policies specifically directed toward ensuring the safety and security of tenants and a nondiscriminatory, harassment-free living environment.

67. The services to be provided under the Service Agreement include those specifically described in the Request for Proposal date September 29, 2014. (Exhibit B).

68. The Request for Proposal expressly states the intent of HAKC that the contractor is to provide security services for the protection of all HAKC tenants from trespass, bodily harm and any other events detrimental to the security of tenants at Brush Creek Towers. Because the Service Agreement expressly incorporates the service descriptions in the Request for Proposal, Securitas has also expressly stated and agreed to its intent that the Service Agreement is specifically directed toward the benefit of Brush Creek Towers tenants, a class of individuals that included Plaintiff.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

69. The provisions of the Service Agreement were intended for the direct benefit of Plaintiff, and both Securitas and HAKC assumed a direct obligation to Plaintiff under the Service Agreement.

70. In entering into the Service Agreement, HAKC expressly intended to confer benefits on Plaintiff and other Brush Creek Towers residents, including the benefits of personal security and safety, by employing Securitas to discharge HAKC's obligations to Plaintiff and other Brush Creek Towers residents.

71. Securitas breached the Security Agreement by failing to provide the services it was obligated to perform, as set forth herein and including, but not limited to, allowing nonresidents to enter and remain in the building, failure to properly hire or train security guards, failure to provide an escort to Plaintiff and others when requested, failure to observe or enforce HAKC and Securitas policies and procedures, and failure to protect HAKC residents including Plaintiff from bodily harm and other events detrimental to Plaintiff's security.

72. As a result of Securitas' breach of the Service Agreement, Plaintiff suffered injuries including bodily injury, pain, suffering, and severe emotional distress, and the need to seek and obtain a transfer to a new home.

73. As an intended beneficiary to the Service Agreement, Plaintiff is entitled to recover damages, including special or consequential damages, and equitable relief, including restitution, disgorgement and injunctive relief, against Defendants.

**Fourth Cause of Action**

74. Plaintiff incorporates all preceding paragraphs, as though fully set forth herein.

75. Plaintiff leased from HAKC a residence at Brush Creek Towers, primarily for personal and household purposes.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

76. In making false representations to Plaintiff regarding the safety and security of Brush Creek Towers, HAKC employed deception, fraud, false pretenses, false promises, misrepresentations, unfair practices and the concealment, suppression, or omission of material facts in connection with the sale or advertisement of Plaintiff's former residence in Brush Creek Towers.

77. HAKC's false representations to Plaintiff occurred both before and during her tenancy at Brush Creek Towers.

78. Plaintiff suffered an ascertainable loss of money or property as a result of HAKC's unlawful practices, as defined by Section 407.020, RSMo. Such ascertainable losses include the loss of Plaintiff's residence at Brush Creek Towers, rents paid, and Plaintiff's property interest in personal security and safety as provided by federal and state laws, including landlord-tenant and fair housing laws.

79. Plaintiff suffered and is entitled to recover actual damages for HAKC's violations of the Missouri Merchandising Practices Act, Section 407.010 RSMo, et seq. Plaintiff is further entitled to recover, in the Court's discretion, an award of punitive damages and reasonable attorney's fees, and appropriate equitable relief.

WHEREFORE, Plaintiff asks that the Court enter judgment against Defendants as follows:

1. Award actual, compensatory, special, consequential and punitive damages and equitable relief in favor of the Plaintiff against Defendants for damages sustained as a result of the wrongdoing and breach of contract of Defendants;

2. Award Plaintiff her costs and expenses incurred in this action;

3. Declare that Defendants' actions, inactions, and practices, as alleged herein, violate the Fair Housing Act;

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

4. Enjoin Defendants, their agents, employees, and successors, and all other persons in active concert or participation with them, from:

a. Discriminating on the basis of sex, including engaging in sexual harassment, in any aspect of the rental or lease of a dwelling;

b. Discriminating in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, on the basis of sex;

c. Stating any preference, limitation, or discrimination on the basis of sex;

d. Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights under the Fair Housing Act;

e. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendants' past unlawful practices to the position they would have been in but for the discriminatory conduct; and

f. Failing or refusing to take such affirmative steps as may be necessary to prevent recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of Defendants' unlawful housing practices; and

5. Award actual and punitive damages, pursuant to 42 U.S.C. §§3612(o)(3) and 3613(c)(1), to Plaintiff; and

6. Award reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 3612(p), 3613(c)(2), and § 407.025.1, RSMo to Plaintiff; and

7. Grant such other and further relief as the Court deems appropriate and just.

**Plaintiff demands a trial by jury on all issues triable in this case.**

Respectfully Submitted,

/s/ Anthony E. LaCroix

Anthony E. LaCroix MO No. 60793
LACROIX LAW FIRM, LLC
406 W. 34th St., Suite 810
Kansas City, Missouri 64111
Telephone: (816) 399-4380
Fax: (816) 399-4380
Email: tony@lacroixlawkc.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that, in conformity with Rule 55.03(a), the original of this electronic filing was signed by me and will be maintained in my file. I further certify that on this 20th day of June, 2019, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system, which will send notice and a copy of the electronic filing to the following:

Stanley N. Wilkins – swilkins@batyholm.com
Patrick M. Hunt – phunt@batyholm.com
*Attorneys for Securitas Services USA, Inc.*

I further certify that on this 20th day of June, 2019, I sent a copy of the foregoing and all attachments, via U.S. mail, to:

The Housing Authority of Kansas City, Missouri
Edwin Lowndes, Executive Director
920 Main St., Ste. 701
Kansas City, MO 64105

/s/ Anthony E. LaCroix
**ATTORNEY FOR PLAINTIFF**

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

# SERVICE AGREEMENT

EXHIBIT
A

**Security Services – Brush Creek Tower & Pemberton Heights**
**Contractor: Securitas Security Services USA, Inc.**
**Agreement No. 214087901**

This **Agreement** is made this **8th day** of **December, 2014** by and between, the **Housing Authority of Kansas City, Missouri, (HAKC)**, a Missouri Municipal Corporation, created pursuant to RSMo. §99.040, having its principal place of business at **920 Main Street, Suite 701, Kansas City, MO 64105**, and **Securitas Security Services USA, Inc.** having its principal place of business at **4330 Park Terrace Drive, West Lake Village, CA 91361.**

**1. DEFINITIONS**

**1.1** "HAKC" means the Housing Authority of Kansas City, Missouri, its Receiver, Special Master, Board, Commissioners, Directors, Managers and employees.

**1.2** "HUD" means the U.S. Department of Housing and Urban Development.

**1.3** **"Agreement"** means this **SERVICE AGREEMENT** dated **December 8th, 2014** entered into between HAKC and Contractor. This **Agreement** also includes the following component parts/documents: 1) the **Proposal submitted by the Contractor**, in response to the solicitation, 2) the **Scope of Contract Services**, 3) the Specifications, if any and 4) Form HUD 5369-C. "Agreement" also includes any written and signed changes to any of these documents, by Addendum, Change Order, or other written and signed modification.

**1.4** "Contractor" means the person or other entity entering into this **Agreement** with HAKC to perform all of the Work required under this **Agreement.**

**1.5** "Contracting Officer" means the authorized person who signed this **Agreement** for HAKC.

**1.6** "Day" means a calendar day unless otherwise indicated.

**1.7** "Default" means the failure of the Contractor to fulfill the contract obligations.

**1.8** "Services" means the promises, tasks, responsibilities, and duties that Contractor promises to perform and deliver to HAKC as set forth in this **Agreement** and specifically described in the **Request for Proposals** and further described in Part two, **Scope of Services** and the **Contractor's Written Proposal.**

**1.9** "Work" means the Services performed by the Contractor pursuant to this **Agreement.**

**2. TERM OF AGREEMENT**

**2.1** The term of this **Agreement** shall begin as of the date of the **Notice to Proceed and shall be for a period of Two (2) years – January 1, 2015 to December 31, 2017 with the option to renew twice for a further one (1) year period.** In no event shall the term of **Agreement** be extended beyond **December 31, 2019.**

**2.2 SERVICES**

**3.1** Pursuant to the terms of this **Agreement**, the Contractor shall perform the services as described in the **Scope of Contract Services**, including all written amendments to the **Scope of Contract Services** and the **Contractor's Written Proposal** incorporated herein by this reference.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

**3.2** Unless otherwise specified in the **Scope of Contract Services**, the Contractor shall furnish all tools, material, labor, and equipment to perform the required services to be delivered under this **Agreement**. All work is to be completed free of defects in material, workmanship, and performed according to the **Scope of Contract Services** and specifications, if any.

**3.3** The Contractor is acting at all times as an independent contractor.

**3.4** The Contractor shall exercise sound business judgement in performing under the terms of this **Agreement** and shall comply with all applicable federal laws, state laws, HUD regulations, and HAKC directives, and policies.

**4. PRICING, BILLING AND PAYMENT**

**4.1** HAKC agrees to pay, and Contractor agrees to accept as compensation for the performance of the Services, in accordance with the attached schedule of prices. This is a fee-for-service **Agreement**.

**4.2** For purposes of billing for the performance of the Services performed under this **Agreement**, the Contractor shall submit monthly an original of each request for payment to HAKC's Accounts Payable. All requests for payment must contain the following information: Contractor's name, address, telephone number, and tax identification number, this **Agreement** number, description of the services performed and the signature of an authorized company official.

**4.3** HAKC shall pay the Contractor within thirty (30) calendar days following receipt of the request(s) for payment, acceptance of the work, and all required documentation (i.e. all requests for payment must be signed by the HAKC designee(s) certifying acceptance of the work, confirmation of pricing, etc.)

**5.0 PERSONNEL**

**5.1** The contact person representing the Contractor shall be **Lance Flint,Branch Manager.** All communication between HAKC and the Contractor's personnel on the project shall be through **Mr. Flint.** The Contractor shall not replace this contact person without the agreement of HAKC that the substitute person(s) is/are of equal or greater skill and experience. The contact person(s) representing the HAKC shall be:

**Regina Boles, Property Manager, Brush Creek Towers – 816-985-8192**
**Nicole Woods, Property Manager, Pemberton Heights – 816-564-2581**

**5.2** The Contractor shall be responsible for the conduct and discipline of his employees. Each person assigned to perform services under this **Agreement** must have sufficient knowledge, skill, and experience to perform properly the work assigned to them. Any employee, who does not perform his work in a skillful manner, appears to be incompetent, or acts in a disorderly or intemperate manner, shall be removed from the job by the Contractor's point of contact at the written request of HAKC. Such removal is not cause for an extension of time in which to complete the work.

**5.3** The Contractor shall comply with Sections 103 and 107 of the Contract Work Hours and Safety Standards Act (40 USC 327-330) as supplemented by the Department of Labor Regulations found at 29 CFR 5.

**5.4** The Contractor agrees to provide for HAKC's approval a list of subcontractors, if any, that will be used to perform the work. Said list of subcontractors shall be delivered to the HAKC prior to execution of this

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

**Agreement**. However, regardless of HAKC's prior approval, Contractor shall be responsible for all actions and/or inactions by said subcontractors as they pertain to the Services performed under the terms of this **Agreement**.

6. **RECORD KEEPING**

The Contractor shall maintain at least one copy of any and all written changes, modifications, or amendments to the **Scope of Contract Services**, the specifications, or this **Agreement** that may be agreed to by the parties. These documents shall be made available to the HAKC for inspection and copying upon the request of the HAKC.

7. **INSPECTION; ACCEPTANCE; LIENS**

7.1 The HAKC shall review, require correction, if necessary, and accept the work produced by the Contractor so long as the work is performed consistent with the terms of this **Agreement**. Such review(s) shall be carried out within thirty (30) business days after submission of documents for approval so as not to impede the work of the Contractor.

7.2 The Contractor shall make any required corrections promptly and return a revised copy of the work to the HAKC within seven (7) calendar days of notification or a later date, if extended by the HAKC.

7.3 Failure by the Contractor to proceed with reasonable promptness and/or to make necessary corrections shall constitute a default under the terms of this **Agreement**.

7.4 The contractor is prohibited from placing a lien on the HAKC's property. This prohibition shall apply to all subcontractors.

8. **CHANGES**

8.1 HAKC may at any time, by written order agreed to by the Contractor, make changes within the **Scope of Contract Services** of this **Agreement** in the services to be performed.

8.2 If any such change causes an increase or decrease in the prices charged, the maximum amount of the **Agreement**, or the time required for performance of any part of the work under this **Agreement**, whether or not changed by the order, or otherwise affects the conditions of this **Agreement**, then HAKC shall make an equitable adjustment in the maximum amount, the price(s), the delivery schedule, or other affected terms and shall modify the **Agreement** accordingly.

8.3 The Contractor must assert its rights to an equitable adjustment under this provision within thirty (30) days from the date of receipt of the written order. However, if the HAKC decides that the facts justify it, the HAKC may receive and act upon a proposal submitted before final payment of the **Agreement**.

8.4 Failure to agree to any adjustment shall constitute a dispute under ¶12.0 Disputes. However, nothing in this provision shall excuse the Contractor from proceeding with the **Agreement**, as changed.

8.5 No services for which an additional cost or fee will be charged by the Contractor shall be furnished without the prior written consent of the HAKC.

9. **AGREEMENT MODIFICATIONS**

9.1 Only the Contracting Officer has authority to modify any term or condition of this **Agreement** on behalf of

the HAKC. Any modifications shall be agreed to by the parties in writing and signed by the Contracting Officer. The Contractor specifically agrees and understands that no verbal modifications are allowed to this **Agreement**.

9.2 The HAKC may modify the **Agreement** unilaterally under the following circumstances: (1) pursuant to a specific authorization as stated in the **Agreement** (e.g., Changes); or (2) for administrative matters which do not change the rights or responsibilities of the parties (e.g., change in HAKC's address). All other modifications shall be in the form of supplemental agreements signed by the Contractor and the Contracting Officer.

**10. DISSEMINATION OF INFORMATION; RETENTION OF RECORDS**

10.1 The Contractor hereby agrees that no information or material in its possession shall be disseminated or disclosed to the general public, the news media or any person or organization, without the prior expressed written approval of the HAKC.

10.2 The HAKC, HUD, or the Comptroller General of the United States, or any of their duly authorized representatives shall, for three (3) years after final payment under this **Agreement**, have access to and the right to examine any of the Contractor's directly pertinent books, documents, papers, or other records involving transactions related to this **Agreement** for the purpose of performing audits, examinations, excerpts, and transcriptions.

10.3 The Contractor agrees to include in first-tier subcontracts a provision substantially the same as ¶10.2. "Subcontract", as used in this provision, means an agreement entered into between the Contractor and another entity to perform a portion of the Work required under the terms of this **Agreement**, excluding any such subcontracts.

10.4 The periods of access and examination in ¶10.2 and ¶10.3 for records relating to (1) appeals under ¶12.0 Disputes, (2) litigation or settlement of claims arising from the performance of services required under the terms of this **Agreement**, or (3) costs and expenses of this **Agreement** to which the HAKC, HUD, or the Comptroller General or any of their duly authorized representatives has taken exception shall continue until disposition of such appeals, litigation, claims, or exceptions.

**11 LIQUIDATED DAMAGES (this section has been removed)**

**12. DISPUTES**

12.1 All disputes arising under or relating to this **Agreement**, including any claims for damages for the alleged breach thereof, which are not disposed of by agreement, shall be resolved under this provision.

12.2 All claims by the Contractor shall be made in writing and submitted to the HAKC. A claim by the HAKC against the Contractor shall be made by a written decision by the HAKC.

12.3 The HAKC shall, with reasonable promptness but in no event more than thirty (30) days, render a decision concerning any claim hereunder. The Contractor has thirty (30) days after receipt of the HAKC decision to notify the HAKC in writing that it takes objects to such decision. After that time period the decision shall be final and conclusive.

12.4 Provided the Contractor has: 1). Given the notice to HAKC within the time stated in ¶12.3 above objecting to HAKC's decision and 2). Brought suit against HAKC not later than one (1) year after receipt of final

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

payment, or if final payment has not been made, not later than one (1) year after the Contractor has had a reasonable time to respond to a written request by HAKC that it submit a final invoice, whichever is earlier, then HAKC's decision shall not be final or conclusive, but the dispute shall be determined on the merits by a court of competent jurisdiction consistent with paragraph 27.1.

**12.5** The Contractor shall proceed diligently with the performance of the services required under this **Agreement**, pending final resolution of any request for relief, claim, appeal, or action arising under the **Agreement**, and shall comply with the decision of the HAKC.

**13. TERMINATION AND DEFAULT**

**13.1** This **Agreement** will terminate immediately if the Contractor becomes ineligible to contract with HUD under applicable laws and regulations.

**13.2** The HAKC may terminate this **Agreement** in whole, or in part, at the convenience of the HAKC or for the failure of the Contractor to fulfill its obligations by default. The HAKC shall terminate this **Agreement** by delivering to the Contractor a Notice of Termination specifying the nature, extent, and effective date of the termination. Upon receipt of the notice the Contractor shall: (1) immediately discontinue all services affected, unless the notice directs otherwise and (2) deliver to HAKC all information, reports, papers, and other materials accumulated or generated in performing this **Agreement**, whether completed or in process.

**13.3** If the termination is for the convenience of the HAKC, and is in whole, the HAKC shall be liable only for payment for services rendered before the effective date of the termination. If the termination is in part, the HAKC shall be liable for payment for services rendered before termination, and compensation for the remainder of the **Agreement** not terminated shall be equitably adjusted as agreed to by the parties at a rate not to exceed the ratio of the remaining services to the original **Agreement**.

**13.4** If the termination is due to the failure of the Contractor to perform its obligations under this **Agreement** by default, the HAKC may require the Contractor to deliver, in the manner and to the extent directed by the HAKC, any work as described in ¶12.2. The Contractor's compensation shall be determined in accordance with ¶8.0 CHANGES TO SCOPE OF WORK. The HAKC may take over the work and prosecute the same to completion by contract or otherwise, and the Contractor shall be liable for any additional cost incurred by the HAKC in excess of the **Agreement** balance. HAKC may withhold payments to the Contractor, for the purposes of set-off or partial payment, as the case may be, of amounts owed to the HAKC by the Contractor.

**13.5** If, after termination for failure to fulfill its obligations by default, it is determined that the Contractor had not failed, said termination shall be deemed to have been for the convenience of the HAKC, and the Contractor shall be entitled to payment as described in ¶ 12.3.

**13.6** Upon the termination of this **Agreement** for any reason, the Contractor shall be obligated to cooperate with the HAKC so that a smooth transition of responsibilities, including immediate delivery to the HAKC, or its designee, all files, papers and records related to the Contractor's performance of this **Agreement**.

**13.7** Any disputes with regard to this clause are expressly subject to the terms of ¶12.0 Disputes.

**14. ORGANIZATIONAL CONFLICTS OF INTEREST**

**14.1** The Contractor warrants that to the best of its knowledge and belief and except as otherwise disclosed, it

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

HAKC004076

does not have any organizational conflict of interest, defined as a situation in which the nature of work under this Agreement and a the Contractor's organizational, financial, contractual or other interests are such that:

**14.1.1** Award of the **Agreement** may result in an unfair competitive advantage; or
**14.1.2** The Contractor's objectivity in performing the services required under the **Agreement** may be impaired.

**14.2** The Contractor agrees that after award of this **Agreement**, it discovers an organizational conflict of interest the Contractor shall make an immediate and full disclosure in writing to the Contracting Officer, which shall include a description of the action, which the Contractor has taken or intends to take to eliminate or neutralize the conflict. The HAKC may, however, terminate the **Agreement** for the convenience of the HAKC if it deems such termination is in the best interest of the HAKC.

**14.3** In the event the Contractor was aware of an organizational conflict of interest before the award of this **Agreement** and intentionally did not disclose the conflict to the Contracting Officer, then HAKC may terminate this **Agreement** for default.

**14.4** The provisions of these paragraphs shall be included in all subcontracts and consulting agreements, if any, wherein the work to be performed is similar to the service provided by the Contractor. The Contractor shall include in all such subcontracts and consulting agreements, any and all provisions necessary to eliminate or neutralize conflicts of interests.

**15. INDEMNIFY AND HOLD HARMLESS**

**15.1** The Contractor agrees to indemnify and hold harmless the HAKC, it's directors, commissioners, officers, managers, and employees against any and all claims, demands, losses and liabilities (including attorney's fees, costs and expenses of defending against such claims) arising out of; 1.) Any act or omission by or on behalf of the Contractor outside the scope of this **Agreement**, and 2) Any act or omission determined to constitute negligence, recklessness, or willful misconduct by the Contractor or the Contractor's agents, employees, representatives, and assigns in the performance of this **Agreement.**

**16. FORCE MAJEURE**

**16.1** Either party may be excused for any delays or default resulting from circumstances beyond its control, including without limitation, riot, war, fire, act of God or other casualty beyond its control.

**17. STANDARD OF CONDUCT; QUALIFICATIONS**

**17.1** The provisions of 24 Code of Federal Regulations 85 are applicable to this **Agreement** and govern the Contractor's standard of conduct and qualifications. A copy of this regulation is available upon request.

**18. ASSIGNMENT OF AGREEMENT**

**18.1** The Contractor shall not assign or transfer any interest in this **Agreement** except claims for monies due or to become due from the HAKC under this **Agreement** may be assigned to a bank, trust company, or other financial institution. If the Contractor is a partnership, this **Agreement** shall inure to the benefit of the surviving or remaining member(s) of such partnership approved by the HAKC.

**19. INTEREST OF MEMBERS OF CONGRESS**

**19.1** No member or delegate to the Congress of the United States of America or Resident Commissioner shall be admitted to any share or part of this **Agreement** or to any benefit to arise there from. This provision shall not be construed to extend to this **Agreement** if made with a corporation for its general benefit.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

HAKC004077

## 20. INTEREST OF MEMBERS, OFFICERS OR EMPLOYEES AND FORMER MEMBERS, OFFICERS OR EMPLOYEES

**20.1** No member, officer, or employee of the HAKC, no member of the governing body of the locality in which the project is situated, no member of the governing body in which the HAKC was activated, and no other public official of such locality or localities who exercises any functions or responsibilities with respect to the project, shall during his or her tenure, or for one (1) year thereafter, have any interest, direct or indirect, in this **Agreement** or the proceeds thereof.

## 21. NONDISCRIMINATION

**21.1** The Contractor agrees not to discriminate against any employee or applicant for employment because of race, color, religion, sex, age, or national origin. The Contractor shall take affirmative action in this regard, posting such notice in conspicuous places and placing such notice in all solicitations or advertisements for employees. The Contractor shall advise each labor union with which it has an agreement, of the Contractor's commitment to nondiscrimination.

## 22. SECTION 3

**22.1** The work to be performed under this contract is subject to the requirement of Section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u (Section 3). The purpose of Section 3 is to ensure that employment and other economic opportunities generated by HUD assistance to HUD assisted projects covered by Section 3, shall, to the greatest extent feasible, be directed to low and very low income persons, particularly persons who are recipients of HUD housing assistance.

**22.2** The parties to this contract agree to comply with HUD regulations in 24 CFR Part 135, which implement Section 3. As evidenced by their execution of this contract, the parties to this contract certify that they are under no contractual or other impediment that would prevent them from complying with the Part 135 regulations.

**22.3** The Contractor agrees to send to each labor organization, or representative of workers, with which the Contractor has a collective bargaining agreement or other understanding, if any, a notice advising the labor organization or workers' representative of the contractor's commitments under this Section 3 clause, and will post copies of the notice in conspicuous places at the work site where both employees and applicants for training and employment positions can see the notice. The notice shall describe the Section 3 preference, shall set forth a minimum number and job titles subject to hire, availability of apprenticeship and training positions, the qualifications for each; and the name and location of the person(s) taking applications for each of the positions; and the anticipated date the work shall begin.

**22.4** The Contractor agrees to include this Section 3 clause in every subcontract subject to compliance with regulations in 24 CFR Part 135, and agrees to take appropriate action, as provided in an applicable provision of the subcontract or in the Section 3 clause, upon a finding that the subcontractor is in violation of the regulations in 24 CFR Part 135. The contractor will not subcontract with any subcontractor where the contractor has notice or knowledge that the subcontractor has been found in violation of the regulations in 24 CFR Part 135.

**22.5** The Contractor will certify that any vacant employment positions, including training positions will be filled; 1.) After the contractor is selected, but before the contract is executed, and 2.) With persons other than those to whom the regulations of 24 CFR Part 135 require employment opportunities to be directed, were not filled to circumvent the contractor's obligations under 24 CFR Part 135.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

HAKC004078

**22.6** Noncompliance with HUD regulations in 24 CFR Part 135 may result in sanctions; termination of this contract for default and debarment or suspension from future HUD funded contracts.

## 23. OTHER REGULATORY REQUIREMENTS

**23.1** The following requirements (full text copies available from the HAKC contracting office) are incorporated by HAKC:

1. Executive Order 11246, Equal Employment Opportunity and 41 CFR 60 for contracts in excess of $10,000.00
2. Anti-Kickback Act 18 USC 874 and 29 CFR 3.

## 24. NOTICES

**24.1** Any notice, payment, demand or communication required or permitted to be given by any provision of this **Agreement** must be in writing and will be deemed to have been given when delivered, by whatever means, to the party designated to receive such notice, or on the date following the day sent by overnight courier, or on the third business day after the same is sent by United States Postal Service, postage and charges prepaid, directed to the addresses noted above, or to such other or additional addresses as either party might designate by written notice to the other party. Electronic facsimile transmission is permitted, but only if a signed original is concurrently mailed first class in the United States postal service as provided herein.

## 25. COUNTERPARTS

**25.1** This **Agreement** may be executed at different times and in any number of counterparts, each of which will be deemed an original document, but all of which will constitute a single document. This document will not be binding upon or constitute evidence of a contract between the parties until such time as a counterpart of this document has been executed, by both parties and a copy thereof delivered to the other party to this **Agreement**.

## 26. LIABILITY AND INSURANCE

### 26.1 GENERAL COMPREHENSIVE LIABILITY

The Contractor, at the Contractor's sole cost and expense, agrees to procure and maintain during the term of this **Agreement** or any extension thereof, General Comprehensive Liability Insurance naming the HAKC as an additional insured and certificate holder and protecting the HAKC from liability judgments, suits and claims, including, but not limited to, suits for bodily injury, personal injury, including false arrest, libel, slander, invasion of privacy and property damage arising out of the Contractor's provision of services under this **Agreement**. The Contractor shall provide the HAKC with a copy of the declaration page of the policy demonstrating that HAKC constitutes an additional insured at the time of execution of this **Agreement**.

For general liability coverage, the contractor shall provide the HAKC with a Certificate of Insurance that names the HAKC as an additional insured and shall carry the following insurance with respect to property and its operations.

Liability/Bodily Injury:

a). Three million dollars ($3,000,000.00) for all claims arising out of a single occurrence;
b). Four hundred thousand dollars ($400,000.00) for any person in a single accident or occurrence;

Property Damage:

c). Five hundred thousand dollars ($500,000.00) for each occurrence

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM
HAKC004079

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

**26.2 AUTOMOBILE LIABILITY POLICY LIMITS**

The Contractor, at the Contractor's sole cost and expense, agrees to procure and maintain during the term of this **Agreement** or any extension thereof, Automobile Liability insurance. The required Automobile Insurance shall contain policy limits of not less than the following:

Bodily Injury:
$500,000 each person,
$500,000 each occurrence; and,

Property Damage:
$500,000 each occurrence.

**26.3 WORKER'S COMPENSATION COVERAGE**

The Contractor, at the Contractor's sole cost and expense, agrees to procure and maintain during the term of this **Agreement** or any extension thereof, Worker's Compensation Insurance. The Worker's Compensation Insurance shall contain policy limits equal to, or greater than, the policy limits required by state or federal law, and not less than:

$500,000 per accident;
$100,000 disease, policy limit;

**26.4 NON-WAIVER OF SOVEREIGN IMMUNITY**

The HAKC is a public entity and political subdivision of the State of Missouri and is protected by the doctrine of sovereign immunity pursuant to Section 537.600 RSMo. The foregoing provisions requiring insurance coverage shall not be deemed a relinquishment or wavier of any kind of limitations of liability provided or available to HAKC under applicable state governmental immunities law. The purpose of this insurance does not include coverage for any liability or suit for damages, which is barred by the doctrines of sovereign or governmental immunity by whatever name, as set forth in RSMo 537.600,et.seq. This policy is not intended to act as a wavier of any defense available to the insured by statute or a common-law.

**27. CHOICE OF LAW/CHOICE OF FORUM**

**27.1** The parties agree that the laws of the State of Missouri and any applicable federal statutes, laws, and regulations shall govern this **Agreement**. The parties further agree that a court of competent jurisdiction within Jackson County, Missouri, shall have exclusive jurisdiction over all causes of action asserted by or against the HAKC that arise out of or relate to this **Agreement**.

**28. ENTIRE AGREEMENT; SEVERABILITY**

**28.1** This **Agreement,** and the materials incorporated herein by reference, including any exhibits and attachments, constitutes the entire agreement between the parties. There are no agreements, understandings, warranties or representations between the parties except as set forth herein. No change or modification of this **Agreement** shall be valid unless in writing and signed by the Contracting Officer of the HAKC. If any provision of this **Agreement** is determined to be illegal, invalid or unenforceable, the remaining provisions shall remain in full force and effect. It is the intention of the parties that if any such provision is held to be illegal, invalid or unenforceable, there will be added in lieu thereof a provision as similar in terms to such provision as is possible which is legal, valid and enforceable.

**29. INCORPORATION OF HUD FORM 5369-C and 5370-C**

29.1 This **Agreement** shall also include HUD Forms 5369-C and 5370-C, attached hereto and incorporated herein by reference. In the event of a contradiction or inconsistency between any term or provision of this **Agreement** (or any of its component parts) and HUD Form 5369-C and 5370-C, the parties agree that HUD Form 5369-C and 5370-C, shall govern and control with respect to the subject term or provision.

**IN WITNESS WHEREOF, EACH PARTY HAS SIGNED OR CAUSED THIS INSTRUMENT TO BE SIGNED ON ITS BEHALF BY ITS DULY AUTHORIZED AGENT.**

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

HAKC004081

**HOUSING AUTHORITY OF KANSAS CITY, MISSOURI**

By: [signature] Date: 12/08/2014

Name: **Edwin T. Lowndes**

Title: **Executive Director**

Address: 920 Main Street, Suite 701
Kansas City, Missouri 64105

**CONTRACTOR:** **Securitas Security Services USA, Inc.**

By: [signature] Date: 12/8/14

Printed Name: JASON LUENZ Federal Tax I.D. Number: **71-0912217**

Title: AREA VICE PRESIDENT

Address: **4330 Park Terrace Drive**

**West Lake Village, CA 91361**

**General Requirements:**

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

**AMENDMENT**
**Modifying Service Agreement (Agreement No. 214087901) Between Housing Authority of Kansas City, Missouri ("Client") and Securitas Security Services USA, Inc. ("Company")**

The Service Agreement, and anything attached to, incorporated into or otherwise forming part of it (collectively, the "Agreement"), is modified as of its commencement as follows, and in case of any difference the following controls:

1. Company will defend, controlling such defense, and indemnify Client, and others to be defended or indemnified under the Agreement, against any claim or loss only to the extent the claim or loss is caused by the negligence of Company while acting within the scope of its specified duties. However, Company's liability will in no event exceed $3 million. Further, Company will not be liable for any (a) punitive or consequential damages or (b) injuries or deaths arising from any conditions of Client's premises. Additional insureds will only be covered by Company's insurance for liability assumed by Company in these Exceptions, subject to the terms of Company's insurance.
2. Notwithstanding anything to the contrary, in connection with the US Safety Act, each party waives all claims against the other for damages arising from or related to an act of terrorism, and the parties intend for this waiver to flow down to their respective contractors and subcontractors.
3. Disputes not settled must be resolved by a neutral third party.
4. It is Company's understanding that the Affordable Care Act will affect all businesses within the United States. In the event the Affordable Care Act results in increased costs due to new healthcare premiums or mandated health coverage for Company officers providing services under the Agreement, Company reserves the right to request renegotiation of the rates to account for such increased costs, and Client agrees to negotiate with Company in good faith if such a request is made. Company will work closely with Client at introducing value added services, including technology, to mitigate any potential rate increases.
5. Client acknowledges that Company is not a Section 3 business and does not meet the definition of a Section 3 business concern.
6. Either Client or Company may terminate the Agreement without cause or penalty upon thirty days' written notice. Also, either party may terminate the Agreement if Company's insurer cancels or materially alters Company's insurance.

Housing Authority of Kansas City, Missouri

By: Edwin Lowndes

Name: Edwin Lowndes

Title: Executive Director

Date: 12/08/2014

Securitas Security Services USA, Inc.

By: Jason Luenz

Name: JASON LUENZ

Title: AREA VICE PRESIDENT

Date: 12/8/14

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

# Contract Scope of Services
## 2-14-08-79-01

**General Requirements:**

Securitas USA (Contractor) will be responsible for the following tasks:

A. Contractor shall provide security services for the protection of all HAKC tenants, their employees, customers, invitees, management and staff against vandalism, theft, trespass, fire, bodily harm and any other events detrimental to the security of such individuals, assets or property at the developments indicated below:

| | |
|---|---|
| Pemberton Heights<br>3710 E. 51st Street<br>Kansas City, MO 64130 | Brush Creek Towers<br>1800 Emmanuel Cleaver II Blvd<br>Kansas City, MO 64130 |

B. The contractor shall provide unarmed security services at each development for twelve (12) hours a day, seven days a week. The hours are typically 6:00 p.m. to 6:00 a.m. HAKC reserves the right to adjust the hours or number of Security Officers to be provided under this Agreement by providing a twenty-four (24) hour written notice.

C. The Security Officers shall be completely outfitted with uniforms, identification and other equipment as needed and as deemed acceptable by HAKC.

D. The Security Officers shall provide ingress and egress control as well as foot patrol throughout the areas designated by the HAKC and document in the log book, the time of each foot patrol and any irregularities noted and action taken.

E. Contractor and HAKC jointly shall prepare a standard set of rules to be known as the Security Post Orders ("Orders"). The Orders will detail the specific duties and performance levels for the Security Officers. Modifications or additions to the Orders may be made by HAKC at any time upon written notification to Contractor.

F. Unannounced inspection of the Security Officers on duty shall be conducted at least one (1) time weekly by one of Contractor's supervisory staff on each Site. A copy of these inspection reports shall be submitted to HAKC with invoice submissions.

G. In addition to the requirements for invoicing outlined in the Services Agreement, the Contractor must provide HAKC a sign-in sheet listing the Security Officer's name, development, sign-in and sign-out time for the shift and signature of the Security Officer.

H. Contractor shall maintain a 24-hour per day dispatch number in Contractor's office. Contractor's dispatch must be capable of communicating with Security Officers by radio communications from Contractor's 24-hour dispatch office located in Contractor's office.

I. The Contractor must comply with the requirements of all applicable licensing provisions, City Ordinances and State Law as related to private security. Contractors must provide verification of registration with Secretary of State of Missouri.

**Staffing Requirements:**

**A.** Guard must be well groomed at all times while on duty. This includes clean, well-fitted pressed uniforms and polished shoes. Personal hygiene and neatness are of prime importance.

**B.** In compliance with HAKC's 'No Smoking' policy, guards will refrain from smoking anywhere on HAKC premises. Failure to abide by this policy shall result in immediate removal from assigned post.

**C.** Contractor will have adequate employees available to handle any necessary substitutions in operational hours, as well as, regular hours of operations. Security Guard Service must be able to provide guards without a lapse in service when shifts are changed.

**D.** Contractor will compensate its employees in accordance with all Department of Labor Regulations. **Overtime will not be paid for this service, and is a disallowable cost.** The same rate per hour per guard will apply and schedules should be adjusted to allow for this requirement.

**E.** Contractor will furnish security guards with standard uniform. Contractor shall display an approved sign or emblem indicating that the premises are being protected by them. Company badges shall be prominently displayed on the security guard's uniform and/or cap. The unarmed guard will be trained and equipped with, as appropriate, flashlight, police whistle, notebook, pen and defensive or communication devices. Security guards must be in full uniform while on duty. Guards are to be trained in the use of any equipment that they may use in their duties.

**F.** Contractor shall assign an experienced account manager who shall be responsible for assuring that all requirements described herein are fulfilled. This

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

person must be a proven manager, who will be able to interact effectively with HAKC management and line personnel. Furthermore, higher-level managers shall support the account manager. The account manager shall have access to company resources, such as electronic databases and other automated systems necessary to uphold the contract. For example, if HAKC requests development of a time and action plan for a specific locale, the account manager should be able to generate such a plan drawing from company resources.

**G.** Supervision of assigned personnel shall be provided on a daily basis throughout the timeframe of the assigned shift. Supervisors shall be available to the HAKC Property Management staff.

Supervisors shall have prior security experience, know and understand the operational aspect of the security business, be an appropriate role model, and have an ability to teach, guide and direct effectively. Supervisors shall employ measurable performance criteria in their evaluation of employees.

**H.** All assigned personnel shall be able to read, speak, understand and write the English language. Specifically, assigned personnel shall be able to report emergencies to 911 and HAKC's designated emergency respondent and write clear and legible Incident Reports. Assigned personnel must be able to read and understand all posted warning and danger signs of potential hazards and safety instructions.

**Technical Requirements:**

**A.** Contractor will ensure all guards assigned under the Contract adhere to and comply with all applicable Federal, State of Missouri, Jackson County and City of Kansas City laws governing security guards.

**B.** Guard shall protect all persons from bodily harm or injury. This includes acting as an escort to any HAKC employee requesting such service with the assigned location, and includes escort of persons to their vehicles parked in parking lot.

**C.** Guard shall perform other such functions as may be appropriate and necessary in the event of situations or occurrences affecting the security of the facility. I.e. fires, accidents, internal disorders, emergencies, or other criminal acts.

**D.** Guard is to observe all persons entering or leaving the HAKC premise, as well as, provide crowd control at entrances and exits. Additionally, the guard is required to ask visitors for a form of governmental photo identification prior to entry to HAKC buildings. This information is to be documented on the visitor sign-in sheet.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

E. Guard is to maintain order while the HAKC is in operations, and while customers, employees, visitors, and others are using the facility.

F. Guard shall contact persons gaining unauthorized access to the HAKC and ask them or any unruly persons to leave. Guard will immediately call 9-1-1 in the event of any crisis situation or if those persons refuse to leave, since those persons would now be Trespassing on HAKC property. Guard shall have training in self-defense techniques to prevent injury to their person or any person on HAKC property.

G. If cameras are installed and operating, the guard is required to periodically monitor security cameras, and take any necessary actions to control any security breach, as the situation warrants.

H. Guard must possess ability to face situations firmly, tactfully, and with respect for the rights of others. Guard must be able to demonstrate emotional stability during periods of tension and stress while carrying out assigned duties and ability to maintain control in crisis situations.

I. Guard must possess thorough knowledge of security rules, regulations, procedures, and through knowledge of the laws of arrest.

J. HAKC encourages additional languages, other than English. However, English is the majority language for communication, oral or written.

K. Contractor will ensure all locations and/or posts are fully staffed.

L. A prohibition against the use of alcohol or narcotics while on duty must be included in the orders to the guard, in order to abide by the Drug Free Workplace Requirements. The prohibition of criminal and unethical behaviors, as well as, neglect of official duties, and inappropriate behavior will also be included.

M. Guards must possess a current Kansas City Police Department, Private Officers Licensing Section, issued Class B Unarmed Guard license. Three (3) copies of this license will be provided for any/all who would stand post. One shall be maintained with the contract file and one with each Property Manager.

**Training:**

Contractor shall provide the following training at no additional expense to HAKC.

- Training of newly assigned guards:

  Contractor will be expected to provide up to eight (8) hours of training to newly assigned guards at each post. In conjunction with the Property Manager, newly assigned guards shall be taught specific post duties,

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

including emergency procedures and the operation of the building security alarm system.

- Training of substitute guards:

  Substitute guards shall be taught the post duties of their particular assignments.

- Refresher training:

  Refresher training shall be provided upon request of HAKC. Refresher training shall be designed to ensure that all security guards are proficient at their post duties. The refresher training shall address any issue brought to the Contractor's attention by the HAKC personnel requesting the refresher training.

- Health and safety orders:

  Contractor shall provide safety training as required by the State of Missouri and the Occupational Safety and Health Administration (OSHA).

**Reporting Requirements:**

**A.** Guard must be able to compose detailed daily log book entries, incident reports, and communicate in English. The guard shall prepare and distribute any incident reports to the Manager or DPS before leaving the building at the end of shift.

**B.** Security guards must report regularly to the Property Manager. A continuous written log of all guard activity, including details of any matters or occurrences pertinent to the security of the HAKC shall be maintained. The security guard service must submit a written summary of all matters of security interest that contains recommendations, if any, to improve the security that will enable HAKC to be more effective in administering proactive implementations to decrease security deficiencies. In addition, any emergency or abnormal conditions must be verbally reported immediately to the Property Manager. A complete written report must be filed, as soon as possible.

**C.** Security guard service shall furnish weekly copies of sign-in sheets, showing the guard's name, assignment and number of hours worked during the period to the Issuing Office.

**D.** Security officers shall be available to attend grievance hearings/court sessions if necessary to substantiate reports made during their shifts.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

# COST PROPOSAL FOR HAKC

The contractor must submit a cost proposal that provides 1) cost for services by development; and 2) any other costs associated with this service. The cost proposal must include all rates for any subsequent one-year renewal period.

| Position | Hourly Wage | Bill Rate per hour | Overtime/Holiday Rate |
|---|---|---|---|
| Security Officer | $11.00 | $16.41 | $16.41 |

***Additional Pricing Information-***
Bill rates include the following items:

- Recruitment, background screening and hiring costs.
- Employee wages, payroll taxes and insurance.
- Cell phone for each site
- Excellence in Service performance recognition program.
- Branch award qualification for Officer of the Month, Officer of the Quarter and Officer of the Year.
- Free life insurance and paid vacations: 1 week at one year; 2 weeks at five years; 3 weeks at ten years.
- Complete uniforms for each season, including replacements as needed.
- Introductory, pre-assignment and paid on-site training.
- Advanced Certification Training I, II, III with e-learning technology.
- Learning Management System to track completed courses and test scores.
- Monthly service review and planning meetings with local branch manager.
- Computer-based post orders, including client emergency response procedures.
- Site-specific written test based on post orders and client policies.
- 24-hour National Communications Center.
- Department of Homeland Security SAFETY Act Designation.

Overtime/holiday rate will apply for the following six holidays:

| | | |
|---|---|---|
| New Year's Day | Memorial Day | Day Before Thanksgiving |
| Christmas Day | Independence Day | New Year's Eve |
| Thanksgiving Day | Labor Day | |

The prices for security officer and related services as quoted above are valid for a period of 120 days from the date of this proposal.

*As a result of the changes in healthcare laws driven by the Affordable Care Act (ACA), Securitas will be discontinuing all non-ACA compliant healthcare plans in 2014. To conform to current ACA guidelines, Securitas will offer a variety of ACA compliant plans, including the most cost effective "Bronze & Silver" plans. Additionally, our officers will be eligible to participate in State healthcare exchange programs where many may qualify for healthcare subsidies.*

*In 2015, should an ACA employer mandate be implemented, we will need to revisit the medical plan options, costs and contribution levels to determine healthcare premium costs in 2015 and beyond. We will work closely with Housing Authority of Kansas City, introducing value added services, including technology, to mitigate these potential cost increases. We welcome the opportunity to speak with HAKC about the healthcare options available as a result of the ACA legislation. If the law is passed as it is currently listed, an increase of $.86 per hour will be added to the officer bill rate.*

*There will be an increase of $.25 for each officer on the 1st, 2nd, and 3rd anniversary of their employment. The bill rate will be adjusted at this time for that officer. The increase will help reduce any turnover that may be experienced.*

HAKC004089

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

EXHIBIT
B

# Request for Proposal

# No. RFP-14-836a

**Security Guard Services**
**(Brush Creek Towers & Pemberton Heights)**

**Issued By:**
**The Housing Authority of Kansas City, Missouri**
**920 Main Street, Suite 701**
**Kansas City, Missouri 64105**

**September 29, 2014**

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

# REQUEST FOR PROPOSAL
# RFP-14-836a

**THE ABOVE NUMBER MUST APPEAR ON ALL RESPONSES AND RELATED CORRESPONDENCE.**

**REQUEST DATE: September 29, 2014** **THIS IS NOT AN ORDER**

| | |
|---|---|
| **Proposals Due:**<br>**October 15, 2014, 4:00 p.m.**<br>**HAKC Admin Office** | **Barbara Lockhart**<br>**Director, OPC** |
| **Pre-Bid Conference:**<br>**No Pre-Bid** | **blockhart@hakc.org**<br>**Ph. (816) 968-4269**<br>**Fax (816) 285-4012** |

## PART ONE
## INTRODUCTION AND BID STRUCTURE

1. This is a request for proposal (RFP) and is not an offer to contract. Instead, this RFP seeks to establish a common framework within which a contract may be reached between the Proposer and the Housing Authority of Kansas City, Missouri (HAKC). Further, this RFP and your firm's response will be the basis for and be incorporated into any legal contract between HAKC and the successful bidder. Proposals submitted in response to the RFP shall represent a firm offer to contract with the HAKC on the terms and conditions described in such proposals. Each representation of fact and promise of future performance therein will be incorporated into the contract as a warranty or covenant.

**2.** For the convenience of the bidder, this solicitation is structured as follows:

Part I Introduction and Bid Structure
Part II Scope of Work Description and Terms

i. Evaluation Criteria
ii. Scope of Work Requirements
iii. Section 3 Requirements/Examples
iv. Non-Collusive Affidavit
v. References
vi. Proposed Sub-Contractors
vii. Statement of Qualifications
viii. Joint Venture Questionnaire
ix. HUD 5370-C General Conditions for Non-Construction
x. HUD 5369-B Instructions to Offerors for Non-Construction
xi. HUD 5369-C Certification and Representation of Offerors for Non-Construction

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

## PART TWO

1. SCOPE OF WORK

**General Requirements:**

The Housing Authority of Kansas City, Missouri (HAKC) is seeking proposals from qualified security firms to provide security at two (2) developments located in Kansas City, Missouri. This Contractor must furnish a current copy of KCMO Business License as well as a copy of the current Certificate of Company License issued by the Kansas City Police Department.

Contractor shall furnish all necessary labor, supervision, uniforms, and equipment in accordance with the provisions, terms and conditions set forth in this RFP. A minimum of five years of Security Guard Services is required. Proposers are to provide a summary of their firms experience as well as the experience of the upper management and supervisory staff that will be providing services under a contract with HAKC.

The contractor will be responsible for the following tasks:

**A.** Contractor shall provide security services for the protection of all HAKC tenants, their employees, customers, invitees, management and staff against vandalism, theft, trespass, fire, bodily harm and any other events detrimental to the security of such individuals, assets or property at the developments indicated below:

| | |
|---|---|
| Pemberton Heights<br>3710 E. 51st Street<br>Kansas City, MO 64130 | Brush Creek Towers<br>1800 Emmanuel Cleaver II Blvd<br>Kansas City, MO 64130 |

**B.** The contractor shall provide unarmed security services at each development for twelve (12) hours a day, seven days a week. The hours are typically 6:00 p.m. to 6:00 a.m. HAKC reserves the right to adjust the hours or number of Security Officers to be provided under this Agreement by providing a twenty-four (24) hour written notice.

**C.** The Security Officers shall be completely outfitted with uniforms, identification and other equipment as needed and as deemed acceptable by HAKC.

**D.** The Security Officers shall provide ingress and egress control as well as foot patrol throughout the areas designated by the HAKC and document in the log book, the time of each foot patrol and any irregularities noted and action taken.

**E.** Contractor and HAKC jointly shall prepare a standard set of rules to be known as the Security Post Orders ("Orders"). The Orders will detail the specific duties and performance levels for the Security Officers. Modifications or additions to the Orders may be made by HAKC at any time upon written notification to Contractor.

**F.** Unannounced inspection of the Security Officers on duty shall be conducted at least one (1) time weekly by one of Contractor's supervisory staff on each Site. A copy of these inspection reports shall be submitted to HAKC with invoice submissions.

G. In addition to the requirements for invoicing outlined in the Services Agreement, the Contractor must provide HAKC a sign-in sheet listing the Security Officer's name, development, sign-in and sign-out time for the shift and signature of the Security Officer.

H. Contractor shall maintain a 24-hour per day dispatch number in Contractor's office. Contractor's dispatch must be capable of communicating with Security Officers by radio communications from Contractor's 24-hour dispatch office located in Contractor's office.

I. The Contractor must comply with the requirements of all applicable licensing provisions, City Ordinances and State Law as related to private security. Contractors must provide verification of registration with Secretary of State of Missouri.

**Staffing Requirements:**

A. Guard must be well groomed at all times while on duty. This includes clean, well-fitted pressed uniforms and polished shoes. Personal hygiene and neatness are of prime importance.

B. Security Guard Service will have adequate employees available to handle any necessary substitutions in operational hours, as well as, regular hours of operations. Security Guard Service must be able to provide guards without a lapse in service when shifts are changed.

C. Security Guard Service will compensate its employees in accordance with all Department of Labor Regulations. **Overtime will not be paid for this service, and is a disallowable cost.** The same rate per hour per guard will apply and schedules should be adjusted to allow for this requirement.

D. Security Guard Service will furnish security guards with standard uniform. Security Guard Service shall display an approved sign or emblem indicating that the premises are being protected by them. Company badges shall be prominently displayed on the security guard's uniform and/or cap. **Pictures of Contractor uniforms are to accompany Contractors RFP response.** The unarmed guard will be trained and equipped with, as appropriate, flashlight, police whistle, notebook, pen and defensive or communication devices. **Contractors are required to submit a detailed listing of equipment available to employees.** Security guards must be in full uniform while on duty. Guards are to be trained in the use of any equipment that they may use in their duties.

E. Contractor must agree to assign an experienced account manager who shall be responsible for assuring that all requirements described herein are fulfilled. This person must be a proven manager, who will be able to interact effectively with HAKC management and line personnel. Furthermore, higher-level managers shall support the account manager. The account manager shall have access to company resources, such

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

as electronic databases and other automated systems necessary to uphold the contract. For example, if HAKC requests development of a time and action plan for a specific locale, the account manager should be able to generate such a plan drawing from company resources.

F. Supervision of assigned personnel shall be provided on a daily basis throughout the timeframe of the assigned shift. Supervisors shall be available to the HAKC Property Management staff.

Supervisors shall have prior security experience, know and understand the operational aspect of the security business, be an appropriate role model, and have an ability to teach, guide and direct effectively. Supervisors shall employ measurable performance criteria in their evaluation of employees.

G. All assigned personnel shall be able to read, speak, understand and write the English language. Specifically, assigned personnel shall be able to report emergencies to 911 and HAKC's designated emergency respondent and write clear and legible Incident Reports. Assigned personnel must be able to read and understand all posted warning and danger signs of potential hazards and safety instructions.

**Technical Requirements:**

A. Security Guard Service will ensure all guards assigned under the Contract adhere to and comply with all applicable Federal, State of Missouri, Jackson County and City of Kansas City laws governing security guards.

B. Guard shall protect all persons from bodily harm or injury. This includes acting as an escort to any HAKC employee requesting such service with the assigned location, and includes escort of persons to their vehicles parked in parking lot.

C. Guard shall perform other such functions as may be appropriate and necessary in the event of situations or occurrences affecting the security of the facility. I.e. fires, accidents, internal disorders, emergencies, or other criminal acts.

D. Guard is to observe all persons entering or leaving the HAKC premise, as well as, provide crowd control at entrances and exits. Additionally, the guard is required to ask visitors for a form of governmental photo identification prior to entry to HAKC buildings. This information is to be documented on the visitor sign-in sheet.

E. Guard is to maintain order while the HAKC is in operations, and while customers, employees, visitors, and others are using the facility.

F. Guard shall contact persons gaining unauthorized access to the HAKC and ask them or any unruly persons to leave. Guard will immediately call 9-1-1 in the event of any crisis situation or if those persons refuse to leave, since those persons would now be

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Trespassing on HAKC property. Guard shall have training in self-defense techniques to prevent injury to their person or any person on HAKC property.

G. If cameras are installed and operating, the guard is required to periodically monitor security cameras, and take any necessary actions to control any security breach, as the situation warrants.

H. Guard must possess ability to face situations firmly, tactfully, and with respect for the rights of others. Guard must be able to demonstrate emotional stability during periods of tension and stress while carrying out assigned duties and ability to maintain control in crisis situations.

I. Guard must possess thorough knowledge of security rules, regulations, procedures, and through knowledge of the laws of arrest.

J. HAKC encourages additional languages, other than English. However, English is the majority language for communication, oral or written.

K. Security Guard Service will ensure all locations and/or posts are fully staffed.

L. A prohibition against the use of alcohol or narcotics while on duty must be included in the orders to the guard, in order to abide by the Drug Free Workplace Requirements. The prohibition of criminal and unethical behaviors, as well as, neglect of official duties, and inappropriate behavior will also be included.

M. Guards must possess a current Kansas City Police Department, Private Officers Licensing Section, issued Class B Unarmed Guard license. Three (3) copies of this license will be provided for any/all who would stand post. One shall be maintained with the contract file and one with each Property Manager.

**Training:**

Contractor shall provide the following training at no additional expense to HAKC.

- Training of newly assigned guards:

  Contractor will be expected to provide up to eight (8) hours of training to newly assigned guards at each post. In conjunction with the Property Manager, newly assigned guards shall be taught specific post duties, including emergency procedures and the operation of the building security alarm system.

- Training of substitute guards:

  Substitute guards shall be taught the post duties of their particular assignments.

- Refresher training:

  Refresher training shall be provided upon request of HAKC. Refresher training

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

shall be designed to ensure that all security guards are proficient at their post duties. The refresher training shall address any issue brought to the Contractor's attention by the HAKC personnel requesting the refresher training.

- Health and safety orders:

  Contractor shall provide safety training as required by the State of Missouri and the Occupational Safety and Health Administration (OSHA).

**Proposer's response to this RFP must include an outline of Proposer's complete training program.**

**Reporting Requirements:**

**A.** Guard must be able to compose detailed daily log book entries, incident reports, and communicate in English. The guard shall prepare and distribute any incident reports to the Manager or DPS before leaving the building at the end of shift.

**B.** Security guards must report regularly to the Property Manager. A continuous written log of all guard activity, including details of any matters or occurrences pertinent to the security of the HAKC shall be maintained. The security guard service must submit a written summary of all matters of security interest that contains recommendations, if any, to improve the security that will enable HAKC to be more effective in administering proactive implementations to decrease security deficiencies. In addition, any emergency or abnormal conditions must be verbally reported immediately to the Property Manager. A complete written report must be filed, as soon as possible.

**C.** Security guard service shall furnish weekly copies of sign-in sheets, showing the guard's name, assignment and number of hours worked during the period to the Issuing Office.

**D.** Security officers shall be available to attend grievance hearings/court sessions if necessary to substantiate reports made during their shifts.

2. TERM OF CONTRACT

The contract period shall be the date of issuance of the Notice to Proceed through a two year term. At the sole option of HAKC, the contract may be extended twice for one (1) additional year. The prices stated in the proposal shall be legally binding for the term of the contract, including renewal periods.

3. PROFESSIONAL LIABILITY INSURANCE

The contractor must carry professional liability insurance with respect to the delivery of security services. The contractor will agree to provide the HAKC with a copy of the certificate evidencing this insurance coverage.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

## 4. LAWS TO BE OBSERVED

The contractor shall at all times observe and comply with all State and Local laws, ordinances and regulations of the State or City governments as related to the services described herein.

## 5. CHARACTER OF WORKMEN AND WORK

The contractor shall be responsible for the conduct and discipline of his employees and/or any subcontractor or persons employed by subcontractors. All workmen must have sufficient knowledge, skill and experience to perform properly the work assigned to them. Any workman, who does not perform his work in a skillful manner or appears to be incompetent or to act in a disorderly or intemperate manner, shall be removed from the work site at the request of HAKC.

## 6. TAXES

HAKC is a sales tax exempt entity. Copies of the sales tax exemption information will be provided at the request of the successful bidder. The contractor shall not include in the bid amount, any taxes chargeable against the performance of the work.

## 7. ASSIGNMENT OF THE CONTRACT

The contractor shall not enter into any sub-contracts, retain consultants, or assign, transfer, convey or otherwise dispose of the ensuing contract, or any or all of its rights, title or interest, or its power to execute such contract to any person, company, or corporation without the written consent of HAKC.

## 8. PROVISION FOR CHANGES OR AMENDMENTS

If at any time HAKC desires to expand, alter or terminate a portion of the scope of work, as defined in the herein, the contract will be amended to reflect these changes at costs/deductions acceptable to both parties. HAKC shall provide thirty (30) days prior written notice to the contractor for any changes to the scope of work. The contractor shall not hold HAKC responsible for termination due to no fault of HAKC.

## 9. PAYMENT

Invoices shall be submitted in accordance with the contract and must include:

A. Date and order;
B. Location address;
C. Description of item/service;
D. Name of service provider;
E. Cost;
F. Contract number.
G. Break down by property

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Hard copy invoices may be sent to:

Accounts Payable
Housing Authority of Kansas City, MO
920 Main Street, Suite #701
Kansas City, MO 64105

Electronic invoices are to be submitted to ap@hakc.org. A copy of invoices will also be sent by e-mail to rchase@hakc.org. Payment for all services shall be Net 30 days from the date of receipt of a complete invoice.

10. SUBMISSION REQUIREMENTS

**Sealed** proposals must be received at the offices of the Housing Authority of Kansas City, MO **no later than 4:00 PM, October 15, 2014.** Proposals must be addressed to the attention of ***Ric Chase, Office of Procurement and Contracts, Housing Authority of Kansas City, MO, 920 Main Street, Suite #701, Kansas City, MO 64105.***

Proposals should be in a sealed envelope and clearly marked "Security Guard Services". Each response to this RFP must include **one (1) original and five (5) copies** and be clearly identified as a response to the "Request for Proposals – RFP – 836a – Security Guard Services". Any Submission received later than **4:00 p.m. October 15, 2014** shall be considered non-responsive.

**One (1) copy of Cost Proposal must be in a sealed envelope separate from proposal response, and clearly marked "RFP-836 Cost Proposal".**

**NOTE:** ***Cost Proposal is NOT to be included in proposal response.***

HAKC reserves the right to consider historic information and/or request additional information as part of the evaluation process. HAKC also reserves the right to reject any or all bids; to make partial, multiple or no awards, postpone or cancel the bid process, and to waive minor technicalities in bids/proposals.

**Note:** Once the contract(s) has been awarded, all information submitted in response to this solicitation will be available for public inspection in compliance with Federal, State, and Local laws.

11. **EVALUATION CRITERIA**

Proposals will be evaluated and scored in accordance with the following criteria:

11.1 **Firm Experience and Capabilities (20 pts):**
Respondents must provide a brief history of their firm (maximum one page) including the number of years the firm has been in business and its major client engagements.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

**Evaluation Criteria for Experience and Capabilities**
- *Extent of experience;*
- *Extent of relevant experience in engagements similar to those described in Scope of Services; and*
- *Demonstrated ability to successfully manage and implement similar functions.*

11.2 **Security Plan (35 pts):**
Respondents must submit a security plan to perform the work specified in the Scope of Services and referenced in Exhibit II. Respondents shall identify processes that respond to conditions referenced in Exhibit II. Respondents security plan must include detailed information pertaining to training and certification programs provided to security guard staff.

**Evaluation Criteria for Security Plan**
- *Knowledge and understanding of conditions as identified in Exhibit II;*
- *Quality and strength of the services provided to address the conditions raised in Exhibit II;*
- *Extent and strength of proposed security plan; and*
- *Extent of Respondents training programs for guard staff.*

11.3 **References (20 pts):**
Respondents must also submit a list of engagements performed by their firm within the last five years for the public sector and/or private organizations that included performance of services similar to those described in the attached Scope of Services. Respondents must provide the following information for each engagement:

(1) client's name;
(2) address;
(3) name, title and email of contact person;
(4) telephone number;
(5) years of association with client;
(6) type of service provided;
(7) dates service was performed;
(8) if conducted in association with another entity, indicate name and address of such entity and the extent of participation/association; and
(9) total contract amount.

11.4 **Firm and Project Team Organization (15 pts):**
Respondents must submit an organization chart that shows the organizational structure of the firm and the project team to be assigned to the HAKC Contract. The organization chart must indicate lines of responsibility and reporting relationships. Bidders shall provide contact names, direct phone numbers, email addresses, and order of escalation to be contacted in the event of an emergency or unresolved issue.

**Evaluation Criteria for Organization**

- *Clarity of structural lines of responsibility within the firm's organization;*
- *Clearly delineates organizational responsibilities of the project team assigned to the HAKC Contract and accountability within the firm's organizational structure; and*
- *Clearly identifies contact information and order of escalation to remedy outstanding issues.*

11.5 **Interview and Evaluation Criteria (30 pts):**
Interview date and times will be scheduled at the convenience of the HAKC Evaluation Team. HAKC reserves the right to conduct phone interviews in lieu of face-to-face presentations. Finalists should be prepared to explain the roles of each team member and detail the structural lines of responsibilities and accountability within the company's organization. Finalists should also be prepared to respond with a scenario to address issues raised in Exhibit II.

11.6 **Cost (25 pts)**
The contractor must submit a cost proposal that provides 1) cost for services by development; and 2) any other costs associated with this service. The cost proposal must include all rates for any subsequent one-year renewal period.

11.6 **Section 3 (5 pts)**
Verification of being a Section 3 Certified Business or submittal of Section 3 plan

12. EVALUATION PROCESS

The HAKC will consider a proposal non-responsive when critical information is lacking or the submission represents a major deviation from the requirements of the RFP. Minor omissions or informalities may be waived at the sole option and discretion of the HAKC.

12.1 Responsive proposals will be evaluated in the following manner:

a. An evaluation committee will review, rank-order and score all proposals individually on their technical merits and according to the criteria established in Section 11 of this RFP. The committee may contact respondent(s) if any clarification is needed on the proposal.

b. Based on the rankings of the evaluation committee, respondents whose proposals are in the competitive range may be asked to participate in negotiations to discuss factors to ensure a mutual understanding of both HAKC's requirements and the bidder's proposal. Negotiations may be conducted either in person or by telephone. **However, HAKC may determine that negotiations are not necessary and make an award based on the initial proposals received in response to this solicitation.**

c. If negotiations are considered necessary and in the best interest of HAKC, the HAKC will establish a date and time for submission of Best and Final offers. Best and Final offers will be submitted only once unless the Director of

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Procurement and Contracts makes a written determination that is in HAKC's best interest to conduct additional negotiations or change HAKC's requirements and request another submission of best and final offers.

d. After Best and Final offers are received, a final round of evaluations may occur. The responsible firm whose proposal is most advantageous will be recommended for award to the Board of Commissions of HAKC. The contract will be awarded to the firm that provides HAKC with the best value and service based on the pre-established evaluation criteria.

## 13. QUESTIONS

Questions relating to the proposal content or procedures for submission must be submitted in writing to the attention of Barbara Lockhart via fax or e-mail at the number or address previously indicated. ***Deadline for questions is 5:00 pm CST October 6, 2014.***

## 14. REQUIRED CONTENTS AND SUBMITTAL FORMS

1. Cost Proposal
2. HUD Forms
3. Non-Collusive Affidavit
4. Authorization for Release of Information
5. Copy of any Contractual Documents Required by Bidder

Failure to complete and submit the required documents may result in the elimination of you bid as non-responsive. **Failure to sign and return your required documents may be cause for automatic rejection.**

## 15. SECTION 3 REQUIREMENTS

Section 3 of the Housing and Urban Development Act of 1968, as amended, requires, to the greatest extent feasible, opportunities for job training and employment be given to lower income residents of the federally funded area, and contracts for work in connection with the Section 3 covered project be awarded to business concerns which are located in, or owned in substantial part by persons residing in the Section 3 area. Section 3 requires that a recipient/contractor take affirmative steps to give preference to qualified Section 3 area residents and business concerns in providing training, employment and contracting in connection with Section 3 covered projects. As a recipient of HUD funding, HAKC maintains an aggressive Section 3 policy, which emphasizes employment of public housing residents, or other low-income residents on contracts let by the Authority and that affirmative efforts be taken to contract with Section 3 business concerns, which includes resident-owned businesses.

HAKC believes that Section 3 is an effective tool for advancing economic development and self-sufficiency opportunities for public housing residents. HAKC requires the contractor to emphasize resident hiring for new positions required because of this contract. See "Section 3 Program" attachment for additional information on compliance with Section 3 requirements.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

HAKC reserves the right to consider historic information whether gained from the proposal, references, or any other source, in the evaluation process. HAKC also reserves the right to reject all bids/proposals, make no award, multiple or partial awards, and to waive any minor informality or irregularity in the bids/proposals received in response to this solicitation. In addition, failure to submit the required items listed above may be grounds for considering your bid non-responsive.

**NOTE: No information is available between the public opening of bids and award of a contract. Once the contract has been awarded, all information submitted in response to this solicitation will be available for public inspection in compliance with Federal, State and local laws.**

16. KEY DATES IN THIS RFP PROCESS ARE AS FOLLOWS

- RFP Issued 09/29/2014
- Last day for questions about proposal 10/06/2014
- Proposals Due to HAKC 10/15/2014

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

# Exhibit I

## STATEMENT OF ACCEPTANCE AND EXCEPTIONS

The undersigned, by affixing his/her signature to this document, acknowledges that she/he has read and understands the terms, conditions, and other covenants as provided for in the Request for Proposals (RFP) and Exhibit A. The undersigned further agrees and understands that the proposal submitted herein is made under said terms, conditions, and other covenants, and shall abide by them, notwithstanding the exceptions listed herein. She/he states that she/he is an officer of the business entity named below, or has power of attorney to bind said business to the terms, conditions, and other covenants provided in the aforementioned documents, and agrees to perform in accordance therewith the agreed upon services.

Name of firm:______________________________________

Address:__________________________________

Title:______________________

Signature:___________________________

Printed Name:______________________________

Telephone Number:______________________

Date:______________

If you wish to state any exceptions to the terms, conditions, and other covenants stated in this proposal document, then please specify herein, include additional pages as necessary.

**(IMPORTANT: SOME EXCEPTIONS MAY BE CLASSIFIED AS NON-RESPONSIVE BY THE HAKC AND THE PROPOSAL MAY BE REJECTED)**

______________________________________________________________

______________________________________________________________

______________________________________________________________

______________________________________________________________

______________________________________________________________

______________________________________________________________

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

# Exhibit II

## CONDITIONS

Security Officers are stationed at a public desk and are required to personally interact with employees, residents and visitors. Residents are required to come to the lobby and personally escort visitors to their residence. Prior to entering an elevator, the guest is required to present valid ID and sign-in at the requisite guard desk. Security Officers are required to check the 'No Trespass List' to ensure all visitors are allowed on the property.

Pemberton Heights and Brush Creek Towers provide residences for individuals qualified as Senior or Disabled. Both designations precipitate the security officers be able to conduct themselves professionally yet respectfully when dealing with residents.

Some examples of issues at both Pemberton Heights and Brush Creek Towers include:

- Vandalism
- Substance Abuse
- Domestic Disturbances

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

## MBE/WBE PARTICIPATION

The bidder agrees to make every effort to carry out this MBE/WBE policy through award of subcontracts to minority/women's business enterprises to the fullest extent consistent with the efficient performance of this contract.

The undersigned Bidder proposes to perform the work with the following MBE/WBE participation level:

MBE Percentage Participation ________________%
WBE Percentage Participation ________________%

## TIMING

The undersigned Bidder hereby agrees to commence the work required under his contract within ten (10) days from the date of a Notice to Proceed and agrees to substantially complete the Work or segments of the Work on or before the schedule dates, and to pay as liquidated damages the corresponding amount stipulated in contract documents, for each instance that the Work remains substantially incomplete in accordance with the Contract Documents.

The Bidder understands that the Owner reserves the right to reject any or all bids, to waive minor informalities in any bid, to award the contract in the Documents by mutual agreement with the successful bidder.

The Bidder agrees to deliver to the HAKC the Certification of Insurance, Representations, Certifications and Other Statements, and HUD-5369-A.

| | |
|---|---|
| Name of Firm | Street Address |
| Telephone Number | City, State, Zip Code |
| Federal Tax ID Number | Authorized Officer/Title |
| Date | Signature |

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

# Section  3
# Brochure

## What is Section 3?

It is a means by which HUD fosters local economic development, neighborhood economic improvement, and individual self-sufficiency. Section 3 is the legal basis for providing jobs for residents and awarding contracts to businesses in areas receiving certain types of HUD financial assistance.

Under Section 3 of the HUD Act of 1968, wherever HUD financial assistance is expended for housing or community development, to the greatest extent feasible, economic opportunities will be given to Section 3 residents and businesses in that area.

## Section 3 Policy

Congress established the Section 3 policy to guarantee that the employment and other economic opportunities created by Federal financial assistance for housing and community development programs should, if possible, be directed toward low and very-low income persons, particularly those who are recipients of government assistance for housing.

## Who are Section 3 residents?

Section 3 residents are:

- Public Housing residents
- Low and very-low income persons who live in the metropolitan area or non-metropolitan county where a HUD-assisted project for housing or community development is located.

## Determining Income Levels

- Low income is defined as 80% or below the median income of that area
- Very-low income is defined as 50% or below the median income of that area
- Median incomes can be found using the **American Fact Finder** at www.factfinder.census.gov/home/saff/main.html

## What is a Section 3 business & what types of economic opportunities are available under Section 3?

A business:

- That is at least 51 percent or more owned by Section 3 residents,
- Whose permanent, full-time employees include persons, at least 30 percent of whom are currently Section 3 residents, or within three years of the date of first employment with the business concern were Section 3 residents, or
- That provides evidence of a commitment to subcontract in excess of 25 percent of the dollar award of all subcontracts to be awarded to a Section 3 business concern

Type of Opportunities:

- Job training
- Employment
- Contracts

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Examples include:

| *Administrative/ Management* | *Services* | *Construction* |
|---|---|---|
| accounting | appliance repair | architecture |
| payroll | florists | bricklaying |
| research | marketing | carpentry |
| bookkeeping | carpet installation | cement/masonry |
| purchasing | janitorial | demolition |
| word processing | photography | drywall |
| | catering | electrical |
| | landscaping | elevator construction |
| | printing | engineering |
| | computer/information | fencing |
| | manufacturing | heating |
| | transportation | iron works |
| | | machine operation |
| | | painting |
| | | plastering |
| | | plumbing |
| | | surveying |
| | | tile setting |

**Who will award the economic opportunities?**

Recipients of HUD financial assistance and their contractors and subcontractors are required to provide economic opportunities, to the greatest extent possible, consistent with existing Federal, State, and local laws and regulations.

**Who receives priority under Section 3?**

For training and employment:

- Persons in public and assisted housing
- Persons in the area where the HUD financial assistance is expended
- Participants in HUD Youthbuild programs
- Homeless persons

For contracting:

Businesses that meet the definition of a **Section 3 business owner**

**How can businesses find Section 3 residents to work for them?**

Businesses can recruit in the neighborhood and public housing developments to inform residents about available training and job opportunities. Distributing flyers, posting signs, placing ads, and contacting resident organizations and local community development and employment agencies to locate potential workers are effective ways of acquiring jobs.

**Are recipients, contractors and subcontractors required to provide long-term employment opportunities, and not simply seasonal or temporary employment?**

Recipients are required, to the greatest extent feasible, to provide all types of employment opportunities to low and very-low income person, including seasonal and temporary employment, as well as long-term jobs.

Employment goals are based on "new hires", which are defined as full-time employees for permanent, temporary or seasonal employment opportunities.

Recipients and contractors are encouraged to provide long-term employment. At least 30 percent of the permanent, full-time employees hired should be Section 3 residents. After a Section 3 employee has been employed for 3 years, the employee may no longer be counted as a Section 3 employee to meet the 30 percent requirement. This requires recipients to continue hiring Section 3 residents when employment opportunities are available.

**How can businesses and low income persons find out more about Section 3?**

Contact the Fair Housing and Equal Opportunity representative at your nearest HUD Field Office or the HUD Community Builder.

**What if it appears an entity is not complying with Section 3?**

There is a complaint process. Section 3 residents, businesses, or a representative for either may file complaints if they believe a violation of Section 3 requirements has occurred where a HUD-funded project is planned or underway. Complaints will be investigated; if appropriate, voluntary resolutions will be sought. A complaint that cannot be resolved voluntarily may result in an administrative hearing.

**Will HUD require compliance?**

Yes. HUD receives annual reports from recipients, monitors the performance of contractors and investigates complaints. HUD examines employment and contract records for evidence of actions taken to train and employ Section 3 residents and to award contracts to Section 3 businesses.

**How can businesses or residents pursue an alleged violation of Section 3?**

You can file a written complaint with the **local HUD Field Office** or mail it to:

> The Assistant Secretary for Fair Housing and Equal Opportunity
> ATTN: Office of Economic Opportunity
> U.S. Department of housing and Urban Development
> 451 Seventh Street, S.W.,
> Room 5100
> Washington, D.C. 20410-2000

A written complaint should contain:

- Name and address of the person filing the complaint
- Name and address of subject of complaint (HUD recipient, contractor or subcontractor)
- Description of acts or omissions in alleged violation of Section 3
- Statement of corrective action sought i.e. training, employment or contracts

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

## Sec. 134.38 Section 3 clause.

All section 3 covered contracts shall include the following clause (referred to as the section 3 clause):

A. The work to be performed under this contract is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u (section 3). The purpose of section 3 is to ensure that employment and other economic opportunities generated by HUD assistance or HUD-assisted projects covered by section 3, shall, to the greatest extent feasible, be directed to low- and very low-income persons, particularly persons who are recipients of HUD assistance for housing.

B. The parties to this contract agree to comply with HUD's regulations in 24 CFR part 135, which implement section 3. As evidenced by their execution of this contract, the parties to this contract certify that they are under no contractual or other impediment that would prevent them from complying with the part 135 regulations.

C. The contractor agrees to send to each labor organization or representative of workers with which the contractor has a collective bargaining agreement or other understanding, if any, a notice advising the labor organization or workers' representative of the contractor's commitments under this section 3 clause, and will post copies of the notice in conspicuous places at the work site where both employees and applicants for training and employment positions can see the notice. The notice shall describe the section 3 preference, shall set forth minimum number and job titles subject to hire, availability of apprenticeship and training positions, the qualifications for each; and the name and location of the person(s) taking applications for each of the positions; and the anticipated date the work shall begin.

D. The contractor agrees to include this section 3 clause in every subcontract subject to compliance with regulations in 24 CFR

[[Page 700]]

part 135, and agree to take appropriate action, as provided in an applicable provision of the subcontract or in this section 3 clause, upon a finding that the subcontractor is in violation of the regulations in 24 CFR part 135. The contractor will not subcontract with any subcontractor where the contractor has notice or knowledge that the subcontractor has been found in violation of the regulations in 24 CFR part 135.

E. The contractor will certify that any vacant employment positions, including training positions, that are filled (1) after the contractor is selected but before the contract is executed, and (2) with persons other than those to whom the regulations of 24 CFR part 135 require employment opportunities to be directed, were not filled to circumvent the contractor's obligations under 24 CFR part 135.

F. Noncompliance with HUD's regulations in 24 CFR part 135 may result in sanctions, termination of this contract for default, and debarment or suspension from future HUD assisted contracts.

G. With respect to work performed in connection with section 3 covered Indian housing regulations, section 7(b) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450e) also applies to the work to be performed under this contract. Section 7(b) requires that to the greatest extent feasible (i) preference and opportunities for training and employment shall be given to Indians, and (ii) preference in the award of contracts and subcontracts shall be given to Indian organizations and Indian-owned Economic Enterprises. Parties to this contract that are subject to the provisions of section 3 and section 7(b) agree to comply with section 3 to the maximum extent feasible, but not in derogation of compliance with section 7(b).

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

## I. Examples of Efforts To Offer Training and Employment Opportunities to Section 3 Residents

(1) Entering into "first source" hiring agreements with organizations representing Section 3 residents.

(2) Sponsoring a HUD-certified "step-up" employment and training program for Section 3 residents.

(3) Establishing training programs, which are consistent with the requirements of the Department of Labor, for public and Indian housing residents and other Section 3 residents in the building trades.

(4) Advertising the training and employment positions by distributing flyers (which identify the positions to be filled, the qualifications required, and where to obtain additional information about the application process) to every occupied dwelling unit in the housing development or developments where category 1 or category 2 persons (as these terms are defined in Sec. 134.34) reside.

(5) Advertising the training and employment positions by posting flyers (which identify the positions to be filled, the qualifications required, and where to obtain additional information about the application process) in the common areas or other prominent areas of the housing development or developments where category 1 or category 2 persons reside; for all other recipients, post such advertising in the housing development or developments and transitional housing in the neighborhood or service area of the Section 3 covered project.

(6) Contacting resident councils, resident management corporations, or other resident organizations, where they exist, in the housing development or developments where category 1 or category 2 persons reside, and community organizations in HUD-assisted neighborhoods, to request the assistance of these organizations ion notifying residents of the training and employment positions to be filled.

(7) Sponsoring (scheduling, advertising, financing or providing in-kind services) a job informational meeting to be conducted by an HA or contractor representative or representatives at a location in the housing development or developments where category 1 or category 2 persons reside or in the neighborhood or service area of the Section 3 covered project.

(8) Arranging assistance in conducting job interviews and completing job applications for residents of the housing development or developments where category 1 or category 2 persons reside and in the neighborhood or service area in which a Section 3 project is located.

(9) Arranging for a location in the housing development or developments where category 1 persons reside, or the neighborhood or service area of the project, where job applications may be delivered to and collected by a recipient or contractor representative or representatives.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

(10) Conducting job interviews at the housing development or developments where category 1 or category 2 persons reside, or at a location within the neighborhood or service area of the Section 3 covered project.

(11) Contacting agencies administering HUD Youthbuild programs, and requesting their assistance in recruiting HUD Youthbuild program participants for the HA's or contractor's training and employment positions.

(12) Consulting with State and local agencies administering training programs funded through JTPA or JOBS, probation and parole agencies, unemployment compensation programs, community organizations and other officials or organizations to assist with recruiting Section 3 residents for the HA's or contractor's training and employment positions.

(13) Advertising the jobs to be filled through the local media, such as community television networks, newspapers or general circulation, and radio advertising.

(14) Employing a job coordinator, or contracting with a business concern that is licensed in the field of job placement (preferably one of the Section 3 business concerns identified in part 135), that will undertake, on behalf of the HA, other recipient or contractor, the efforts to match eligible and qualified Section 3 residents with the training and employment positions that the HA or contractor intends to fill.

(15) For an HA, employing Section 3 residents directly on either a permanent or a temporary basis to perform work generated by Section 3 assistance. (This type of employment is referred to as "force account labor" in HUD's Indian Housing regulations. See 24 CFR 905.102, and Sec. 905.201(a)(6).)

(16) Where there are more qualified Section 3 residents than there are positions to be filled, maintaining a file of eligible qualified Section 3 residents for future employment positions.

(17) Undertaking job counseling, education and related programs in association with local educational institutions.

(18) Undertaking such continued job training efforts as may be necessary to ensure the continued employment of Section 3 residents previously hired for employment opportunities.

(19) After selection of bidders but prior to execution of contracts, incorporating into the contract a negotiated provision for a specific number of public housing or other Section 3 residents to be trained or employed on the Section 3 covered assistance.

(20) Coordinating plans and implementation of economic development (e.g., job training and preparation, business development assistance for residents) with the planning for housing and community development.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

## II. Examples of Efforts To Award Contracts to Section 3 Business Concerns

(1) Utilizing procurement procedures for Section 3 business concerns similar to those provided in 24 CFR part 905 for business concerns owned by Native Americans (see section III of this Appendix).

(2) In determining the responsibility of potential contractors, consider their record of Section 3 compliance as evidenced by past actions and their current plans for the pending contract.

(3) Contacting business assistance agencies, minority contractors associations and community organizations to inform them of contracting opportunities and requesting their assistance in identifying Section 3 businesses which may solicit bids or proposals for contracts for work in connection with Section 3 covered assistance.

(4) Advertising contracting opportunities by posting notices, which provide general information about the work to be contracted and where to obtain additional information, in the common areas or other prominent areas of the housing development or developments owned and managed by the HA.

(5) For HAs, contacting resident councils, resident management corporations, or other resident organizations, where they exist, and requesting their assistance in identifying category 1 and category 2 business concerns.

(6) Providing written notice to all known Section 3 business concerns of the contracting opportunities. This notice should be in sufficient time to allow the Section 3 business concerns to respond to the bid invitations or request for proposals.

(7) Following up with Section 3 business concerns that have expressed interest in the contracting opportunities by contacting them to provide additional information on the contracting opportunities.

(8) Coordinating pre-bid meetings at which Section 3 business concerns could be informed of upcoming contracting and subcontracting opportunities.

(9) Carrying out workshops on contracting procedures and specific contract opportunities in a timely manner so that Section 3 business concerns can take advantage of upcoming contracting opportunities, with such information being made available in languages other than English where appropriate.
[[Page 706]]

(10) Advising Section 3 business concerns as to where they may seek assistance to overcome limitations such as inability to obtain bonding, lines of credit, financing, or insurance.

(11) Arranging solicitations, times for the presentation of bids, quantities, specifications, and delivery schedules in ways to facilitate the participation of Section 3 business concerns.

(12) Where appropriate, breaking out contract work items into economically feasible units to facilitate participation by Section 3 business concerns.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

(13) Contacting agencies administering HUD Youthbuild programs, and notifying these agencies of the contracting opportunities.

(14) Advertising the contracting opportunities through trade association papers and newsletters, and through the local media, such as community television networks, newspapers of general circulation, and radio advertising.

(15) Developing a list of eligible Section 3 business concerns.

(16) For Has, participating in the "Contracting with Resident-Owned Business" program provided under 24 CFR part 963.

(17) Establishing or sponsoring programs designed to assist residents of public or Indian housing in the creation and development of resident-owned businesses.

(18) Establishing numerical goals (number of awards and dollar amount of contracts) for award of contracts to Section 3 business concerns.

(19) Supporting businesses which provide economic opportunities to low income persons by linking them to the support services available through the Small Business Administration (SBA), the Department of Commerce and comparable agencies at the State and local levels.

(20) Encouraging financial institutions, in carrying out their responsibilities under the Community Reinvestment Act, to provide no or low interest loans for providing working capital and other financial business needs.

(21) Actively supporting joint ventures with Section 3 business concerns.

(22) Actively supporting the development or maintenance of business incubators which assist Section 3 business concerns.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

## III. Examples of Procurement Procedures That Provide for Preference for Section 3 Business Concerns

This Section III provides specific procedures that may be followed by recipients and contractors (collectively, referred to as the "contracting party") for implementing the Section 3 contracting preference for each of the competitive procurement methods authorized in 24 CFR 85.36(d).

(1) Small Purchase Procedures. For Section 3 covered contracts aggregating no more than $25,000, the methods set forth in this paragraph (1) or the more formal procedures set forth in paragraphs (2) and (3) of this Section III may be utilized.

(i) Solicitation. (A) Quotations may be solicited by telephone, letter or other informal procedure provided that the manner of solicitation provides for participation by a reasonable number of competitive sources. At the time of solicitation, the parties must be informed of:

---the Section 3 covered contract to be awarded with sufficient specificity;
---the time within which quotations must be submitted; and
---the information that must be submitted with each quotation.

(B) If the method described in paragraph (i) (A) is utilized, there must be an attempt to obtain quotations from a minimum of three qualified sources in order to promote competition. Fewer than three quotations are acceptable when the contracting party has attempted, but has been unable, to obtain a sufficient number of competitive quotations. In unusual circumstances, the contracting party may accept the sole quotation received in response to a solicitation provided the price is reasonable. In all cases, the contracting party shall document the circumstances when is has been unable to obtain at least three quotations.

(ii) Award. (A) Where the Section 3 covered contract is to be awarded based upon the lowest price, the contract shall be awarded to the qualified Section 3 business concern with the lowest responsive quotation, if it is reasonable and no more than 10 percent higher than the quotation of the lowest responsive quotation from any qualified source, the award shall be made to the source with the lowest quotation. (B) Where the Section 3 covered contract is to be awarded based on factors other than price, a request for quotations shall be issued by developing the particulars of the solicitation, including a rating system for the assignment of points to evaluate the merits of each quotation. The solicitation shall identify all factors to be considered, including price or cost. The rating system shall provide for a range of 15 to 25 percent of the total number of available rating points to be set aside for the provision of preference for Section 3 business concerns. The purchase order shall be awarded to the responsible firm whose quotation is the most advantageous, considering price and all other factors specified in the rating system.

(2) Procurement by sealed bids (Invitation for Bids). Preference in the award of Section 3 covered contracts that are awarded under a sealed bid (IFB) process may be provided as follows:

[[Page 707]]

(i) Bids shall be solicited from all businesses (Section 3 business concerns, and non-Section 3 business concerns). An award shall be made to the qualified Section 3 business concern with the highest priority ranking and with the lowest responsive bid if that bid --

(A) Is within the maximum total contract price established in the contracting party's budget for the specific project for which bids are being taken, and

(B) Is not more than "X" higher than the total bid price of the lowest responsive bid from any responsible bidder. "X" is determined as follows:

| | X = lesser of: |
|---|---|
| When the lowest responsive bid is less than $100,000. | 10% of that bid or $9,000 |
| When the lowest responsive bid is: | |
| At least $100,000, but less than $200,000 | 9% of that bid, or $16,000 |
| At least $200,000, but less than $300,000 | 8% of that bid, or $21,000 |
| At least $300,000, but less than $400,000 | 7% of that bid, or $24,000 |
| At least $400,000, but less than $500,000 | 6% of that bid, or $25,000 |
| At least $500,000, but less than$1 million | 5% of that bid, or $40,000 |
| At least $1 million, but less than $2 million | 4% of that bid, or $60,000 |
| At least $2 million, but less than $4 million | 3% of that bid, or $80,000 |
| At least $4 million, but less than $7 million | 2% of that bid, or $105,000 |
| $7 million or more -------------------- | 1 ½ % of the lowest responsive bid, with no dollar limit. |

(ii) If no responsive bid by a Section 3 business concern meets the requirements of paragraph (2)(i) of this section, the contract shall be awarded to a responsible bidder with the lowest responsive bid.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

(3) Procurement under the competitive proposals method of procurement (Request for Proposals (RFP)). (i) For contracts and subcontracts awarded under the competitive proposals method of procurement (24 CRF 85.36(d)(3)), a Request for Proposals (RFP) shall identify all evaluation factors (and their relative importance ) to be used to rate proposals.

(ii) One of the evaluation factors shall address both the preference for Section 3 business concerns and the acceptability of the strategy for meeting the greatest extent feasible requirement (Section 3 strategy), as disclosed in proposals submitted by all business concerns (Section 3 and non-Section 3 business concerns). This factor shall provide for a range of 15 to 25 percent of the total number of available points to be set aside for the evaluation of these two components.

(iii) The component of this evaluation factor designed to address the preference for Section 3 business concerns must establish a preference for these business concerns in the order of priority ranking as described in 24 CFR 135.36.

(iv) With respect to the second component (the acceptability of the Section 3 strategy), the FRP shall require the disclosure of the contractor's Section 3 strategy to comply with the section 3 training and employment preference, or contracting preference, or both, if applicable. A determination of the contractor's responsibility will include the submission of an acceptable Section 3 strategy. The contract award shall be made to the responsible firm (either Section 3 or non-Section 3 business concern) whose proposal is determined most advantageous, considering price and all other factors specified in the RFP.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

# NON COLLUSIVE AFFIDAVIT

______________________________ being first duly sworn, deposes and says:

That he is ______________________________________.
(Partner, Officer of Firm, Corp., etc.)

The party making the foregoing proposal or bid and attests to the following:

1. That affiant employed no person, corporation, firm association or other organization, either directly or indirectly, to secure the public contract under whose services in connection with the construction of the public building or project or in securing the public contract were in the regular course of their duties for affiant; and

2. That no part of the contract price received by affiant was paid or will be paid to any person, or corporation, firm association, or other organization for soliciting the contract, other than the payment of their normal compensation to persons regularly employed by the affiant who services in connection with the construction of the public building or project were in the regular course of their duties for affiant: and

3. That such proposal or bid is genuine and not collusive or sham; that said bidder has not colluded, conspired, connived or agreed, directly or indirectly, with any bidder or person, to put in a sham bid or to refrain from bidding, and has not in any manner directly or indirectly, sought by agreement or collusion, or communication or conference, with any person, to fix the bid price of affiant or of any other bidder, or to fix an overhead, profit or cost element of said bid price, or of that of any other bidder, or to secure any advantage against the Housing Authority of Kansas City, Missouri or any person interested in the proposed contract; and that all statements in said proposal or bid are true.

________________________________
(Name of Firm)

________________________________
(Signature of Bidder)

Subscribed and sworn to before me this ______ day __________________, 20__

________________________________
NOTARY PUBLIC

My commission expires: __________________

# REFERENCES

**BANKS**

| Name | Address | Phone | Account # |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**TRADE**

| Name | Address | Phone | Account # |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**SUBCONTRACTORS**

| Name | Address | Phone | Account # |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

**Does contractor intend to use Sub-Contractors: _____Yes _____No**

***(For contracts over $100,000 – Refer to #2-b of HUD 5370 for guidelines on utilizing Sub-Contractors)***

## LISTING OF PROPOSED SUB-CONRACTORS

| COMPANY | TRADE | MBE/WBE (Y/N) | ESTIMATE OF CONTRACT |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**At contract award the following sub-contractor information will be required:**

- Certificate of Insurance
- Registry Verification – Secretary of State of Missouri
- Complete Contact Information (to include email)
- Certification of Davis-Bacon Compliance

General Contractor_______________________________________

By_______________________________________

Title_______________________________________

## STATEMENT OF QUALIFICATIONS

All questions must be answered in a clear and comprehensive manner. If necessary, questions may be answered on separate attached sheet(s).

1. Name of Company: ______________________________

   Address: ______________________________

   City/State/Zip: ______________________________

   Telephone Number: ______________________________

   Fax Number: ______________________________

   Email: ______________________________

2. Name of Owner(s): ______________________________

   Address: ______________________________

   City/State/Zip: ______________________________

   Telephone Number: ______________________________

   Email: ______________________________

3. Date Company was Established: ______________________________

4. Are you a Sole Proprietorship? ______________________________

   Partnership? ______________________________

   Joint Venture? ______________________________

   Corporation? ______________________________

   If a corporation, please enclose a copy of corporation papers and corporate seal.

5. How many years have you been engaged in business under your present firm or trade name? ____________________

6. Give the name and address of any other contract firm under which the owners or partners have operated. Include dates:

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

| NAME | ADDRESS | DATE |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

7. Current contracts: (Give name, address, phone number, amount of each contract, and appropriate anticipated date of starting and completion.)

| NAME | ADDRESS | PHONE | AMOUNT | START | COMPLETE |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

8. General scope of work performed by your Company, (i.e., general contracting, specialty in any particular trade).

9. Are you minority owned? ______________________________. If so, are you certified as an MBE/WBE with the City or State? _____________. Section 3 certified?___________. **<u>If yes, please attach a copy of this certification.</u>** HAKC Resident owned business? _____.

10. If resident owned, provide the information below:

| NAME | % of OWNERSHIP | RACE | SEX | TITLE |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

11. Have you ever failed to complete any work awarded to you? ______________ If so, when, where and why?

12. Have you ever defaulted on a contract? ______________ If so, when, where and why?

13. List the more important projects recently completed by your company, stating the approximate cost for each, and the month and year completed. Include the name, address and phone number of each party.

| NAME | ADDRESS | PHONE | AMOUNT | START | COMPLETE |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

14. List name, address, background and experience of the principal members of your organization, including the officers (if needed, use additional sheets).

| NAME | ADDRESS | BACKGROUND EXPERIENCE |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

15. Has the company ever been party to or involved in any action related to discrimination based upon race, nationality, sex, or religion? ______________ If so, give full details:

16. Has the company ever caused a lien for material or mechanical work default payment to be placed against owner? ____________ If so, when, where, why and resolution:

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

17. Social Security Number: ________________________

18. Federal I.D. Number: ____________________

19. Insurance Company: ______________________________________

Amount of Insurance: ______________________________________

Bonding Agent: ____________________________________________

Bonding Agent Email: _______________________________________

Amount of Bond: ___________________________________________

***Include a copy of current insurance certificate.***

***(At contract signing a copy of the insurance certificate showing the Housing Authority of Kansas City, Missouri as Additional Insured will be required)***

20. Are you certified by any other agencies? __________

Names of Agencies:

21. Sign the following statement to authorize the release of information to the HAKC for the purpose of verifying your responses.

# AUTHORIZATION FOR RELEASE OF INFORMATION

The undersigned hereby authorizes and request any person, firm or corporation to furnish any information requested by the Housing Authority of Kansas City, Missouri in verification of the recitals comprising this ________ day of ____________________, 20___.

Name of Contractor: ____________________________________

By: __________________________________________________

Title: ________________________________________________

STATE OF MISSOURI )
) SS
COUNTY OF JACKSON )

__________________________________________being duly sworn, deposes and says that he is ________________________________ of __________________________________ and that the answers to the foregoing questions and all statements therein contained are true and correct.

Subscribed and sworn to before me this ______ day ______________________, 20___

____________________________________
NOTARY PUBLIC

My commission expires: ____________

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

# JOINT VENTURE QUESTIONAIRE

The following questionnaire must be fully completed and submitted concurrently with the Contractor's Occupation Statement by all Contractors submitted as a joint venture.

Names of Firms involved in the Joint Venture: ______________________________

______________________________________________________________

______________________________________________________________

______________________________________________________________

1. Specify the percent of Minority Business Enterprise/Women Business enterprise (MBE/WBE) ownership in terms of profit and loss sharing.

2. Describe the Capital Contributions by each Joint Venturer.

3. Describe the financial controls of the Joint Venture: Who will keep the books, how will expenses to be reimbursed what is the authority of each Joint Venturer to commit to obligate the others?

4. Explain the relationship of ownership, options for ownership or loans between the Joint Venturers.

5. How and by whom will the on-site work be supervised?

6. Who will be responsible for material purchases and how will the purchases be financed?

7. Who will provide the equipment, the estimated cost thereof and how will the equipment be financed?

8. How and from whom will bonding be acquired; insurance; name of company(s) providing bonding and insurance.

9. Describe the experience and business qualifications of each Joint Venturer.

10. Submit copies of any Joint Venture Agreement.

| | |
|---|---|
| Signature of Affiant | Date |
| Signature of Affiant | Date |
| Signature of Affiant | Date |

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

# General Conditions for Non-Construction Contracts Section I – (With or without Maintenance Work)

**U.S. Department of Housing and Urban Development** Office of Public and Indian Housing Office of Labor Relations OMB Approval No. 2577-0157 (exp. 1/31/2017) Public Reporting Burden for this collection of information is estimated to average 0.08 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Reports Management Officer, Office of Information Policies and Systems, U.S. Department of Housing and Urban Development, Washington, D.C. 20410-3600; and to the Office of Management and Budget, Paperwork Reduction Project (2577-0157), Washington, D.C. 20503. Do not send this completed form to either of these addressees.

**Applicability. This form HUD-5370-C has 2 Sections. These Sections must be inserted into non-construction contracts as described below:**

1) **Non-construction contracts** (*without* maintenance) **greater than $100,000 - use Section I**;
2) **Maintenance contracts** (including nonroutine maintenance as defined at 24 CFR 968.105) **greater than $2,000 but not more than $100,000 - use Section II**; and
3) **Maintenance contracts** (including nonroutine maintenance), **greater than $100,000 – use Sections I and II.**

---

**Section I - Clauses for All Non-Construction Contracts greater than $100,000**

---

**1. Definitions**

The following definitions are applicable to this contract:

(a) "Authority or Housing Authority (HA)" means the Housing Authority.

(b) "Contract" means the contract entered into between the Authority and the Contractor. It includes the contract form, the Certifications and Representations, these contract clauses, and the scope of work. It includes all formal changes to any of those documents by addendum, Change Order, or other modification.

(c) "Contractor" means the person or other entity entering into the contract with the Authority to perform all of the work required under the contract.

(d) "Day" means calendar days, unless otherwise stated.

(e) "HUD" means the Secretary of Housing and Urban development, his delegates, successors, and assigns, and the officers and employees of the United States Department of Housing and Urban Development acting for and on behalf of the Secretary.

**2. Changes**

(a) The HA may at any time, by written order, and without notice to the sureties, if any, make changes within the general scope of this contract in the services to be performed or supplies to be delivered.

(b) If any such change causes an increase or decrease in the hourly rate, the not-to-exceed amount of the contract, or the time required for performance of any part of the work under this contract, whether or not changed by the order, or otherwise affects the conditions of this contract, the HA shall make an equitable adjustment in the not-to-exceed amount, the hourly rate, the delivery schedule, or other affected terms, and shall modify the contract accordingly.

(c) The Contractor must assert its right to an equitable adjustment under this clause within 30 days from the date of receipt of the written order. However, if the HA decides that the facts justify it, the HA may receive and act upon a proposal submitted before final payment of the contract.

(d) Failure to agree to any adjustment shall be a dispute under clause Disputes, herein. However, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed.

(e) No services for which an additional cost or fee will be charged by the Contractor shall be furnished without the prior written consent of the HA.

**3. Termination for Convenience and Default**

(a) The HA may terminate this contract in whole, or from time to time in part, for the HA's convenience or the failure of the Contractor to fulfill the contract obligations (default). The HA shall terminate by delivering to the Contractor a written Notice of Termination specifying the nature, extent, and effective date of the termination. Upon receipt of the notice, the Contractor shall: (i) immediately discontinue all services affected (unless the notice directs otherwise); and (ii) deliver to the HA all information, reports, papers, and other materials accumulated or generated in performing this contract, whether completed or in process.

(b) If the termination is for the convenience of the HA, the HA shall be liable only for payment for services rendered before the effective date of the termination.

(c) If the termination is due to the failure of the Contractor to fulfill its obligations under the contract (default), the HA may (i) require the Contractor to deliver to it, in the manner and to the extent directed by the HA, any work as described in subparagraph (a)(ii) above, and compensation be determined in accordance with the Changes clause, paragraph 2, above; (ii) take over the work and prosecute the same to completion by contract or otherwise, and the Contractor shall be liable for any additional cost incurred by the HA; (iii) withhold any payments to the Contractor, for the purpose of off-set or partial payment, as the case may be, of amounts owed to the HA by the Contractor.

(d) If, after termination for failure to fulfill contract obligations (default), it is determined that the Contractor had not failed, the termination shall be deemed to have been effected for the convenience of the HA, and the Contractor shall been titled to payment as described in paragraph (b) above.

(e) Any disputes with regard to this clause are expressly made subject to the terms of clause titled Disputes herein.

**4. Examination and Retention of Contractor's Records**

(a) The HA, HUD, or Comptroller General of the United States, or any of their duly authorized representatives shall, until 3 years after final payment under this contract, have access to and the right to examine any of the Contractor's directly pertinent books, documents, papers, or other records involving transactions related to this contract for the purpose of making audit, examination, excerpts, and transcriptions.

(b) The Contractor agrees to include in first-tier subcontracts under this contract a clause substantially the same as paragraph (a) above. "Subcontract," as used in this clause, excludes purchase orders not exceeding $10,000.

(c) The periods of access and examination in paragraphs (a) and (b) above for records relating to:
(i) appeals under the clause titled Disputes;
(ii) litigation or settlement of claims arising from the performance of this contract; or,
(iii) costs and expenses of this contract to which the HA, HUD, or Comptroller General or any of their duly authorized representatives has taken exception shall continue until disposition of such appeals, litigation, claims, or exceptions.

**5. Rights in Data (Ownership and Proprietary Interest)**

The HA shall have exclusive ownership of, all proprietary interest in, and the right to full and exclusive possession of all information, materials and documents discovered or produced by Contractor pursuant to the terms of this Contract, including but not limited to reports, memoranda or letters concerning the research and reporting tasks of this Contract.

**6. Energy Efficiency**

The contractor shall comply with all mandatory standards and policies relating to energy efficiency which are contained in the energy conservation plan issued in compliance with the Energy Policy and Conservation Act (Pub.L. 94-163) for the State in which the work under this contract is performed.

**7. Disputes**

(a) All disputes arising under or relating to this contract, *except for disputes arising under clauses contained in Section III, Labor Standards Provisions*, including any claims for damages for the alleged breach there of which are not disposed of by agreement, shall be resolved under this clause.

(b) All claims by the Contractor shall be made in writing and submitted to the HA. A claim by the HA against the Contractor shall be subject to a written decision by the HA.

(c) The HA shall, with reasonable promptness, but in no event in no more than 60 days, render a decision concerning any claim hereunder. Unless the Contractor, within 30 days after receipt of the HA's decision, shall notify the HA in writing that it takes exception to such decision, the decision shall be final and conclusive.

(d) Provided the Contractor has (i) given the notice within the time stated in paragraph (c) above, and (ii) excepted its claim relating to such decision from the final release, and (iii) brought suit against the HA not later than one year after receipt of final payment, or if final payment has not been made, not later than one year after the Contractor has had a reasonable time to respond to a written request by the HA that it submit a final voucher and release, whichever is earlier, then the HA's decision shall not be final or conclusive, but the dispute shall be determined on the merits by a court of competent jurisdiction.

(e) The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the HA.

**8. Contract Termination; Debarment**

A breach of these Contract clauses may be grounds for termination of the Contract and for debarment or denial of participation in HUD programs as a Contractor and a subcontractor as provided in 24 CFR Part 24.

**9. Assignment of Contract**

The Contractor shall not assign or transfer any interest in this contract; except that claims for monies due or to become due from the HA under the contract may be assigned to a bank, trust company, or other financial institution. If the Contractor is a partnership, this contract shall inure to the benefit of the surviving or remaining member(s) of such partnership approved by the HA.

**10. Certificate and Release**

Prior to final payment under this contract, or prior to settlement upon termination of this contract, and as a condition precedent thereto, the Contractor shall execute and deliver to the HA a certificate and release, in a form acceptable to the HA, of all claims against the HA by the Contractor under and by virtue of this contract, other than such claims, if any, as may be specifically excepted by the Contractor in stated amounts set forth therein.

**11. Organizational Conflicts of Interest**

(a) The Contractor warrants that to the best of its knowledge and belief and except as otherwise disclosed, it does not have any organizational conflict of interest which is defined as a situation in which the nature of work under this contract and a contractor's organizational, financial, contractual or other interests are such that:
(i) Award of the contract may result in an unfair competitive advantage; or
(ii) The Contractor's objectivity in performing the contract work may be impaired.

(b) The Contractor agrees that if after award it discovers an organizational conflict of interest with respect to this contract or any task/delivery order under the contract, he or she shall make an immediate and full disclosure in writing to the Contracting Officer which shall include a description of the action which the Contractor has taken or intends to take to eliminate or neutralize the conflict. The HA may, however, terminate the contract or task/delivery order for the convenience of the HA if it would be in the best interest of the HA.

(c) In the event the Contractor was aware of an organizational conflict of interest before the award of this contract and intentionally did not disclose the conflict to the Contracting Officer, the HA may terminate the contract for default.

(d) The terms of this clause shall be included in all subcontracts and consulting agreements wherein the work to be performed is similar to the service provided by the prime Contractor. The Contractor shall include in such subcontracts and consulting agreements any necessary provisions to eliminate or neutralize conflicts of interest.

**12. Inspection and Acceptance**

(a) The HA has the right to review, require correction, if necessary, and accept the work products produced by the Contractor. Such review(s) shall be carried out within 30 days so as to not impede the work of the Contractor. Any

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

product of work shall be deemed accepted as submitted if the HA does not issue written comments and/or required corrections within 30 days from the date of receipt of such product from the Contractor.

(b) The Contractor shall make any required corrections promptly at no additional charge and return a revised copy of the product to the HA within 7 days of notification or a later date if extended by the HA.

(c) Failure by the Contractor to proceed with reasonable promptness to make necessary corrections shall be a default. If the Contractor's submission of corrected work remains unacceptable, the HA may terminate this contract (or the task order involved) or reduce the contract price or cost to reflect the reduced value of services received.

**13. Interest of Members of Congress**

No member of or delegate to the Congress of the United States of America or Resident Commissioner shall be admitted to any share or part of this contract or to any benefit to arise there from, but this provision shall not be construed to extend to this contract if made with a corporation for its general benefit.

**14. Interest of Members, Officers, or Employees and Former Members, Officers, or Employees**

No member, officer, or employee of the HA, no member of the governing body of the locality in which the project is situated, no member of the governing body in which the HA was activated, and no other pubic official of such locality or localities who exercises any functions or responsibilities with respect to the project, shall, during his or her tenure, or for one year thereafter, have any interest, direct or indirect, in this contract or the proceeds thereof.

**15. Limitation on Payments to Influence Certain Federal Transactions**

(a) Definitions. As used in this clause:

"Agency", as defined in 5 U.S.C. 552(f), includes Federal executive departments and agencies as well as independent regulatory commissions and Government corporations, as defined in 31 U.S.C. 9101(1).

"Covered Federal Action" means any of the following Federal actions:

(i) The awarding of any Federal contract;
(ii) The making of any Federal grant;
(iii) The making of any Federal loan;
(iv) The entering into of any cooperative agreement; and,
(v) The extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

Covered Federal action does not include receiving from an agency a commitment providing for the United States to insure or guarantee a loan.

"Indian tribe" and "tribal organization" have the meaning provided in section 4 of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450B). Alaskan Natives are included under the definitions of Indian tribes in that Act.

"Influencing or attempting to influence" means making, with the intent to influence, any communication to or appearance before an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any covered Federal action.

"Local government" means a unit of government in a State and, if chartered, established, or otherwise recognized by a State for the performance of a governmental duty, including a local public authority, a special district, an intrastate district, a council of governments, a sponsor group representative organization, and any other instrumentality of a local government.

"Officer or employee of an agency" includes the following individuals who are employed by an agency:

(i) An individual who is appointed to a position in the Government under title 5, U.S.C., including a position under a temporary appointment;
(ii) A member of the uniformed services as defined in section 202, title 18, U.S.C.;
(iii) A special Government employee as defined in section 202, title 18, U.S.C.; and,
(iv) An individual who is a member of a Federal advisory committee, as defined by the Federal Advisory Committee Act, title 5, appendix 2.

"Person" means an individual, corporation, company, association, authority, firm, partnership, society, State, and local government, regardless of whether such entity is operated for profit or not for profit. This term excludes an Indian tribe, tribal organization, or other Indian organization with respect to expenditures specifically permitted by other Federal law.

"Recipient" includes all contractors, subcontractors at any tier, and subgrantees at any tier of the recipient of funds received in connection with a Federal contract, grant, loan, or cooperative agreement. The term excludes an Indian tribe, tribal organization, or any other Indian organization with respect to expenditures specifically permitted by other Federal law.

"Regularly employed means, with respect to an officer or employee of a person requesting or receiving a Federal contract, grant, loan, or cooperative agreement, an officer or employee who is employed by such person for at least 130 working days within one year immediately preceding the date of the submission that initiates agency consideration of such person for receipt of such contract, grant, loan, or cooperative agreement. An officer or employee who is employed by such person for less than 130 working days within one year immediately preceding the date of submission that initiates agency consideration of such person shall be considered to be regularly employed as soon as he or she is employed by such person for 130 working days.

"State" means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, a territory or possession of the United States, an agency or instrumentality of a State, and a multi-State, regional, or interstate entity having governmental duties and powers.

(b) Prohibition.

(i) Section 1352 of title 31, U.S.C. provides in part that no appropriated funds may be expended by the recipient of a Federal contract, grant, loan, or cooperative agreement to pay any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any of the following covered Federal actions: the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(ii) The prohibition does not apply as follows:

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

(1) Agency and legislative liaison by Own Employees.

(a) The prohibition on the use of appropriated funds, in paragraph (i) of this section, does not apply in the case of a payment of reasonable compensation made to an officer or employee of a person requesting or receiving a Federal contract, grant, loan, or cooperative agreement, if the payment is for agency and legislative activities not directly related to a covered Federal action.

(b) For purposes of paragraph (b)(i)(1)(a) of this clause, providing any information specifically requested by an agency or Congress is permitted at any time.

(c) The following agency and legislative liaison activities are permitted at any time only where they are not related to a specific solicitation for any covered Federal action:

(1) Discussing with an agency (including individual demonstrations) the qualities and characteristics of the person's products or services, conditions or terms of sale, and service capabilities; and,

(2) Technical discussions and other activities regarding the application or adaptation of the person's products or services for an agency's use.

(d) The following agency and legislative liaison activities are permitted where they are prior to formal solicitation of any covered Federal action:

(1) Providing any information not specifically requested but necessary for an agency to make an informed decision about initiation of a covered Federal action;

(2) Technical discussions regarding the preparation of an unsolicited proposal prior to its official submission; and

(3) Capability presentations by persons seeking awards from an agency pursuant to the provisions of the Small Business Act, as amended by Public Law 95-507 and other subsequent amendments.

(e) Only those activities expressly authorized by subdivision (b)(ii)(1)(a) of this clause are permitted under this clause.

(2) Professional and technical services.

(a) The prohibition on the use of appropriated funds, in subparagraph (b)(i) of this clause, does not apply in the case of-

(i) A payment of reasonable compensation made to an officer or employee of a person requesting or receiving a covered Federal action or an extension, continuation, renewal, amendment, or modification of a covered Federal action, if payment is for professional or technical services rendered directly in the preparation, submission, or negotiation of any bid, proposal, or application for that Federal action or for meeting requirements imposed by or pursuant to law as a condition for receiving that Federal action.

(ii) Any reasonable payment to a person, other than an officer or employee of a person requesting or receiving a covered Federal action or an extension, continuation, renewal, amendment, or modification of a covered Federal action if the payment is for professional or technical services rendered directly in the preparation, submission, or negotiation of any bid, proposal, or application for that Federal action or for meeting requirements imposed by or pursuant to law as a condition for receiving that Federal action. Persons other than officers or employees of a person requesting or receiving a covered Federal action include consultants and trade associations.

(b) For purposes of subdivision (b)(ii)(2)(a) of clause, "professional and technical services" shall be limited to advice and analysis directly applying any professional or technical discipline.

(c) Requirements imposed by or pursuant to law as a condition for receiving a covered Federal award include those required by law or regulation, or reasonably expected to be required by law or regulation, and any other requirements in the actual award documents.

(d) Only those services expressly authorized by subdivisions (b)(ii)(2)(a)(i) and (ii) of this section are permitted under this clause.

(iii) Selling activities by independent sales representatives.

(c) The prohibition on the use of appropriated funds, in subparagraph (b)(i) of this clause, does not apply to the following selling activities before an agency by independent sales representatives, provided such activities are prior to formal solicitation by an agency and are specifically limited to the merits of the matter:

(i) Discussing with an agency (including individual demonstration) the qualities and characteristics of the person's products or services, conditions or terms of sale, and service capabilities; and

(ii) Technical discussions and other activities regarding the application or adaptation of the person's products or services for an agency's use.

(d) Agreement. In accepting any contract, grant, cooperative agreement, or loan resulting from this solicitation, the person submitting the offer agrees not to make any payment prohibited by this clause.

(e) Penalties. Any person who makes an expenditure prohibited under paragraph (b) of this clause shall be subject to civil penalties as provided for by 31 U.S.C. 1352. An imposition of a civil penalty does not prevent the Government from seeking any other remedy that may be applicable.

(f) Cost Allowability. Nothing in this clause is to be interpreted to make allowable or reasonable any costs which would be unallowable or unreasonable in accordance with Part 31 of the Federal Acquisition Regulation (FAR), or OMB Circulars dealing with cost allowability for recipients of assistance agreements. Conversely, costs made specifically unallowable by the requirements in this clause will not be made allowable under any of the provisions of FAR Part 31 or the relevant OMB Circulars.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

**16. Equal Employment Opportunity**

During the performance of this contract, the Contractor agrees as follows:

(a) The Contractor shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin.

(b) The Contractor shall take affirmative action to ensure that applicants are employed, and that employees are treated during employment without regard to their race, color, religion, sex, or national origin. Such action shall include, but not be limited to (1) employment; (2) upgrading; (3) demotion; (4) transfer; (5) recruitment or recruitment advertising; (6) layoff or termination; (7) rates of pay or other forms of compensation; and (8) selection for training, including apprenticeship.

(c) The Contractor shall post in conspicuous places available to employees and applicants for employment the notices to be provided by the Contracting Officer that explain this clause.

(d) The Contractor shall, in all solicitations or advertisements for employees placed by or on behalf of the Contractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, or national origin.

(e) The Contractor shall send, to each labor union or representative of workers with which it has a collective bargaining agreement or other contract or understanding, the notice to be provided by the Contracting Officer advising the labor union or workers' representative of the Contractor's commitments under this clause, and post copies of the notice in conspicuous places available to employees and applicants for employment.

(f) The Contractor shall comply with Executive Order 11246, as amended, and the rules, regulations, and orders of the Secretary of Labor.

(g) The Contractor shall furnish all information and reports required by Executive Order 11246, as amended and by rules, regulations, and orders of the Secretary of Labor, or pursuant thereto. The Contractor shall permit access to its books, records, and accounts by the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(h) In the event of a determination that the Contractor is not in compliance with this clause or any rule, regulation, or order of the Secretary of Labor, this contract may be canceled, terminated, or suspended in whole or in part, and the Contractor may be declared ineligible for further Government contracts, or federally assisted construction contracts under the procedures authorized in Executive Order 11246, as amended. In addition, sanctions may be imposed and remedies invoked against the Contractor as provided in Executive Order 11246, as amended, the rules, regulations, and orders of the Secretary of Labor, or as otherwise provided by law.

(i) The Contractor shall include the terms and conditions of this clause in every subcontract or purchase order unless exempted by the rules, regulations, or orders of the Secretary of Labor issued under Executive Order 11246, as amended, so that these terms and conditions will be binding upon each subcontractor or vendor. The Contractor shall take such action with respect to any subcontractor or purchase order as the Secretary of Housing and Urban Development or the Secretary of Labor may direct as a means of enforcing such provisions, including sanctions for noncompliance; provided that if the Contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction, the Contractor may request the United States to enter into the litigation to protect the interests of the United States.

**17. Dissemination or Disclosure of Information**

No information or material shall be disseminated or disclosed to the general public, the news media, or any person or organization without prior express written approval by the HA.

**18. Contractor's Status**

It is understood that the Contractor is an independent contractor and is not to be considered an employee of the HA, or assume any right, privilege or duties of an employee, and shall save harmless the HA and its employees from claims suits, actions and costs of every description resulting from the Contractor's activities on behalf of the HA in connection with this Agreement.

**19. Other Contractors**

HA may undertake or award other contracts for additional work at or near the site(s) of the work under this contract. The contractor shall fully cooperate with the other contractors and with HA and HUD employees and shall carefully adapt scheduling and performing the work under this contract to accommodate the additional work, heeding any direction that may be provided by the Contracting Officer. The contractor shall not commit or permit any act that will interfere with the performance of work by any other contractor or HA employee.

**20. Liens**

The Contractor is prohibited from placing a lien on HA's property. This prohibition shall apply to all subcontractors.

**21. Training and Employment Opportunities for Residents in the Project Area** (Section 3, HUD Act of 1968; 24 CFR 135)

(a) The work to be performed under this contract is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u (section 3). The purpose of section 3 is to ensure that employment and other economic opportunities generated by HUD assistance or HUD-assisted projects covered by section 3, shall, to the greatest extent feasible, be directed to low- and very low-income persons, particularly persons who are recipients of HUD assistance for housing.

(b) The parties to this contract agree to comply with HUD's regulations in 24 CFR Part 135, which implement section 3. As evidenced by their execution of this contract, the parties to this contract certify that they are under no contractual or other impediment that would prevent them from complying with the Part 135 regulations.

(c) The contractor agrees to send to each labor organization or representative of workers with which the contractor has a collective bargaining agreement or other understanding, if any, a notice advising the labor organization or workers' representative of the contractor's commitments under this section 3 clause, and will post copies of the notice in conspicuous places at the work site where both employees and applicants for training and employment positions can see the notice. The notice shall describe the section 3 preference, shall set forth minimum number and job titles subject to hire, availability of

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

apprenticeship and training positions, the qualifications for each; and the name and location of the person(s) taking applications for each of the positions; and the anticipated date the work shall begin.

(d) The contractor agrees to include this section 3 clause in every subcontract subject to compliance with regulations in 24 CFR Part 135, and agrees to take appropriate action, as provided in an applicable provision of the subcontract or in this section 3 clause, upon a finding that the subcontractor is in violation of the regulations in 24 CFR Part 135. The contractor will not subcontract with any subcontractor where the contractor has notice or knowledge that the subcontractor has been found in violation of the regulations in 24 CFR Part 135.

(e) The contractor will certify that any vacant employment positions, including training positions, that are filled (1) after the contractor is selected but before the contract is executed, and (2) with persons other than those to whom the regulations of 24 CFR Part 135 require employment opportunities to be directed, were not filled to circumvent the contractor's obligations under 24 CFR Part 135.

(f) Noncompliance with HUD's regulations in 24 CFR Part 135 may result in sanctions, termination of this contract for default, and debarment or suspension from future HUD assisted contracts.

**22. Procurement of Recovered Materials**

(a) In accordance with Section 6002 of the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act, the Contractor shall procure items designated in guidelines of the Environmental Protection Agency (EPA) at 40 CFR Part 247 that contain the highest percentage of recovered materials practicable, consistent with maintaining a satisfactory level of competition. The Contractor shall procure items designated in the EPA guidelines that contain the highest percentage of recovered materials practicable unless the Contractor determines that such items: (1) are not reasonably available in a reasonable period of time; (2) fail to meet reasonable performance standards, which shall be determined on the basis of the guidelines of the National Institute of Standards and Technology, if applicable to the item; or (3) are only available at an unreasonable price.

(b) Paragraph (a) of this clause shall apply to items purchased under this contract where: (1) the Contractor purchases in excess of $10,000 of the item under this contract; or (2) during the preceding Federal fiscal year, the Contractor: (i) purchased any amount of the items for use under a contract that was funded with Federal appropriations and was with a Federal agency or a State agency or agency of a political subdivision of a State; and (ii) purchased a total of in excess of $10,000 of the item both under and outside that contract.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

# General Conditions for Non-Construction Contracts U.S. Department of Housing and Urban Development Office of Public and Indian Housing Section II – (With Maintenance Work) Office of Labor Relations OMB Approval No. 2577-0157 (exp. 1/31/2017)

Public Reporting Burden for this collection of information is estimated to average 0.08 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Reports Management Officer, Office of Information Policies and Systems, U.S. Department of Housing and Urban Development, Washington, D.C. 20410-3600; and to the Office of Management and Budget, Paperwork Reduction Project (2577-0157), Washington, D.C. 20503. Do not send this completed form to either of these addressees.

**Applicability. This form HUD-5370C has 2 Sections. These Sections must be inserted into non-construction contracts as described below:**

1) Non-construction contracts (*without* maintenance) greater than $100,000 - use Section I;
2) Maintenance contracts (including nonroutine maintenance as defined at 24 CFR 968.105) greater than $2,000 but not more than $100,000 - use Section II; and
3) Maintenance contracts (including nonroutine maintenance), greater than $100,000 – use Sections I and II.

==================================================

**Section II – Labor Standard Provisions for all Maintenance Contracts greater than $2,000**

==================================================

**1. Minimum Wages**

(a) All maintenance laborers and mechanics employed under this Contract in the operation of the project(s) shall be paid unconditionally and not less often than semi-monthly, and without subsequent deduction (except as otherwise provided by law or regulations), the full amount of wages due at time of payment computed at rates not less than those contained in the wage determination of the Secretary of Housing and Urban Development which is attached hereto and made a part hereof. Such laborers and mechanics shall be paid the appropriate wage rate on the wage determination for the classification of work actually performed, without regard to skill. Laborers or mechanics performing work in more than one classification may be compensated at the rate specified for each classification for the time actually worked therein; provided, that the employer's payroll records accurately set forth the time spent in each classification in which work is performed. The wage determination, including any additional classifications and wage rates approved by HUD under subparagraph 1(b), shall be posted at all times by the Contractor and its subcontractors at the site of the work in a prominent and accessible place where it can be easily seen by the workers.

(b) (i) Any class of laborers or mechanics which is not listed in the wage determination and which is to be employed under the Contract shall be classified in conformance with the wage determination. HUD shall approve an additional classification and wage rate only when the following criteria have been met:

(1) The work to be performed by the classification required is not performed by a classification in the wage determination;

(2) The classification is utilized in the area by the industry; and

(3) The proposed wage rate bears a reasonable relationship to the wage rates contained in the wage determination.

(ii) The wage rate determined pursuant to this paragraph shall be paid to all workers performing work in the classification under this Contract from the first day on which work is performed in the classification.

**2. Withholding of funds**

The Contracting Officer, upon his/her own action or upon request of HUD, shall withhold or cause to be withheld from the Contractor under this Contract or any other contract subject to HUD-determined wage rates, with the same prime Contractor, so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics employed by the Contractor or any subcontractor the full amount of wages required by this clause. In the event of failure to pay any laborer or mechanic employed under this Contract all or part of the wages required under this Contract, the Contracting Officer or HUD may, after written notice to the Contractor, take such action as may be necessary to cause the suspension of any further payment or advance until such violations have ceased. The Public Housing Agency or HUD may, after written notice to the Contractor, disburse such amounts withheld for and on account of the Contractor or subcontractor to the respective employees to whom they are due.

**3. Records**

(a) The Contractor and each subcontractor shall make and maintain for three (3) years from the completion of the work records containing the following for each laborer and mechanic:

(i) Name, address and Social Security Number;
(ii) Correct work classification or classifications;
(iii) Hourly rate or rates of monetary wages paid;
(iv) Rate or rates of any fringe benefits provided;
(v) Number of daily and weekly hours worked;
(vi) Gross wages earned;
(vii) Any deductions made; and
(viii) Actual wages paid.

(b) The Contractor and each subcontractor shall make the records required under paragraph 3(a) available for inspection, copying, or transcription by authorized representatives of HUD or the HA and shall permit such representatives to interview employees during working hours on the job. If the Contractor or any subcontractor fails to make the required records available, HUD or its designee may, after written notice to the Contractor, take such action as may be necessary to cause the suspension of any further payment, advance or guarantee of funds.

**4. Apprentices and Trainees**

(a) Apprentices and trainees will be permitted to work at less than the predetermined rate for the work they perform when they are employed pursuant to and individually registered in:

(i) A bona fide apprenticeship program registered with the U.S. Department of Labor, Employment and Training Administration (ETA), Office of

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Apprenticeship Training, Employer and Labor Services (OATELS), or with a state apprenticeship agency recognized by OATELS, or if a person is employed in his/her first 90 days of probationary employment as an apprentice in such an apprenticeship program, who is not individually registered in the program, but who has been certified by OATELS or a state apprenticeship agency (where appropriate) to be eligible for probationary employment as an apprentice;

(ii) A trainee program which has received prior approval, evidenced by formal certification by the U.S. Department of Labor, ETA; or

(iii) A training/trainee program that has received prior approval by HUD.

(b) Each apprentice or trainee must be paid at not less than the rate specified in the registered or approved program for the apprentice's/trainee's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage determination. Apprentices and trainees shall be paid fringe benefits in accordance with the provisions of the registered or approved program. If the program does not specify fringe benefits, apprentices/trainees must be paid the full amount of fringe benefits listed on the wage determination for the applicable classification.

(c) The allowable ratio of apprentices or trainees to journeyman on the job site in any craft classification shall not be greater than the ratio permitted to the employer as to the entire work force under the approved program.

(d) Any worker employed at an apprentice or trainee wage rate who is not registered in an approved program, and any apprentice or trainee performing work on the job site in excess of the ratio permitted under the approved program, shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed.

(e) In the event OATELS, a state apprenticeship agency recognized by OATELS or ETA, or HUD, withdraws approval of an apprenticeship or trainee program, the employer will no longer be permitted to utilize apprentices/trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

**5. Disputes concerning labor standards**

(a) Disputes arising out of the labor standards provisions contained in Section II of this form HUD-5370-C, other than those in Paragraph 6, shall be subject to the following procedures. Disputes within the meaning of this paragraph include disputes between the Contractor (or any of its subcontractors) and the HA, or HUD, or the employees or their representatives, concerning payment of prevailing wage rates or proper classification. The procedures in this section may be initiated upon HUD's own motion, upon referral of the HA, or upon request of the Contractor or subcontractor(s).

(i) A Contractor and/or subcontractor or other interested party desiring reconsideration of findings of violation by the HA or HUD relating to the payment of straight-time prevailing wages or classification of work shall request such reconsideration by letter postmarked within 30 calendar days of the date of notice of findings issued by the HA or HUD. The request shall set forth those findings that are in dispute and the reasons, including any affirmative defenses, with respect to the violations. The request shall be directed to the appropriate HA or HUD official in accordance with instructions contained in the notice of findings or, if the notice does not specify to whom a request should be made, to the Regional Labor Relations Officer (HUD).

(ii) The HA or HUD official shall, within 60 days (unless otherwise indicated in the notice of findings) after receipt of a timely request for reconsideration, issue a written decision on the findings of violation. The written decision on reconsideration shall contain instructions that any appeal of the decision shall be addressed to the Regional Labor Relations Officer by letter postmarked within 30 calendar days after the date of the decision. In the event that the Regional Labor Relations Officer was the deciding official on reconsideration, the appeal shall be directed to the Director, Office of Labor Relations (HUD). Any appeal must set forth the aspects of the decision that are in dispute and the reasons, including any affirmative defenses, with respect to the violations.

(iii) The Regional Labor Relations Officer shall, within 60 days (unless otherwise indicated in the decision on reconsideration) after receipt of a timely appeal, issue a written decision on the findings. A decision of the Regional Labor Relations Officer may be appealed to the Director, Office of Labor Relations, by letter postmarked within 30 days of the Regional Labor Relations Officer's decision. Any appeal to the Director must set forth the aspects of the prior decision(s) that are in dispute and the reasons. The decision of the Director, Office of Labor Relations, shall be final.

(b) Disputes arising out of the labor standards provisions of paragraph 6 shall not be subject to paragraph 5(a) of this form HUD-5370C. Such disputes shall be resolved in accordance with the procedures of the U.S. Department of Labor set forth in 29 CFR Parts 5, 6 and 7. Disputes within the meaning of this paragraph 5(b) include disputes between the Contractor (or any of its subcontractors) and the HA, HUD, the U.S. Department of Labor, or the employees or their representatives.

**6. Contract Work Hours and Safety Standards Act**

The provisions of this paragraph 6 are applicable only where the amount of the prime contract exceeds $100,000. As used in this paragraph, the terms "laborers" and "mechanics" includes watchmen and guards.

(a) **Overtime requirements.** No Contractor or subcontractor contracting for any part of the Contract work which may require or involve the employment of laborers or mechanics shall require or permit any such laborer or mechanic in any workweek in which he or she is employed on such work to work in excess of 40 hours in such workweek unless such laborer or mechanic receives compensation at a rate not less than one and one-half times the basic rate of pay for all hours worked in excess of 40 hours in such workweek.

(b) **Violation; liability for unpaid wages; liquidated damages.** In the event of any violation of the provisions set forth in paragraph 6(a), the Contractor and any

subcontractor responsible therefor shall be liable for the unpaid wages. In addition, such Contractor and subcontractor shall be liable to the United States (in the case of work done under contract for the District of Columbia or a territory, to the District or to such territory), for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer or mechanic, including watchmen and guards, employed in violation of the provisions set forth in paragraph (a) of this clause, in the sum of $10 for each calendar day on which such individual was required or permitted to work in excess of the standard workweek of 40 hours without payment of the overtime wages required by provisions set forth in paragraph (a) of this clause.

(c) **Withholding for unpaid wages and liquidated damages.** HUD or its designee shall upon its own action or upon written request of an authorized representative of the U.S. Department of Labor withhold or cause to be withheld, from any moneys payable on account of work performed by the Contractor or subcontractor under any such Contract or any federal contract with the same prime Contractor, or any other federally-assisted contract subject to the Contract Work Hours and Safety Standards Act, which is held by the same prime Contractor such sums as may be determined to be necessary to satisfy any liabilities of such Contractor or subcontractor for unpaid wages and liquidated damages as provided in the provisions set forth in paragraph (b) of this clause.

**7. Subcontracts**

The Contractor or subcontractor shall insert in any subcontracts all the provisions contained in this Section II and also a clause requiring the subcontractors to include these provisions in any lower tier subcontracts. The prime Contractor shall be responsible for the compliance by any subcontractor or lower tier subcontractor with all the provisions contained in these clauses.

**8. Non-Federal Prevailing Wage Rates**

Any prevailing wage rate (including basic hourly rate and any fringe benefits), determined under state law to be prevailing, with respect to any employee in any trade or position employed under the Contract, is inapplicable to the contract and shall not be enforced against the Contractor or any subcontractor, with respect to employees engaged under the contract whenever such non-Federal prevailing wage rate, exclusive of any fringe benefits, exceeds the applicable wage rate determined by the Secretary of HUD to be prevailing in the locality with respect to such trade or position.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

# Instructions to Offerors Non-Construction

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing

**1. Preparation of Offers**

(a) Offerors are expected to examine the statement of work, the proposed contract terms and conditions, and all instructions. Failure to do so will be at the offeror's risk.

(b) Each offeror shall furnish the information required by the solicitation. The offeror shall sign the offer and print or type its name on the cover sheet and each continuation sheet on which it makes an entry. Erasures or other changes must be initialed by the person signing the offer. Offers signed by an agent shall be accompanied by evidence of that agent's authority, unless that evidence has been previously furnished to the HA.

(c) Offers for services other than those specified will not be considered.

**2. Submission of Offers**

(a) Offers and modifications thereof shall be submitted in sealed envelopes or packages (1) addressed to the office specified in the solicitation, and (2) showing the time specified for receipt, the solicitation; number, and the name and address of the offeror.

(b) Telegraphic offers will not be considered unless authorized by the solicitation; however, offers may by modified by written or telegraphic notice.

(c) Facsimile offers, modifications or withdrawals will not be considered unless authorized by the solicitation.

**3. Amendments to Solicitations**

(a) If this solicitation is amended, then all terms and conditions which are not modified remain unchanged.

(b) Offerors shall acknowledge receipt of any amendments to this solicitation by:

(1) Signing and returning the amendment

(2) Identifying the amendment number and date in the space provided for this purpose on the form for submitting an offer,

(3) Letter or telegram, or

(4) Facsimile, if facsimile offers are authorized in the solicitation. The HA/HUD must receive the acknowledgment by the time specified for receipt of offers.

**4. Explanation to Prospective Offerors**

Any prospective offeror desiring an explanation or interpretation of the solicitation, statement of work, etc., must request it in writing soon enough to allow a reply to reach all prospective offerors before the submission of their offers. Oral explanations or instructions given before the award of the contract will not be binding. Any information given to a prospective offeror concerning a solicitation will be furnished promptly to all other prospective offerors as an amendment of the solicitation, if that information is necessary in submitting offers or if the lack of it would be prejudicial to any other prospective offerors.

**5. Responsibility of Prospective Contractor**

The HA shall award a contract only to a responsible prospective contractor who is able to perform successfully under the terms and conditions of the proposed contract. To be determined responsible, a prospective contractor must –

(1) Have adequate financial resources to perform the contract, or the ability to obtain them;

(2) Have a satisfactory performance record;

(3) Have a satisfactory record of integrity and business ethics;

(4) Have a satisfactory record of compliance with public policy (e.g., Equal Employment Opportunity); and

(5) Not have been suspended, debarred, or otherwise determined to be ineligible for award of contracts by the Department of Housing and Urban Development or any other agency of the U.S. Government. Current lists of ineligible contractors are available for inspection at the HA/HUD.

(a) Before an offer is considered for award, the offeror may be requested by the HA to submit a statement or other documentation regarding any of the foregoing requirements. Failure by the offeror to provide such additional information may render the offeror ineligible for award.

**6. Late Submissions, Modifications, and Withdrawal of Offers**

(a) Any offer received at the place designated in the solicitation after the exact time specified for receipt will not be considered unless it is received before award is made and it –

(1) Was sent by registered or certified mail not later than the fifth calendar day before the date specified for receipt of offers (e.g., an offer submitted in response to a solicitation requiring receipt of offers by the 20th of the month must have been mailed by the 15th);

(2) Was sent by mail, or if authorized by the solicitation, was sent by telegram or by facsimile, and it is determined by the HA/HUD that the late receipt was due solely to mishandling by the HA/HUD after receipt at the HA;

(3) Was sent by U.S. Postal Service Express Mail Next Day Service – Post Office to Addressee, not later than 5:00 p.m. at the place of mailing two working days prior to the date specified for receipt of proposals. The term "working days" excludes weekends and U.S. Federal holidays; or

(4) Is the only offer received.

(b) Any modification of an offer, except a modification resulting from the HA's request for "best and final" offer (if this solicitation is a request for proposals), is subject to the same conditions as in subparagraphs (a)(1), (2), and 93) of this provision.

(c) A modification resulting from the HA's request for "best and final" offer received after the time and date specified in the request will not be considered unless received before award and the late receipt is due solely to mishandling by the HA after receipt at the HA.

(d) The only acceptable evidence to establish the date of mailing of a late offer, modification, or withdrawal sent either by registered or certified mail is the U.S. or Canadian Postal Service postmark both on the envelope or wrapper and on the original receipt from the U.S. or Canadian Postal Service. Both postmarks must show a legible date or the offer, modification, or withdrawal shall be processed as if mailed late. "Postmark" means a printed, stamped, or otherwise placed impression (exclusive of a postage meter machine impression) that is readily identifiable without further action as having been supplied and affixed by the employees of the U.S. or Canadian Postal Service on the date of mailing. Therefore, offerors should request the postal clerk to place a hand cancellation bull's-eye postmark on both the receipt and the envelope or wrapper.

(e) The only acceptable evidence to establish the time of receipt at the HA is the time/date stamp of HA on the offer wrapper or other documentary evidence of receipt maintained by the HA.

(f) The only acceptable evidence to establish the data of mailing a late offer, modification, or withdrawal sent by Express Mail Next Day Service-post Office to Addressee is the date entered by the post office receiving clerk on the "Express Mail Next Day Service-Post Office to Addressee" label and the postmark on both the envelope or wrapper and on the original receipt from the U.S. Postal Service. "Postmark" has the same meaning as defined in paragraph (c) of this provision, excluding postmarks of the Canadian Postal Service. Therefore, offerors should request the postal clerk to place a legible hand cancellation bull's eye postmark on both the receipt and the envelope or wrapper.

(g) Notwithstanding paragraph (a) of this provision, a late modification of an otherwise successful offer that makes its terms more favorable to the HA will be considered at any time it is received and may be accepted.

(h) If this solicitation is a request for proposals, proposals may be withdrawn by written notice, or if authorized by this solicitation, by telegram (including mailgram) or facsimile machine transmission received at any time before award. Proposals may be withdrawn in person by a offeror or its authorized representative if the identity of the person requesting withdrawal is established and the person signs a receipt for the offer before award. If this solicitation is an invitation for bids, bids may be withdrawn at any time prior to bid opening.

**7. Contract Award**

(a) The HA will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the HA, cost or price and other factors, specified elsewhere in this solicitation, considered.

(b) The HA may:
  (1) Reject any or all offers if such action is in the HA's interest,
  (2) Accept other than the lowest offer,
  (3) Waive informalities and minor irregularities in offers received, and (4) award more than one contract for all or part of the requirements stated.

(c) If this solicitation is a request for proposals, the HA may award a contract on the basis of initial offers received, without discussions. Therefore, each initial offer should contain the offeror's best terms from a cost or price and technical standpoint.

(d) A written award or acceptance of offer mailed or otherwise furnished to the successful offeror within the time for acceptance specified in the offer shall result in a binding contract without further action by either party. If this solicitation is a request for proposals, before the offer's specified expiration time, the HA may accept an offer whether or not there are negotiations after its receipt, unless a written notice of withdrawal is received before award. Negotiations conducted after receipt of an offer do not constitute a rejection or counteroffer by the HA.

(e) Neither financial data submitted with an offer, nor representations concerning facilities or financing, will form a part of the resulting contract.

**8. Service of Protest**

Any protest against the award of a contract pursuant to this solicitation shall be served on the HA by obtaining written and dated acknowledgment of receipt from the HA at the address shown on the cover of this solicitation. The determination of the HA with regard to such protest or to proceed to award notwithstanding such protest shall be final unless appealed by the protestor.

**9. Offer Submission**

Offers shall be submitted as follows and shall be enclosed in a sealed envelope and addressed to the office specified in the solicitation. The proposal shall show the hour and date specified in the solicitation for receipt, the solicitation number, and the name and address of the offeror, on the face of the envelope.

It is very important that the offer by properly identified on the face of the envelope as set forth above in order to insure that the date and time of receipt is stamped on the face of the offer envelope. Receiving procedures are: date and time stamp those envelopes identified as proposals and deliver them immediately to the appropriate contracting official, and only date stamp those envelopes which do not contain identification of the contents and deliver them to the appropriate procuring activity only through the routine mail delivery procedure.

(As described in the HA's IFB/RFP)

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

# Certifications and Representations of Offerors

## Non-Construction Contract

U.S. Department of Housing and Urban Development
Office of Public and Indian Housing

Public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This form includes clauses required by OMB's common rule on bidding/offering procedures, implemented by HUD in 24 CFR 85.36, and those requirements set forth in Executive Order 11625 for small, minority, women-owned businesses, and certifications for independent price determination, and conflict of interest.

The form is required for nonconstruction contracts awarded by Housing Agencies (HAs). The form is used by bidders/offerors to certify to the HA's Contracting Officer for contract compliance. If the form were not used, HAs would be unable to enforce their contracts. Responses to the collection of information are required to obtain a benefit or to retain a benefit. The information requested does not lend itself to confidentiality.

**1. Contingent Fee Representation and Agreement**

(a) The bidder/offeror represents and certifies as part of its bid/ offer that, except for full-time bona fide employees working solely for the bidder/offeror, the bidder/offeror:

(1) [ ] has, [ ] has not employed or retained any person or company to solicit or obtain this contract; and

(2) [ ] has, [ ] has not paid or agreed to pay to any person or company employed or retained to solicit or obtain this contract any commission, percentage, brokerage, or other fee contingent upon or resulting from the award of this contract.

(b) If the answer to either (a)(1) or (a) (2) above is affirmative, the bidder/offeror shall make an immediate and full written disclosure to the PHA Contracting Officer.

(c) Any misrepresentation by the bidder/offeror shall give the PHA the right to (1) terminate the resultant contract; (2) at its discretion, to deduct from contract payments the amount of any commission, percentage, brokerage, or other contingent fee; or

(3) take other remedy pursuant to the contract.

**2. Small, Minority, Women-Owned Business Concern Representation**

The bidder/offeror represents and certifies as part of its bid/ offer that it:

(a) [ ] is, [ ] is not a small business concern. "Small business concern," as used in this provision, means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding, and qualified as a small business under the criteria and size standards in 13 CFR 121.

(b) [ ] is, [ ] is not a women-owned small business concern. "Women-owned," as used in this provision, means a small business that is at least 51 percent owned by a woman or women who are U.S. citizens and who also control and operate the business.

(c) [ ] is, [ ] is not a minority enterprise which, pursuant to Executive Order 11625, is defined as a business which is at least 51 percent owned by one or more minority group members or, in the case of a publicly owned business, at least 51 percent of its voting stock is owned by one or more minority group members, and whose management and daily operations are controlled by one or more such individuals. For the purpose of this definition, minority group members are: (Check the block applicable to you)

[ ] Black Americans
[ ] Asian Pacific Americans
[ ] Hispanic Americans
[ ] Asian Indian Americans
[ ] Native Americans
[ ] Hasidic Jewish Americans

**3. Certificate of Independent Price Determination**

(a) The bidder/offeror certifies that—

(1) The prices in this bid/offer have been arrived at independently, without, for the purpose of restricting competition, any consultation, communication, or agreement with any other bidder/offeror or competitor relating to (i) those prices, (ii) the intention to submit a bid/offer, or (iii) the methods or factors used to calculate the prices offered;

(2) The prices in this bid/offer have not been and will not be knowingly disclosed by the bidder/offeror, directly or indirectly, to any other bidder/offeror or competitor before bid opening (in the case of a sealed bid solicitation) or contract award (in the case of a negotiated solicitation) unless otherwise required by law; and

(3) No attempt has been made or will be made by the bidder/ offeror to induce any other concern to submit or not to submit a bid/offer for the purpose of restricting competition.

(b) Each signature on the bid/offer is considered to be a certification by the signatory that the signatory:

(1) Is the person in the bidder/offeror's organization responsible for determining the prices being offered in this bid or proposal, and that the signatory has not participated and will not participate in any action contrary to subparagraphs (a)(l) through (a)(3) above; or

(2) (i) Has been authorized, in writing, to act as agent for the following principals in certifying that those principals have not participated, and will not participate in any action contrary to subparagraphs (a)(l) through (a)(3) above (insert full name of person(s) in the bidder/offeror's organization responsible for determining the prices offered in this bid or proposal, and the title of his or her position in the bidder/offeror's organization);

(ii) As an authorized agent, does certify that the principals named in subdivision (b)(2)(i) above have not participated, and will not participate, in any action contrary to subparagraphs (a)(l) through (a)(3) above; and

(iii) As an agent, has not personally participated, and will not participate in any action contrary to subparagraphs (a)(l) through (a)(3) above.

(c) If the bidder/offeror deletes or modifies subparagraph (a)2 above, the bidder/offeror must furnish with its bid/offer a signed statement setting forth in detail the circumstances of the disclosure.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

**4. Organizational Conflicts of Interest Certification**

(a) The Contractor warrants that to the best of its knowledge and belief and except as otherwise disclosed, it does not have any organizational conflict of interest which is defined as a situation in which the nature of work under a proposed contract and a prospective contractor's organizational, financial, contractual or other interest are such that:

(i) Award of the contract may result in an unfair competitive advantage;

(ii) The Contractor's objectivity in performing the contract work may be impaired; or

(iii) That the Contractor has disclosed all relevant information and requested the HA to make a determination with respect to this Contract.

(b) The Contractor agrees that if after award he or she discovers an organizational conflict of interest with respect to this contract, he or she shall make an immediate and full disclosure in writing to the HA which shall include a description of the action which the Contractor has taken or intends to eliminate or neutralize the conflict. The HA may, however, terminate the Contract for the convenience of HA if it would be in the best interest of HA.

(c) In the event the Contractor was aware of an organizational conflict of interest before the award of this Contract and intentionally did not disclose the conflict to the HA, the HA may terminate the Contract for default.

(d) The Contractor shall require a disclosure or representation from subcontractors and consultants who may be in a position to influence the advice or assistance rendered to the HA and shall include any necessary provisions to eliminate or neutralize conflicts of interest in consultant agreements or subcontracts involving performance or work under this Contract.

**5. Authorized Negotiators (RFPs only)**

The offeror represents that the following persons are authorized to negotiate on its behalf with the PHA in connection with this request for proposals: (list names, titles, and telephone numbers of the authorized negotiators):

______________________________

______________________________

______________________________

______________________________

**6. Conflict of Interest**

In the absence of any actual or apparent conflict, the offeror, by submission of a proposal, hereby warrants that to the best of its knowledge and belief, no actual or apparent conflict of interest exists with regard to my possible performance of this procurement, as described in the clause in this solicitation titled "Organizational Conflict of Interest."

**7. Offeror's Signature**

The offeror hereby certifies that the information contained in these certifications and representations is accurate, complete, and current.

______________________________

Signature & Date:

______________________________

Typed or Printed Name:

______________________________

Title:

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

HAKC003934

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

# THE FOLLOWING DOCUMENT IS A SAMPLE CONTRACT

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

# SERVICE AGREEMENT

**Security Guard Services**
**Contractor: ______________________**
**Agreement No. _______________**

This **Agreement** is made this ___**day** of___________, **2014** by and between, the **Housing Authority of Kansas City, Missouri, (HAKC)**, a Missouri Municipal Corporation, created pursuant to RSMo. §99.040, having its principal place of business at **920 Main Street, Suite 701, Kansas City, Missouri**, **64105**, and _________________________having its principal place of business at_____________________.

**1. DEFINITIONS**

**1.1** "HAKC" means the Housing Authority of Kansas City, Missouri, its Receiver, Special Master, Board, Commissioners, Directors, Managers and employees.

**1.2** "HUD" means the U.S. Department of Housing and Urban Development.

**1.3** **"Agreement"** means this **SERVICE AGREEMENT** dated _____________entered into between HAKC and Contractor. This **Agreement** also includes the following component parts/documents: 1) the **Proposal submitted by the Contractor**, in response to the solicitation, 2) the **Scope of Work**, 3) the Specifications, if any and 4) Form HUD 5369-C. "Agreement" also includes any written and signed changes to any of these documents, by Addendum, Change Order, or other written and signed modification.

**1.4** "Contractor" means the person or other entity entering into this **Agreement** with HAKC to perform all of the Work required under this **Agreement**.

**1.5** "Contracting Officer" means the authorized person who signed this **Agreement** for HAKC.

**1.6** "Day" means a calendar day unless otherwise indicated.

**1.7** "Default" means the failure of the Contractor's to fulfill the contract obligations.

**1.8** "Services" means the promises, tasks, responsibilities, and duties that Contractor promises to perform and deliver to HAKC as set forth in this **Agreement** and specifically described in the **Request for Proposals** and further described in Part two, **Scope of Work** and the **Contractor's Written Bid**.

**1.9** "Work" means the Services performed by the Contractor pursuant to this **Agreement.**

**2. TERM OF AGREEMENT**

**2.1** The term of this **Agreement** shall begin as of the date of the **Notice to Proceed and shall be for a period of** ______________________________________________

_______________________________________

## 3. SERVICES

3.1 Pursuant to the terms of this **Agreement**, the Contractor shall perform the services as described in the **Scope of Work**, including all written amendments to the **Scope of Work** and the **Contractor's Written Proposal** incorporated herein by this reference.

3.2 Unless otherwise specified in the **Scope of Work**, the Contractor shall furnish all tools, material, labor, and equipment to perform the required services to be delivered under this **Agreement**. All work is to be completed free of defects in material, workmanship, and performed according to the **Scope of Work** and specifications, if any.

3.3 The Contractor is acting at all times as an independent contractor.

3.4 The Contractor shall exercise sound business judgment in performing under the terms of this **Agreement** and shall comply with all applicable federal laws, state laws, HUD regulations, and HAKC directives, and policies.

## 4. PRICING, BILLING AND PAYMENT

4.1 HAKC agrees to pay, and Contractor agrees to accept as compensation for the performance of the Services and in accordance with the attached schedule of prices. This is a fee-for-services **Agreement.**

4.2 For purposes of billing for the performance of the Services performed under this **Agreement**, the Contractor shall submit an original and two (2) copies of each request for payment to HAKC's Director of Procurement. All requests for payment must contain the following information: Contractor's name, address, telephone number, and tax identification number, this **Agreement** number, description of the services performed and the signature of an authorized company official.

4.3 HAKC shall pay the Contractor within thirty (30) calendar days following receipt of the request(s) for payment, acceptance of the work, and all required documentation (i.e. all requests for payment must be signed by the Project Manager certifying acceptance of the work, payroll certifications for Davis Bacon projects, etc.).

## 5.0 PERSONNEL

5.1 The contact person representing the Contractor shall be_______________,________________. All communication between HAKC and the Contractor's personnel on the project shall be through **Mr.___________**. The Contractor shall not replace this contact person without the agreement of HAKC that the substitute person(s) is/are of equal or greater skill and experience. The contact person representing the HAKC shall be **Dale Williamson, Project Manager. Mr. Williamson can be reached at 816-000-0000.**

5.2 The Contractor shall be responsible for the conduct and discipline of his employees. Each person assigned to perform services under this **Agreement** must have sufficient knowledge, skill, and experience to perform properly the work assigned to them. Any employee, who does not perform his work in a skillful manner, appears to be incompetent, or acts in a disorderly or intemperate manner, shall be removed from the job by the Contractor's point of contact at the written request of HAKC. Such removal is not cause for an extension of time in which to complete the work.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

5.3 The Contractor shall comply with Sections 103 and 107 of the Contract Work Hours and Safety Standards Act (40 USC 327-330) as supplemented by the Department of Labor Regulations found at 29 CFR 5.

5.4 The Contractor agrees to provide for HAKC's approval a list of subcontractors, if any, that will be used to perform the work. Said list of subcontractors shall be delivered to the HAKC prior to execution of this **Agreement**. However, regardless of HAKC's prior approval, Contractor shall be responsible for all actions and/or inactions by said subcontractors as they pertain to the Services performed under the terms of this **Agreement**.

**6. <u>RECORD KEEPING</u>**

The Contractor shall maintain at least one copy of any and all written changes, modifications, or amendments to the Scope of Work, the specifications, or this Agreement that may be agreed to by the parties. These documents shall be made available to the HAKC for inspection and copying upon the request of the HAKC.

**7. <u>INSPECTION; ACCEPTANCE; LIENS</u>**

7.1 The HAKC shall review, require correction, if necessary, and accept the work produced by the Contractor so long as the work is performed consistent with the terms of this **Agreement**. Such review(s) shall be carried out within thirty, (30), business days after submission of documents for approval so as not to impede the work of the Contractor.

7.2 The Contractor shall make any required corrections promptly and return a revised copy of the work to the HAKC within seven (7) calendar days of notification or a later date, if extended by the HAKC.

7.3 Failure by the Contractor to proceed with reasonable promptness and/or to make necessary corrections shall constitute a default under the terms of this **Agreement**.

7.4 The contractor is prohibited from placing a lien on the HAKC's property. This prohibition shall apply to all subcontractors.

**8. <u>CHANGES</u>**

8.1 HAKC may at any time, by written order agreed to by the Contractor, make changes within the **Scope of Work** of this **Agreement** in the services to be performed.

8.2 If any such change causes an increase or decrease in the prices charged, the maximum amount of the **Agreement**, or the time required for performance of any part of the work under this **Agreement**, whether or not changed by the order, or otherwise affects the conditions of this **Agreement**, the HAKC shall make an equitable adjustment in the maximum amount, the price(s), the delivery schedule, or other affected terms and shall modify the **Agreement** accordingly.

8.3 The Contractor must assert its rights to an equitable adjustment under this provision within thirty, (30) days from the date of receipt of the written order. However, if the HAKC decides that the facts justify it, the HAKC may receive and act upon a proposal submitted before final payment of the **Agreement**.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

**8.4** Failure to agree to any adjustment shall constitute a dispute under ¶12.0 Disputes. However, nothing in this provision shall excuse the Contractor from proceeding with the **Agreement**, as changed.

**8.5** No services, for which an additional cost or fee will be charged by the Contractor, shall be furnished without the prior written consent of the HAKC.

**9. CONTRACT MODIFICATIONS**

**9.1** Only the Contracting Officer has authority to modify any term or condition of this **Agreement** on behalf of the HAKC. Any modifications shall be agreed to by the parties in writing and signed by the Contracting Officer. The Contractor specifically agrees and understands that no verbal modifications are allowed to this **Agreement**.

**9.2** The HAKC may modify the **Agreement** unilaterally under the following circumstances: (1) pursuant to a specific authorization as stated in the **Agreement** (e.g., Changes); or (2) for administrative matters which do not change the rights or responsibilities of the parties (e.g., change in HAKC's address). All other modifications shall be in the form of supplemental agreements signed by the Contractor and the Contracting Officer.

**10. DISSEMINATION OF INFORMATION; RETENTION OF RECORDS**

**10.1** The Contractor hereby agrees that no information or material shall be disseminated or disclosed to the general public, the news media or any person or organization, without the prior expressed written approval of the HAKC.

**10.2** The HAKC, HUD, or the Comptroller General of the United States, or any of their duly authorized representatives shall, for three (3) years after final payment under this **Agreement**, have access to and the right to examine any of the Contractor's directly pertinent books, documents, papers, or other records involving transactions related to this **Agreement** for the purpose of performing audits, examinations, excerpts, and transcriptions.

**10.3** The Contractor agrees to include in first-tier subcontracts a provision substantially the same as ¶10.2. "Subcontract", as used in this provision, means an agreement entered into between the Contractor and another entity to perform a portion of the Work required under the terms of this **Agreement**, excluding any such subcontracts.

a. The periods of access and examination in ¶10.2 and ¶10.3 for records relating to (1) appeals under ¶12.0 Disputes, (2) litigation or settlement of claims arising from the performance of services required under the terms of this **Agreement**, or (3) costs and expenses of this **Agreement** to which the HAKC, HUD, or the Comptroller General or any of their duly authorized representatives has taken exception shall continue until disposition of such appeals, litigation, claims, or exceptions.

**11.0 AGREEMENT TO PAY LIQUIDATED DAMAGES**
**(Section deleted)**

## 12. DISPUTES

**12.1** All disputes arising under or relating to this **Agreement**, including any claims for damages for the alleged breach thereof, which are not disposed of by agreement, shall be resolved under this provision.

**12.2** All claims by the Contractor shall be made in writing and submitted to the HAKC. A claim by the HAKC against the Contractor shall be made by a written decision by the HAKC.

**12.3** The HAKC shall, with reasonable promptness, but in no event in more than thirty, (30) days, render a decision concerning any claim hereunder. The Contractor has thirty days, (30), after receipt of the HAKC decision to notify the HAKC in writing that it takes exception to such decision. After that time period, the decision shall be final and conclusive.

**12.4** Provided the Contractor has; 1.) Given the notice within the time stated in 2.) Accepted its claim relating to such decision from the final release, and 3.) Brought suit against the HAKC not later than one (1) year after receipt of final payment, or if final payment has not been made, not later than one (1) year after the Contractor has had a reasonable time to respond to a written request by the HAKC that it submit a final voucher and release, whichever is earlier, then HAKC's decision shall not be final or conclusive, but the dispute shall be determined on the merits by a court of competent jurisdiction.

**12.5** The Contractor shall proceed diligently with the performance of the services required under this **Agreement**, pending final resolution of any request for relief, claim, appeal, or action arising under the **Agreement**, and shall comply with the decision of the HAKC.

## 13. TERMINATION AND DEFAULT

**13.1** This **Agreement** will terminate immediately if the Contractor becomes ineligible to contract with HUD, under applicable laws and regulations.

**13.2** The HAKC may terminate this **Agreement** in whole, or in part, at the convenience of the HAKC or for the failure of the Contractor to fulfill its obligations by default. The HAKC shall terminate this **Agreement** by delivering to the Contractor a Notice of Termination specifying the nature, extent, and effective date of the termination. Upon receipt of the notice, the Contractor shall: (1) immediately discontinue all services affected, unless the notice directs otherwise, and deliver to the HAKC all information, reports, papers, and other materials accumulated or generated in performing this **Agreement**, whether completed or in process.

**13.3** If the termination is for the convenience of the HAKC, and is in whole, the HAKC shall be liable only for payment for services rendered before the effective date of the termination. If the termination is in part, the HAKC shall be liable for payment for services rendered before termination, and compensation for the remainder of the **Agreement** not terminated shall be equitably adjusted as agreed to by the parties at a rate not to exceed the ratio of the remaining services to the original **Agreement**.

**13.4** If the termination is due to the failure of the Contractor to perform its obligations under this **Agreement** by default, the HAKC may require the Contractor to deliver, in the

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

manner and to the extent directed by the HAKC, any work as described in ¶12.2(2). The Contractor's compensation shall be determined in accordance with ¶8.0 CHANGES TO SCOPE OF WORK. The HAKC may take over the work and prosecute the same to completion by contract or otherwise, and the Contractor shall be liable for any additional cost incurred by the HAKC in excess of the **Agreement** balance. HAKC may withhold payments to the Contractor, for the purposes of set-off or partial payment, as the case may be, of amounts owed to the HAKC by the Contractor.

**13.5** If, after termination for failure to fulfill its obligations by default, it is determined that the Contractor had not failed, said termination shall be deemed to have been for the convenience of the HAKC, and the Contractor shall be entitled to payment as described in ¶ 12.3.

**13.6** Upon the termination of this **Agreement** for any reason, the Contractor shall be obligated to cooperate with the HAKC so that a smooth transition of responsibilities, including immediate delivery to the HAKC, or its designee, all files, papers and records related to the Contractor's performance of this **Agreement**.

**13.7** Any disputes with regard to this clause are expressly subject to the terms of ¶12.0 Disputes.

**14.** <u>**ORGANIZATIONAL CONFLICTS OF INTEREST**</u>

**14.1** The Contractor warrants that to the best of its knowledge and belief and except as otherwise disclosed, it does not have any organizational conflict of interest, defined as a situation in which the nature of work under this Agreement and a the Contractor's organizational, financial, contractual or other interests are such that:

**14.1.1** Award of the **Agreement** may result in an unfair competitive advantage; or

**14.1.2** The Contractor's objectivity in performing the services required under the **Agreement** may be impaired.

**14.2** The Contractor agrees that after award of this **Agreement**, it discovers an organizational conflict of interest the Contractor shall make an immediate and full disclosure in writing to the Contracting Officer, which shall include a description of the action, which the Contractor has taken or intends to take to eliminate or neutralize the conflict. The HAKC may, however, terminate the **Agreement** for the convenience of the HAKC if it deems such termination is in the best interest of the HAKC.

**14.3** In the event the Contractor was aware of an organizational conflict of interest before the award of this **Agreement** and intentionally did not disclose the conflict to the Contracting Officer, then HAKC may terminate this **Agreement** for default.

**14.4** The provisions of these paragraphs shall be included in all subcontracts and consulting agreements, if any, wherein the work to be performed is similar to the service provided by the Contractor. The Contractor shall include in all such subcontracts and consulting agreements, any and all provisions necessary to eliminate or neutralize conflicts of interests.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

**15. INDEMNIFY AND HOLD HARMLESS**

**15.1** The Contractor agrees to indemnify and hold harmless the HAKC, it's directors, commissioners, officers, managers, and employees against any and all claims, demands, losses and liabilities (including attorney's fees, costs and expenses of defending against such claims) arising out of; 1.) Any act or omission by or on behalf of the Contractor outside the scope of this **Agreement**, and 2) Any act or omission determined to constitute negligence, recklessness, or willful misconduct by the Contractor or the Contractor's agents, employees, representatives, and assigns in the performance of this **Agreement.**

**16. FORCE MAJEURE**

**16.1** Either party may be excused for any delays or default resulting from circumstances beyond its control, including without limitation, riot, war, fire, act of God or other casualty beyond its control.

**17. STANDARD OF CONDUCT; QUALIFICATIONS**

**17.1** The provisions of 24 Code of Federal Regulations 85 are applicable to this **Agreement** and govern the Contractor's standard of conduct and qualifications. A copy of this regulation is available upon request.

**18. ASSIGNMENT OF AGREEMENT**

**18.1** The Contractor shall not assign or transfer any interest in this **Agreement** except claims for monies due or to become due from the HAKC under this **Agreement** may be assigned to a bank, trust company, or other financial institution. If the Contractor is a partnership, this **Agreement** shall inure to the benefit of the surviving or remaining member(s) of such partnership approved by the HAKC.

**19. INTEREST OF MEMBERS OF CONGRESS**

**19.1** No member or delegate to the Congress of the United States of America or Resident Commissioner shall be admitted to any share or part of this **Agreement** or to any benefit to arise there from. This provision shall not be construed to extend to this **Agreement** if made with a corporation for its general benefit.

**20. INTEREST OF MEMBERS, OFFICERS OR EMPLOYEES AND FORMER MEMBERS, OFFICERS OR EMPLOYEES**

**20.1** No member, officer, or employee of the HAKC, no member of the governing body of the locality in which the project is situated, no member of the governing body in which the HAKC was activated, and no other public official of such locality or localities who exercises any functions or responsibilities with respect to the project, shall during his or her tenure, or for one (1) year thereafter, have any interest, direct or indirect, in this **Agreement** or the proceeds thereof.

**21. NONDISCRIMINATION**

**21.1** The Contractor agrees not to discriminate against any employee or applicant for employment because of race, color, religion, sex, age, or national origin. The Contractor shall take affirmative action in this regard, posting such notice in conspicuous places and placing such notice in all solicitations or advertisements for employees. The Contractor shall advise each labor union with which it has an agreement, of the Contractor's commitment to nondiscrimination.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

**22. SECTION 3**

**22.1** The work to be performed under this contract is subject to the requirement of Section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u (Section 3). The purpose of Section 3 is to ensure that employment and other economic opportunities generated by HUD assistance to HUD assisted projects covered by Section 3, shall, to the greatest extent feasible, be directed to low and very low income persons, particularly persons who are recipients of HUD housing assistance.

**22.2** The parties to this contract agree to comply with HUD regulations in 24 CFR Part 135, which implement Section 3. As evidenced by their execution of this contract, the parties to this contract certify that they are under no contractual or other impediment that would prevent them from complying with the Part 135 regulations.

**22.3** The Contractor agrees to send to each labor organization, or representative of workers, with which the Contractor has a collective bargaining agreement or other understanding, if any, a notice advising the labor organization or workers' representative of the contractor's commitments under this Section 3 clause, and will post copies of the notice in conspicuous places at the work site where both employees and applicants for training and employment positions can see the notice. The notice shall describe the Section 3 preference, shall set forth a minimum number and job titles subject to hire, availability of apprenticeship and training positions, the qualifications for each; and the name and location of the person(s) taking applications for each of the positions; and the anticipated date the work shall begin.

**22.4** The Contractor agrees to include this Section 3 clause in every subcontract subject to compliance with regulations in 24 CFR Part 135, and agrees to take appropriate action, as provided in an applicable provision of the subcontract or in the Section 3 clause, upon a finding that the subcontractor is in violation of the regulations in 24 CFR Part 135. The contractor will not subcontract with any subcontractor where the contractor has notice or knowledge that the subcontractor has been found in violation of the regulations in 24 CFR Part 135.

**22.5** The Contractor will certify that any vacant employment positions, including training positions will be filled; 1.) After the contractor is selected, but before the contract is executed, and 2.) With persons other than those to whom the regulations of 24 CFR Part 135 require employment opportunities to be directed, were not filled to circumvent the contractor's obligations under 24 CFR Part 135.

**22.6** Noncompliance with HUD regulations in 24 CFR Part 135 may result in sanctions; termination of this contract for default and debarment or suspension from future HUD funded contracts.

**23. OTHER REGULATORY REQUIREMENTS**

**23.1** The following requirements (full text copies available from the HAKC contracting office) are incorporated by HAKC:

1. Executive Order 11246, Equal Employment Opportunity and 41 CFR 60 for contracts in excess of $10,000.00
2. Anti-Kickback Act 18 USC 874 and 29 CFR 3.

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

## 24. NOTICES

**24.1** Any notice, payment, demand or communication required or permitted to be given by any provision of this **Agreement** must be in writing and will be deemed to have been given when delivered, by whatever means, to the party designated to receive such notice, or on the date following the day sent by overnight courier, or on the third business day after the same is sent by United States Postal Service, postage and charges prepaid, directed to the addresses noted above, or to such other or additional addresses as either party might designate by written notice to the other party. Electronic facsimile transmission is permitted, but only if a signed original is concurrently mailed first class in the United States postal service as provided herein.

## 25. COUNTERPARTS

**25.1** This **Agreement** may be executed at different times and in any number of counterparts, each of which will be deemed an original document, but all of which will constitute a single document. This document will not be binding upon or constitute evidence of a contract between the parties until such time as a counterpart of this document has been executed, by both parties and a copy thereof delivered to the other party to this **Agreement**.

## 26. LIABILITY AND INSURANCE

**26.1 GENERAL COMPREHENSIVE LIABILITY**

The Contractor, at the Contractor's sole cost and expense, agrees to procure and maintain during the term of this **Agreement** or any extension thereof, General Comprehensive Liability Insurance naming the HAKC as an additional insured and certificate holder and protecting the HAKC from liability judgments, suits and claims, including, but not limited to, suits for bodily injury, personal injury, including false arrest, libel, slander, invasion of privacy and property damage arising out of the Contractor's provision of services under this **Agreement**. The Contractor shall provide the HAKC with a copy of the declaration page of the policy demonstrating that HAKC constitutes an additional insured at the time of execution of this **Agreement**.

For general liability coverage, the contractor shall provide the HAKC with a Certificate of Insurance that names the HAKC as an additional insured and shall carry the following insurance with respect to property and its operations.

Liability/Bodily Injury:

a). Three million dollars ($3,000,000.00) for all claims arising out of a single occurrence;

b). Four hundred thousand dollars ($400,000.00) for any person in a single accident or occurrence;

Property Damage:

c). Five hundred thousand dollars ($500,000.00) for each occurrence

**26.2 AUTOMOBILE LIABILITY POLICY LIMITS**

The Contractor, at the Contractor's sole cost and expense, agrees to procure and maintain during the term of this **Agreement** or any extension thereof, Automobile Liability insurance. The required Automobile Insurance shall contain policy limits of not less than the following:

Bodily Injury:
$500,000 each person,
$500,000 each occurrence; and,

Property Damage:
$500,000 each occurrence.

**26.3 WORKER'S COMPENSATION COVERAGE**

The Contractor, at the Contractor's sole cost and expense, agrees to procure and maintain during the term of this **Agreement** or any extension thereof, Worker's Compensation Insurance. The Worker's Compensation Insurance shall contain policy limits equal to, or greater than, the policy limits required by state or federal law and not less than:

$500,000 per accident;
$100,000 disease, policy limit;

**26.4 NON-WAIVER OF SOVEREIGN IMMUNITY**

The HAKC is a public entity and political subdivision of the State of Missouri and is protected by the doctrine of sovereign immunity pursuant to Section 537.600 RSMo. The foregoing provisions requiring insurance coverage shall not be deemed a relinquishment or wavier of any kind of limitations of liability provided or available to HAKC under applicable state governmental immunities law. The purpose of this insurance does not include coverage for any liability or suit for damages, which is barred by the doctrines of sovereign or governmental immunity by whatever name, as set forth in RSMo 537.600,et.seq. This policy is not intended to act as a waiver of any defense available to the insured by statute or a common-law.

**27. CHOICE OF LAW/CHOICE OF FORUM**

**27.1** The parties agree that the laws of the State of Missouri and any applicable federal statutes, laws, and regulations shall govern this **Agreement**. The parties further agree that a court of competent jurisdiction within Jackson County, Missouri, shall have exclusive jurisdiction over all causes of action asserted by or against the HAKC that arise out of or relate to this **Agreement**.

**28. ENTIRE AGREEMENT; SEVERABILITY**

**28.1** This **Agreement,** and the materials incorporated herein by reference, including any exhibits and attachments, constitutes the entire agreement between the parties. There are no agreements, understandings, warranties or representations between the parties except as set forth herein. No change or modification of this **Agreement** shall be valid unless in writing and signed by the Contracting Officer of the HAKC. If any provision of this **Agreement** is determined to be illegal, invalid or unenforceable, the remaining

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM

provisions shall remain in full force and effect. It is the intention of the parties that if any such provision is held to be illegal, invalid or unenforceable, there will be added in lieu thereof a provision as similar in terms to such provision as is possible which is legal, valid and enforceable.

**29. INCORPORATION OF HUD FORM 5369-C and 5370-C**

**29.1** This **Agreement** shall also include HUD Forms 5369-C and 5370-C, attached hereto and incorporated herein by reference. In the event of a contradiction or inconsistency between any term or provision of this **Agreement** (or any of its component parts) and HUD Form 5369-C and 5370-C, the parties agree that HUD Form 5369-C and 5370-C, shall govern and control with respect to the subject term or provision.

**IN WITNESS WHEREOF, EACH PARTY HAS SIGNED OR CAUSED THIS INSTRUMENT TO BE SIGNED ON ITS BEHALF BY ITS DULY AUTHORIZED AGENT.**

**HOUSING AUTHORITY OF KANSAS CITY, MISSOURI**

By: ______________________________ Date: ______________________________
Name: **Edwin T. Lowndes**
Title: **Executive Director**

Address: 920 Main Street, Suite #701
Kansas City, Missouri 64105

CONTRACTOR: ______________________________

By: ______________________________ Date: ______________

Printed Name: ______________ Federal Tax I.D. Number: _____ - __________

Title: ______________________________

Address: ______________________________

______________________________

Electronically Filed - Jackson - Kansas City - June 20, 2019 - 12:52 PM